**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| | Chapter 11 |
| Motors Liquidation Company, f/k/a General Motors Corporation, *et al.*, | Case No. 09-50026 (MG) (Jointly Administered) |
| Debtors. | |
| MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST, by and through the Wilmington Trust Company, solely in its capacity as Trust Administrator and Trustee, | Adversary Proceeding |
| Plaintiff, | Case No. 09-00504 (MG) |
| v. | |
| JPMorgan Chase Bank, N.A., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

*A P P E A R A N C E S :*

KING & SPALDING LLP
*Attorneys for GMAM Investment Funds Trust, Lehman GMAM Investment Funds Trust, and Pension Inv. Committee of GM for GM Employees Domestic Group Pension Trust*
1185 Avenue of the Americas
New York, NY 10036
By:    Arthur J. Steinberg, Esq.
        Edward L. Ripley, Esq.

BINDER & SCHWARTZ LLP
*Attorneys for Plaintiff*
366 Madison Avenue, 6th Floor
New York, NY 10017
By:    Eric B. Fisher, Esq.
        Neil S. Binder, Esq.
        Lindsay A. Bush, Esq.
        Lauren K. Handelsman, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Notice of Moving Defendants' Motion to Dismiss the Action Against Them* (the "Notice," ECF Doc. # 701), filed by GMAM Investment Funds Trust (the "GIFT Trust"), Lehman GMAM Investment Funds Trust ("Lehman GIFT"), and Pension Inv Committee of GM for GM Employees Domestic Group Pension Trust ("Pens Inv Comm," and together with GIFT Trust and Lehman GIFT, the "Moving Defendants") by and through General Motors Investment Management Corporation ("GMIMCo"). The Notice is supported by the *Memorandum of Law in Support of Motion to Dismiss the Action Against Them* (the "Motion," ECF Doc. # 701-1) and the Declaration of Arthur J. Steinberg (the "Steinberg Declaration," ECF Doc. # 701-2). In response, the Motors Liquidation Avoidance Action Trust (the "Plaintiff") filed the *Memorandum of Law in Opposition to the Gift Trust's Motion to Dismiss the Amended Complaint* (the "Opposition," ECF Doc. # 760). The Opposition is supported by the Declaration of Eric B. Fisher (the "Fisher Declaration," ECF Doc. # 761). The Moving Defendants filed a reply brief (the "Reply," ECF Doc. # 779), which is supported by the Affidavit of Jason Glass (the "Glass Reply Affidavit," ECF Doc. # 780).

For the reasons set forth below, the Motion is **GRANTED**.

## I.    **BACKGROUND**

A full discussion of the background of the case is given in this Court's prior opinion, *In re Motors Liquidation Co.*, 552 B.R. 253, 258–63 (Bankr. S.D.N.Y. 2016) (the "Dismissal Opinion"). A brief description of the relevant service extension orders and service attempts follows.

### A.    The Original Complaint

The Plaintiff filed a complaint initiating this adversary proceeding (the "Original

Complaint") on July 31, 2009 against JPMorgan Chase Bank, N.A. ("JPMC"), and more than

400 other named defendants which were alleged to be lenders (the "Term Loan Lenders") under

a $1.5 billion syndicated term loan (the "Term Loan") to General Motors Corporation ("GM").

(ECF Doc. # 1.)  The Original Complaint named "Lehman GMAM Inv FDS TR" and "Pension

Inv Comm of GM for GM" as defendants in the action, but did not name "GMAM Investment

Funds Trust" (the GIFT Trust) as a defendant.  (Mot. at 3–4.)

### B.    The Extension Orders and the Amended Complaint

Until 2015, JPMC was the only defendant that was served with the summons for the

Original Complaint.  (Mot. at 3.)  As discussed in the Dismissal Opinion, Judge Gerber approved

a series of extension orders (the "Extension Orders") which "effectively divided the litigation

into phases, with the first phase, Phase I, between the Plaintiff and JPMC challenging the

effectiveness of the lien release.  If, as Judge Gerber initially ruled, the lien release was not

effective, the case was at an end, and it was unnecessary for the remaining defendants to be

served." *In re Motors Liquidation Co.*, 552 B.R. at 263.

On May 19, 2015, the Court entered a stipulation and order (the "May 2015 Stipulation,"

ECF Doc. # 90) between the Plaintiff and JPMC, extending the Plaintiff's time to serve a

summons and Amended Complaint on the Term Loan Lenders other than JPMC.  On May 20,

2015, the Plaintiff filed the First Amended Adversary Complaint (the "Amended Complaint"),

naming "GMAM Investment Funds Trust" (the GIFT Trust) for the first time as a defendant to

the action.  (ECF Doc. # 91.)  On August 13, 2015, the Court entered an order extending the

Plaintiff's time to serve the Amended Complaint on the Term Loan Lenders other than JPMC to

September 30, 2015.  (ECF Doc. # 152.)

3

On June 30, 2016, the Court entered the Dismissal Opinion, which held, *inter alia*, that

the Extension Orders were a sound exercise of the Court's discretion and would not be

reconsidered.  552 B.R. at 274.

### C.    Plaintiff's Attempted Service on the GIFT Trust

On May 28, 2015, Plaintiff filed the Affidavit of Service of Kimberly Gargan (the

"Gargan Service Affidavit," Mot. Ex. A, ECF Doc. # 94).  The Gargan Service Affidavit attests

that as an employee of the noticing agent for Plaintiff, she caused to be served the May 2015

Stipulation, the Amended Complaint, and the *Amended Summons and Notice of Pretrial*

*Conference in an Adversary Proceeding* (the "Amended Summons," ECF Doc. # 92) upon the

Moving Defendants, among other defendants, "by first class mail."  (Gargan Service Aff. ¶¶ 2–3;

Gargan Service Aff. Ex. A.)  The Gargan Service Affidavit states that the GIFT Trust was served

at two locations, on or about May 20, 2015: 767 5th Avenue, New York, NY 10153 (the "Fifth

Avenue Address"); and One Lincoln Street, 1st Floor, Boston, MA 02111 (the "Lincoln Street

Address").  (Gargan Service Aff. Ex. A at 22.)

The GIFT Trust does not have a president, managing or general agent; rather, it has a

trustee appointed by GMIMCo.  (Affidavit of Jason Glass ¶ 8, Steinberg Decl. Ex. F (the "Glass

Moving Affidavit").)  The trustee of the GIFT Trust has been State Street Bank & Trust

Company ("State Street") since 2011.  (Affidavit of Kristen A. Kennedy, Steinberg Decl. Ex. G ¶

2 (the "Kennedy Affidavit").)  From at least the time the Original Complaint was filed in 2009,

until State Street began serving as the trustee in February 2011, the trustee was General Motors

Bank, N.A., d/b/a Promark Trust Bank, N.A. ("PTB").  (Glass Moving Aff. ¶ 3.)  The Fifth

Avenue Address was the address of PTB until it ceased operations and was liquidated in

September of 2011.  (*Id.* ¶ 5.)  The Lincoln Street Address is the place of business of State Street,

the GIFT Trust's current trustee.  (Mot. at 13.)

## II.    THE PARTIES' CONTENTIONS

### A.    The Moving Defendants' Contentions

1.    *The Plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6)*

The Moving Defendants argue that the Amended Complaint—the first complaint properly naming the Moving Defendants, including the GIFT Trust—is barred by the statute of limitations.  (Mot. at 7.)  The Moving Defendants argue that rather than simply "update[ing] the names of certain defendants," naming the GIFT Trust in the Amended Complaint was a wholesale addition of a new party rather than a correction to a previously incorrectly named defendant.  (*Id.* at 8.)  Therefore, the Moving Defendants argue, the GIFT Trust was impermissibly added as a defendant almost four years after the limitations period had run.  (*Id.* at 7–8.)  In the Reply, the Moving Defendants argue that the Amended Complaint does not relate back to the Original Complaint because the GIFT Trust has been prejudiced in defending on the merits, because of "foundationally sweeping changes" at the GIFT Trust that have taken place in the last six years.  (Reply at 7.)  The GIFT Trust argues that because it no longer holds an interest in the Term Loan and all but one of the investors in the Term Loan are no longer part of the GIFT Trust, any recovery would be "highly prejudicial to the existing investors in the GIFT Trust."  (*Id.* at 8.)  Additionally, the Moving Defendants argue that the GIFT Trust did not have knowledge of the action until it became aware of the default judgments in 2016.  (*Id.* at 10.)

Relatedly, the Moving Defendants also argue that the time for proper service of the Amended Summons has expired and the applicable limitations period bars the issuance of any new summons.  (*Id.* at 8.)  Because the Moving Defendants argue that service of the Amended Summons was improper, it follows that Plaintiff has failed to comply with the Extension Orders and is, therefore, out of time to issue and serve a new summons.

2.      *The Amended Complaint should be dismissed for insufficient service of
        process under Rule 12(b)(5)*

The Moving Defendants argue that service on the GIFT Trust was defective because (i)

the Amended Summons failed to properly identify the specific defendant to whom it was

addressed; (ii) the Fifth Avenue Address was an improper address for service of process; and (iii)

the Amended Complaint and Amended Summons were never actually received by the trustee at

the State Street Address.  (Mot. at 12–16.)

The Amended Summons did not appropriately identify the individual defendant to whom

it was addressed, the Moving Defendants argue, because it included the names of all defendants

in the action and did not identify State Street as a trustee, or in any capacity, on behalf of the

GIFT Trust.  (*Id.* at 16.)  Therefore, "had it received the Amended Summons, State Street could

not have known on whose behalf it was receiving legal process."  (*Id.*)

The Moving Defendants also argue that the Fifth Avenue Address was improper because

it was the location of PTB, which had not been the GIFT Trust's trustee since 2011 and is no

longer in existence.  (*Id.* at 13.)

Finally, the Moving Defendants—while conceding that the Lincoln Street Address is the

place of business of State Street—dispute that State Street ever received the Amended Complaint

and Amended Summons.  (*Id.* at 14–15.)  The Moving Defendants rely on an affidavit from the

Senior Vice President and Senior Litigation Counsel of State Street, William Connelly (the

"Connelly Affidavit," Mot. Ex. H), describing State Street's practices for receipt and handling of

legal process.  (Mot. at 14.)  As described in the Connelly Affidavit, State Street personnel are

instructed to forward all legal process to Connelly, at which time the documents are recorded in a

spreadsheet (the "Legal Service Log").  (*Id.*; *see also* Connelly Aff. ¶ 4.)  Connelly reviewed the

Legal Service Log and attests that there is no record of the Amended Complaint or Amended

Summons being received at the Lincoln Street Address.  (Mot. at 14; Connelly Aff. ¶ 4.)  The

Moving Defendants agree that there is a presumption that a properly addressed and stamped item

placed in the mail is received, but contend (i) the presumption does not arise here because the

mailing was improperly labeled; and (ii) even if the presumption does arise, the Connelly

Affidavit rebuts that presumption.  (Mot. at 15–16.)

**B.    The Plaintiff's Contentions**

1.    *The Amended Complaint is not time-barred*

The Plaintiff argues that the claims in the Amended Complaint are not time-barred, first,

because the GIFT Trust was properly named in the Amended Complaint.  (Opp. at 7–8.)  The

Plaintiff contends that the GIFT Trust was merely "misnamed" in the Original Complaint, and

after exercising "all required diligence," the Plaintiff determined the correct name.  (*Id.*)

The Plaintiff next argues that the Amended Complaint relates back to the Original

Complaint, because the claims arise out of the same transaction and the substance of the two

complaints remains the same.  (*Id.* at 8–9.)  Additionally, Plaintiff argues the Amended

Complaint relates back because the Gift Trust suffered no prejudice and it is "inconceivable" that

the Gift Trust was not aware of the developments in this proceeding.  (*Id.*)  The Plaintiff argues

that the Amended Complaint was publicly filed and that as a GM-related pension fund, the GIFT

Trust knew or should have known of the action.  (*Id.* at 9–10.)

2.    *Service on the GIFT Trust was proper*

The Plaintiff argues that the GIFT Trust cannot overcome the presumption of effective

service because (i) the GIFT Trust concedes the Lincoln Street Address is appropriate; (ii) the

mailing was not returned as undeliverable; and (iii) the Plaintiff's process server followed the

same procedures to serve the GIFT Trust as it used to serve other Term Loan Lenders who

received the service of process.  (*Id.* at 11–12.)  The Plaintiff argues that a "mere affidavit" is not

7

enough to rebut the presumption, pointing out that Connelly does not allege he had any personal involvement with the receipt of legal process on behalf of State Street. (*Id.* at 12–13.)

       3.      *If service was not proper, the Plaintiff should be granted leave to re-serve*

The Plaintiff makes a conclusory argument that its "good faith" should constitute good cause to grant leave for re-service of process, but devotes the bulk of its argument to the Court's discretionary power to permit re-service. The Plaintiff argues that it will suffer extreme prejudice if the claims are dismissed, because the claims would be time-barred and could not be re-filed. (*Id.* at 14–15.) Moreover, the Court, in the Dismissal Opinion, already rejected the GIFT Trust's argument that it suffered prejudice by not being involved in the first phase of this action. (*Id.*) The Plaintiff also argues that for the reasons discussed in connection with whether the Amended Complaint relates back to the Original Complaint, the GIFT Trust knew or should have known of this litigation. (*Id.*) Finally, the Plaintiff contends that dismissal would run counter to the "strong public policy favoring resolution of claims on the merits." (*Id.* at 15–16.)

## III.   <u>LEGAL STANDARD</u>

### A.   **Dismissal for Failure to State a Claim Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working principles'") (quoting *Iqbal*, 556 U.S. at 678–79); *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The

pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Here, the focus of the GIFT Trust's argument that the Amended Complaint fails to state a claim against the GIFT Trust is that the statute of limitations had already run when the GIFT Trust was added as a defendant and, according to the GIFT Trust, the Amended Complaint does not relate back to the filing of the Original Complaint. While statute of limitations is an affirmative defense that ordinarily cannot support a Rule 12(b)(6) dismissal, an exception exists when the bar of the statute of limitations is clear from the complaint. *NECA-IBEW Pension Trust Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)). The Plaintiff does not dispute that if the Amended Complaint does not relate back to the Original Complaint, the claims against the GIFT Trust are barred by the statute of limitations and the Amended Complaint may be dismissed against the GIFT Trust under Rule 12(b)(6).

### B. Dismissal for Insufficient Process or Service of Process Under Rule 12(b)(4) and Rule 12(b)(5)

A party may move to dismiss a cause of action for "insufficient process" under Rule 12(b)(4), or for "insufficient service of process" under Rule 12(b)(5). If the plaintiff does not properly serve the summons and the complaint on the defendant, the court may dismiss the case without prejudice absent a showing of good cause. *See Scott v. Ramson (In re Ramson),* Adv. Proc. # 10-02791 (MG), 2010 WL 3219732, at *2 (Bankr. S.D.N.Y. Aug. 11, 2010).

Rule 4(b) provides that "[a] summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served." The 1993 Advisory

Committee's Notes to the Rule state that in a case with multiple defendants, the plaintiff "may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." FED. R. CIV. P. 4(b) advisory committee's note (1993). "Although minor or technical defects in a summons in certain circumstances do not render service invalid, defects that are prejudicial to the defendant or show a flagrant disregard for the rule do. Moreover, actual notice alone will not sustain personal jurisdiction over a defendant." *Osrecovery, Inc. v. One Grp. Int'l, Inc.*, 234 F.R.D. 59, 60–61 (S.D.N.Y. 2005) (internal citations omitted).

Where, as here, the defendant alleges it was not properly named in the summons, courts often treat motions to dismiss under Rules 12(b)(4) and 12(b)(5) as one and the same. *See, e.g., In re Bavelis*, 453 B.R. 832, 862 (Bankr. S.D. Ohio 2011) ("The Court accordingly concludes that the failure to specifically name each of the [Defendants] in a summons resulted in an insufficiency in process under Civil Rule 12(b)(4) as well as an insufficiency in the service of process under Civil Rule 12(b)(5)."); *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1476 (E.D.N.Y. 1986) (concluding that where plaintiff used summons addressed to one defendant to serve another, motion to dismiss for insufficient process under Rule 12(b)(4) may also be construed as a motion to dismiss for insufficient service of process under Rule 12(b)(5)).

It is "well settled" law that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932). This presumption of receipt is "very strong" and "can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary . . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is

necessary." *In re Dana Corp.*, No. 06-10354, 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May

30, 2007) (citations omitted).   A party must do more than introduce sworn testimony that it did

not receive the mailing; for example, evidence that the party employed standard procedures for

receipt and sorting of legal process, coupled with testimony that the process was not received,

has been sufficient to rebut the presumption.   *In re Dodd*, 82 B.R. 924, 929 (N.D. Ill. 1987); *cf.*

*In re Ms. Interpret*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (concluding that presumption was

not rebutted because the defendant "did not present any evidence that [it] employed standardized

sorting and routing procedures, or even that it regularly reviewed its mail").

If the Court finds that process was not effectively served, the plaintiff bears the burden of

proving good cause for failure to timely serve the defendant.   *See Savage & Assocs., P.C. v.*

*Williams Comms. (In re Teligent Servs.),* 324 B.R. 467, 472 (Bankr. S.D.N.Y. 2005).   In

determining whether good cause exists, a court will weigh "(1) the plaintiff's reasonable efforts

to effect service and (2) the prejudice to the defendant from delay." *Id.* (quoting *Redtail Leasing*

*v. Thrasher (In re Motel 6 Secs. Litig.),* 1995 WL 649930, at *1 (S.D.N.Y. Nov. 6, 1995)).

Even in the absence of good cause, courts may exercise their discretion to grant leave to

re-serve. *Id.* at 473.   In deciding whether to exercise such discretion, courts generally consider

the following four factors:

> 1) whether the statute of limitations would bar a re-filed action,
> 2) whether the defendant attempted to conceal the defect in service,
> 3) whether the defendant would be prejudiced by excusing the
> plaintiff from the time constraints of the provision, and 4) whether
> the defendant had actual notice of the claims asserted in the
> complaint.

*Id.*; *see also Hertzner v. U.S. Postal Serv.*, No. 05-CV-2371, 2007 WL 869585, at *7 (E.D.N.Y.

Mar. 20, 2007) (citing *Reese v. University of Rochester*, No. 04-CV-6117, 2005 WL 1458632

(W.D.N.Y. June 25, 2005)).

Although not expressly included in the four-factor test above, courts often consider the plaintiff's diligence in attempting to serve the defendant. The *Hertzner* court declined to exercise its discretion to permit re-service because, even though the four factors on balance favored granting leave to re-serve, the plaintiff pointed to "absolutely no attempts to effect service" within Rule 4(m)'s 120-day time limit. *Hertzner*, 2007 WL 869585, at *7–8. Plaintiff's counsel had instructed a staff member to serve the defendants while he was away on vacation; upon his return, there was still a week left in the time period, but plaintiff's counsel did not confirm whether service had been effectuated. *Id*; *cf. Reese*, 2005 WL 1458632, at *2 (granting discretionary extension of time to serve where process server suffered from a broken foot and underwent emergency surgery, but served the summons and complaint 17 days after the time period had elapsed). Moreover, the *Hertzner* court took note of previous failures to serve defendants in a prior action, citing the previous failures as an "additional factor [that] tips the scale of equities against the granting of a discretionary extension." *Hertzner*, 2007 WL 869585, at *8.

## IV.    ANALYSIS

As a preliminary matter, the Plaintiff concedes that Lehman GIFT and Pens Inv Comm are not legal entities, and focuses its Opposition on the GIFT Trust. (Opp. at 1.) The Court will likewise focus its analysis on the GIFT Trust.

### A.    The Amended Complaint States a Claim Under Which Relief Can be Granted Under Rule 12(b)(6)

#### 1.    *The Amended Complaint properly corrected the name of the GIFT Trust*

The Moving Defendants make much of the fact that the GIFT Trust was added to the Amended Complaint in addition to the two Moving Defendants already listed in the Original Complaint, rather than entirely replacing an already-named entity. However, the May 2015

13

Stipulation permitted Plaintiffs to "make certain corrections with respect to the identities of the

hundreds of transferee-defendants." (ECF Doc. # 90.) The Plaintiff argues that JPMC provided

the names of the Term Loan Lenders in a September 2009 letter, but the GIFT Trust itself was

not identified by JPMC until it filed its *Answer to Complaint* in October 2009. (ECF Doc. # 5.)

It appears that the Plaintiff assumed "Lehman GMAM Inv FDS TR" was the appropriate name

for the GIFT Trust, whose complete name is "GMAM Investment Funds Trust." Given the

similarity between the two names and the Court's order permitting the Plaintiff to make

corrections to the "identities" of the Term Loan Lenders, the Court finds that the addition of

"GMAM Investment Funds Trust" was an appropriate correction of the name "Lehman GMAM

Inv FDS TR." The fact that the previous two names were not removed from the pleadings is

beside the point, as the Plaintiff and Moving Defendants agree that Lehman GIFT and Pens Inv

Comm are not existing legal entities and, presumably, are merely the result of incorrect naming

of the Term Loan Lenders.

> 2.    *The Amended Complaint relates back to the Original Complaint and therefore is not time-barred if properly served*

Rule 15 provides that an amendment to a pleading relates back to the date of the original

pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).  It is undisputed that provisions (A) and (B) are satisfied.  As discussed above, the inclusion of the GIFT Trust in the Amended Complaint corrected the name of an existing defendant.  Therefore, the Court must determine whether the GIFT Trust was prejudiced by not being involved in the earlier phase of the proceedings, and whether the GIFT Trust "knew or should have known" that but for a mistake, the action would have been brought against it.

This Court's Dismissal Opinion rejected the argument that the Term Loan Lenders were prejudiced by not participating in the first phase of this litigation, concluding that the prejudice argument was "speculative."  552 B.R. at 276.  It is unclear how the structural changes the GIFT Trust has undergone since 2011 (*see* Reply at 7–8) have prejudiced the GIFT Trust from "defending [the action] on the merits."  FED. R. CIV. P. 15(c)(1).  Although the GIFT Trust argues persuasively that it has undergone changes which would make it difficult or impossible to track down the original investors in the Term Loan, it does not argue that these changes would have affected its litigation strategy.  The GIFT Trust's arguments regarding prejudice have already been considered by this Court in great depth, and rejected in the Dismissal Opinion.

The last prong of the test is whether the GIFT Trust knew or should have known that but for a mistake, the action would have been brought against it.  The Court considers this to be a close question, but in light of the ruling below, it is not determinative of the outcome.  The GIFT Trust is correct that the mere public nature of the litigation is insufficient to prove this element. *See In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. 620, 631 (Bankr. S.D.N.Y. 2012) (concluding that "extensive media coverage" of the case was insufficient to place putative defendants on constructive notice).  The GIFT Trust, however, acknowledges that "in [JPMC's] view, the GIFT Trust was a Term Loan Lender" and does not dispute that JPMC kept the Term

Loan Lenders apprised of developments.  (*Id.* at 11.)  It has not been established that the GIFT

Trust specifically was apprised of developments.  Tellingly, the Glass Reply Affidavit offers

only speculation on what the GIFT Trust's insurance reports "signif[y]" and the "standard

practice that the GIFT Trust does not" default in actions brought against it—but offers no sworn

testimony that the GIFT Trust had no knowledge of this action.  (Glass Reply Aff. ¶¶ 11–12.)  In

light of the publicity, at least in the legal community, that surrounded the filing of this adversary

proceeding, it is not a stretch to say that the GIFT should have known of the adversary

proceeding.  Taking all of these factors into consideration, the Court finds that the Plaintiff has

demonstrated the GIFT Trust knew or should have known that, but for a mistake in misnaming

the entity in the Original Complaint, it would have been a defendant in this proceeding.

Accordingly, the Court concludes that Amended Complaint relates back to the date of the

Original Complaint and the claims are therefore not time-barred.

### B.    Process and Service of Process on the GIFT Trust Were Defective

1.    *The Amended Summons did not sufficiently identify the defendant to whom it was directed*

Rule 4(b) and the Advisory Committee Notes make clear that the summons must

"effectively identif[y]" the defendant to be served.  *See Grp. Indep. Sales Org., Inc. v.

Teleservices, Inc.*, No. 2:09-CV-02231, 2009 WL 3100605, at *1 (W.D. Tenn. Sept. 23, 2009)

(holding that service of blank summons was defective but granting leave to re-serve); *PCM

Sales, Inc. v. Quadbridge, Inc.*, No. 3:14-CV-2806-L, 2016 WL 407300, at *4 (N.D. Tex. Feb. 3,

2016) ("A summons must include, among other things, the names of the parties and be directed

to the defendant being sued.") (citing Rule 4(b) and 5B Wright & Miller, Federal Practice and

Procedure § 1353).

Here, the Plaintiff served the Amended Summons, listing over 500 defendants without identifying to which of those defendants the summons was directed.  In a case such as this one with over 500 defendants, and in which the Plaintiff is serving third party trustees or agents for service of process, the need for the summons to effectively identify the particular defendant to which it is directed is particularly acute.  The Amended Summons is therefore deficient under Rule 4(b)—and insufficient process is independent grounds for dismissal under Rule 12(b)(4). *See Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008) ("Where process *or* service of process is insufficient the courts have broad discretion to dismiss the action.") (internal citation and quotation marks omitted) (emphasis added); *Fagan v. Deutsche Bundesbank*, 438 F.Supp.2d 376, 386 (S.D.N.Y.2006) (dismissing action for failure to satisfy process requirements for service on foreign state); *Wasson v. Riverside Cty.*, 237 F.R.D. 423, 424 (C.D. Cal. 2006) (granting motion to dismiss under Rule 12(b)(4) where summons failed to name defendant).

2.      *The presumption of receipt does not attach*

Even if the Amended Summons had properly identified the defendant to whom it was addressed, the mailing envelope in which it was placed was not properly addressed.  The mailing envelope was addressed to the GIFT Trust but did not identify State Street at all, much less as trustee for the GIFT Trust.  (Gargan Service Aff. Ex. A at 22.)  Although the presumption of receipt is strong, it attaches only where the mailing was "properly directed."  *See, e.g.*, *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884) (concluding that a letter "properly directed" is presumed to have reached its destination); *see also Hagner*, 285 U.S. at 430 (same).  "Properly directed" means that the party seeking to invoke the presumption must prove that the mailing "(1) was properly addressed; (2) had sufficient postage; and (3) was properly deposited in the mails."

17

*Busquets-Ivars v. Ashcroft*, 333 F.3d 1008, 1010 (9th Cir. 2003) (mailing which bore an incorrect

ZIP code was not "properly addressed" and therefore no presumption of receipt attached).

The failure to identify State Street as trustee for the GIFT Trust is no mere technical

error.  As counsel for both parties acknowledged at oral argument, the Lincoln Street Address

houses many floors of office space for many different businesses.  The GIFT Trust is not one of

them.  Although the envelope was directed to the "first floor," no evidence was introduced that

State Street occupies the first floor of the building or that the first floor is an appropriate mailing

address for State Street.  The envelope was directed to an entity without offices in the building

and bore no indication that it was intended for State Street.  The mailing was thus missing an

essential part of the address and was not properly directed.  The presumption of receipt does not

attach here.

        3.       *Assuming the presumption of receipt attaches, it has been rebutted*

The presumption that a properly addressed and mailed document was received by the

addressee is "rebuttable."  *In re Dodd*, 82 B.R. 924, 928 (N.D. Ill. 1987); *see also In re Dana

Corp.*, 2007 WL 1577763, at *4 (concluding that the presumption is "very strong," but rebuttable

by "specific," "objective" evidence).  "Direct testimony of nonreceipt, particularly in

combination with evidence that standardized procedures are used in processing claims, would be

sufficient to support a finding that the mailing was not received."  *In re Dodd*, 82 B.R. at 928.

The Plaintiff cites authority that parties seeking to rebut the presumption of receipt must

overcome a high bar.  The Court notes at the outset that Plaintiff's authority does not concern

Rule 12(b)(4).  *See Leon v. Murphy*, 988 F.2d 303 (2d Cir. 1993) (construing whether a mailing

was received for purposes of summary judgment, not dismissal under Rule 12(b)(4)); *BASF

Corp. v. Norfolk S. Ry. Co.*, No. 04-CV-9662, 2008 WL 678557 (S.D.N.Y. Mar. 10, 2008)

(same).  *Leon* and *BASF* articulate a high standard for rebutting the presumption: namely, that

mere denial of receipt or description of incoming mail processes is insufficient; the purported recipient must offer proof that the sender's "regular office procedure was not followed or was carelessly executed." *Leon*, 988 F.2d at 309; *see also BASF Corp.*, 2008 WL 678557, at *4 (holding that affidavits describing process of receiving mail are insufficient to rebut presumption that properly addressed letter was received).

But even under the high standard Plaintiff advocates, the Moving Defendants have successfully rebutted the presumption.  In contrast to the cases relied upon by Plaintiff, which offered bare affidavits of nonreceipt or general descriptions of incoming mail procedures, the Connelly Affidavit offers specific evidence.  *Cf. Leon*, 988 F.2d at 309 ("The only evidence provided by Leon was his and his wife's denials that they ever received these notices.").  The Connelly Affidavit describes a standardized process not just for receiving mail, but also for routing legal service of process within State Street.  (Connelly Aff. ¶ 2.)  Connelly attests that State Street employs a Legal Service Policy, under which all legal process is sent to Connelly's attention and logged contemporaneously in the Legal Service Log.  (*Id.*)  Connelly further attests that the Legal Service Log includes no entry for the Amended Complaint and Amended Summons.  (*Id.* ¶ 4.)  Further, the Moving Defendants have offered evidence that the Plaintiff's "regular office procedure was not followed or was carelessly executed": the Gargan Service Affidavit shows that the envelope was improperly addressed.  (Gargan Service Affidavit Ex. A at 22.)  Even if the presumption of receipt had attached and even under the high standard urged by the Plaintiff, the Moving Defendants have offered sufficient evidence to successfully rebut it.

4.      *The Plaintiff has not demonstrated that the Court should exercise its discretion to permit the Plaintiff to re-serve*

The Plaintiff makes no serious argument that it has shown good cause for leave to re-serve; rather, leave to re-serve turns on whether the Court should exercise its discretion.  Courts

consider four main factors in determining whether to exercise discretion in permitting re-service, as well as whether the Plaintiff has diligently attempted to complete service. The first factor, "whether the statute of limitations would bar a re-filed action," weighs in favor of the Plaintiff. *See Hertzner*, 2007 WL 869585, at *7. Both parties agree that the two-year statute of limitations expired years ago. The Plaintiff makes no argument that the "defendant attempted to conceal the defect in service," so the second factor weighs in favor of the GIFT Trust. (*See* Opp. at 15 n. 8.) The third and fourth factors, "whether the defendant would be prejudiced by excusing the plaintiff from the time constraints of the provision," and "whether the defendant had actual notice of the claims asserted in the complaint" have been discussed above in connection with whether the Amended Complaint relates back to the date of the Original Complaint. As discussed in the Dismissal Opinion, the GIFT Trust has not been prejudiced by its nonparticipation in the first phase of this action; the GIFT Trust has also made no showing that an additional brief delay would offer any concrete prejudice to its ability to litigate the claims on their merits. As discussed above, while a close question, it seems likely that the GIFT Trust had actual notice of the proceeding, or at least should have known of it. Therefore, the third and fourth factors weigh in favor of the Plaintiff.

However, the record reflects numerous service errors by the Plaintiff. The Plaintiff initially named two non-existent entities in the Original Complaint (Mot. at 3); retained those entities as defendants in the Amended Complaint even though it had obtained corrected information about the identity of the GIFT Trust (ECF Doc. # 91); attempted service upon those non-existent entities in addition to the GIFT Trust (Mot. at 16–17); and attempted service of a summons with over 500 named defendants without identifying on the summons to whom it was directed (*id.* at 16–17). Plaintiff essentially carpet-bombed multiple entities and addresses,

20

without specifying which summons was intended for which defendant or identifying the trustee

or agent for service of process to whom the documents were addressed.  Additionally, over six

years have passed since the filing of the Original Complaint.  An orderly litigation process

justified multiple extensions of time to serve defendants other than JPMC; but it was incumbent

on Plaintiff to properly serve all defendants before the last service extension expired.  It did not

do so with respect to the Moving Defendants.  Under these circumstances, exercise of this

Court's discretion to permit the Plaintiff to re-serve is not warranted.

### V.    <u>CONCLUSION</u>

Although the Plaintiff has shown that the Amended Complaint relates back to the

Original Complaint and therefore states a claim under Rule 12(b)(6), both process and service of

process were deficient under Rules 12(b)(4) and 12(b)(5).  The Motion is therefore **GRANTED**.

The Court declines to exercise discretion to permit the Plaintiff leave to re-serve the Amended

Complaint and Amended Summons.

**IT IS SO ORDERED.**

Dated:    December 7**,** 2016
　　　　New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge