**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                          Debtors.

------------------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                          Plaintiff,

                 against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                          Defendants.

------------------------------------------------------------------------x

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

Adversary Proceeding

Case No. 09-00504 (MG)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING**
**THE NON-JPMORGAN TERM LENDERS' EFFECTIVENESS DEFENSE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.      THE COMMENCEMENT OF THIS ACTION .................................................... 3

II.     PHASE I SUMMARY JUDGMENT ..................................................................... 5

III.    PHASE I APPEAL TO THE SECOND CIRCUIT ............................................... 6

     A.     The Record on Appeal to the Second Circuit ........................................... 6

         1.     The Synthetic Lease Termination Documents Included the Main Lien ..... 6

         2.     JPMorgan and Its Counsel Reviewed and Approved the Termination Documents ..................................................................... 8

         3.     The Parties and Their Counsel Did Not Recognize the Error in the Termination Statements ......................................... 10

     B.     The Second Circuit's Holding .................................................................. 12

     C.     The Amended Complaint and Motions to Dismiss and for Judgment on the Pleadings ........................................................................ 12

     D.     Phase II Discovery by the Non-JPMorgan Term Lenders ...................... 13

ARGUMENT ..................................................................................................................... 14

I.      LEGAL STANDARD .......................................................................................... 14

II.     THE SECOND CIRCUIT PREVIOUSLY HELD THAT THE 2008 TERMINATION STATEMENT WAS EFFECTIVE ......................................... 15

     A.     The UCC Requires Only That JPMorgan Authorize the Act of Filing the 2008 Termination Statement, Not the Legal Consequences ......................................................................................... 15

     B.     The Undisputed Facts Establish that JPMorgan Authorized the Filing of the 2008 Termination Statement ............................................. 16

III.    REGARDLESS OF WHETHER THE SECOND CIRCUIT OPINION IS LAW OF THE CASE, THE TERM LENDERS ARE BOUND BY THE FILING OF THE 2008 TERMINATION STATEMENT ...................................... 17

IV.    THE NON-JPMORGAN TERM LENDERS HAVE NOT DISCOVERED ANY NEW
FACTS NOT PREVIOUSLY BEFORE THE SECOND CIRCUIT AND THE
PURPORTED "NEW" FACTS ARE LEGALLY IRRELEVANT.................................. 19

CONCLUSION....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Filippini v. Beckworth*,
    776 F. Supp. 673 (E.D.N.Y. 1991) ...................................................... 14

*Hart v. Rick's Cabaret Int'l., Inc.*,
    60 F. Supp. 3d 447 (S.D.N.Y. 2014).................................................... 14

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)........................................................... 14, 22

*Holcomb v. Iona Coll.*,
    521 F.3d 130 (2d Cir. 2008)................................................................ 14

*Klotz v. Xerox Corp.*,
    No. 08-3214-cv, 2009 WL 1585770 (2d Cir. June 5, 2009).................. 14

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank,
    N.A (In re Motors Liquidation Co.)*,
    486 B.R. 596 (Bankr. S.D.N.Y. 2013)........................................... passim

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank,
    N.A*,
    103 A.3d 1010 (Del. 2014) ..................................................... 15, 16, 19

*Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank,
    N.A. (In re Motors Liquidation Co.)*,
    552 B.R. 253 (Bankr. S.D.N.Y. 2016)................................. 5, 13, 18, 20

*Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank,
    N.A. (In re Motors Liquidation Co.)*,
    755 F.3d 78 (2d Cir. 2014)........................................................... passim

*Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank,
    N.A. (In re Motors Liquidation Co.)*,
    777 F.3d 100 (2d Cir. 2015)......................................................... passim

*Stern v. LIT Am. Inc.*,
    No. 93 Civ. 1074 (JSM), 1994 WL 67846 (S.D.N.Y. Mar. 2, 1994) ...................................... 14

**Statutes**

Del. Code. Ann. Tit. 6 § 9-509 ................................................................................................... 19

Del. Code. Ann. Tit. 6 § 9-510 ................................................................................................... 19

Del. Code. Ann. Tit. 6 § 9-513 ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................................... 14

Plaintiff Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**" or "**Plaintiff**") respectfully submits this memorandum of law in support of its motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 7056-1 of the Local Bankruptcy Rules. As an affirmative defense to this action, numerous Term Lenders other than JPMorgan Chase Bank, N.A. (the "**Non-JPMorgan Term Lenders**") assert that the UCC-3 termination statement filed with respect to the UCC-1 financing statement for the Term Loan (the "**Main Lien**") was not authorized by JPMorgan Chase Bank, N.A. ("**JPMorgan**"), and thus the filing was not effective to terminate the Main Lien (the "**effectiveness defense**" or "**effectiveness argument**"). This motion seeks dismissal of the effectiveness defense as a matter of law.[1]

## PRELIMINARY STATEMENT

The Second Circuit has already decided the same effectiveness argument that the Non-JPMorgan Term Lenders continue to assert. The Second Circuit held that the Main Lien that perfected the Term Loan was terminated when JPMorgan, as the secured party of record, authorized the filing of a UCC-3 termination statement with respect to the Main Lien. The Non-JPMorgan Term Lenders cannot circumvent this holding or its impact on the Main Lien, and their effectiveness defense should be dismissed.

Because the Non-JPMorgan Term Lenders were not served with the complaint in this action until after the Second Circuit's decision (consistent with case-management orders entered in the action), this Court left open the possibility for the Non-JPMorgan Term Lenders to assert

---

[1] By its motion, Plaintiff seeks summary judgment as to any affirmative defense asserted in the following Answers, or any other Answers filed by Non-JPMorgan Term Lenders that in substance assert the effectiveness defense: Adv. Pro. Dkt. Nos. 217, 219, 222, 224, 225, 227, 228, 229, 230, 231, 232, 233, 234, 238, 241, 242, 280, 284, 292, 295, 334, 684.

their effectiveness defense but only to the extent the Non-JPMorgan Term Lenders could raise issues not already litigated.  This Court limited the Non-JPMorgan Term Lenders to "meritorious legal or factual defenses to liability or damages on so far untested theories" that had not already been decided by the Second Circuit.  As this Court explained, the Second Circuit's holding is law of the Circuit and precludes the Non-JPMorgan Term Lenders from simply re-litigating an already decided issue.  Because the Non-JPMorgan Term Lenders do not raise any new legal or factual defenses regarding the effectiveness of the UCC-3 termination statement, their attempt to relitigate what the Second Circuit has already decided should be rejected.  Further, the Non-JPMorgan Term Lenders are bound by the actions of JPMorgan, their designated administrative agent under the term loan, and cannot alter the fact that the Main Lien has been terminated.

The Non-JPMorgan Term Lenders attempt to evade the Second Circuit's decision by advancing the misguided argument that Mayer Brown LLP ("**Mayer Brown**"), General Motors Corporation's counsel, did not reasonably believe that it was authorized to file the UCC-3 termination statement.  This argument, however, fails as a matter of law and fact.

First, the Non-JPMorgan Term Lenders' position directly contradicts what the Second Circuit already has determined: namely, that in filing the UCC-3 termination statement Mayer Brown performed the act that JPMorgan authorized them to perform, that "[n]othing more is needed," *Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 777 F.3d 100, 104 (2d Cir. 2015), and that the filing was thus legally effective to terminate the Main Lien.  The Non-JPMorgan Term Lenders do not, and cannot, dispute that JPMorgan was the secured party of record with respect to the term loan, and that it is now judicially established in a final non-appealable decision that JPMorgan caused the termination of the Main Lien.

2

Second, even if Mayer Brown recognized that the termination statement covered a financing statement related to a different, unrelated loan, as the Non-JPMorgan Term Lenders now allege without any genuine basis, such recognition is not relevant under the Delaware Supreme Court's definition of authorization. The critical inquiry to be decided under agency law, as is clear from the Second Circuit's application of that law in this case, is whether Mayer Brown reasonably understood JPMorgan to have authorized the act of filing. Mayer Brown's knowledge as to what the UCC-3 termination statement covered is not relevant to this question.

Finally, even if Mayer Brown's awareness of the consequences of the filing were relevant (which it is not), the Non-JPMorgan Term Lenders have failed to discover any evidence that creates a disputed question of material fact as to whether Mayer Brown realized that the termination statement affected the security for a different, unrelated loan. The Second Circuit already concluded, consistent with the overwhelming evidence presented on appeal, that no one at Mayer Brown knew that the UCC-3 termination statement would terminate a different, unrelated financing statement. Even after engaging in extensive additional discovery, including retaking the depositions of all the relevant witnesses, there are no material facts in dispute.

## BACKGROUND

## I.   THE COMMENCEMENT OF THIS ACTION

On June 1, 2009 (the "**Petition Date**"), General Motors Corporation ("**Old GM**") filed for bankruptcy protection. Bankr. Dkt. No. 1.[2] Three weeks after the Petition Date, Old GM repaid a loan of approximately $1.5 billion (the "**Term Loan**") to a syndicate of lenders (the "**Term Lenders**"). Bankr. Dkt. No. 2529. The Term Loan was governed by a term loan agreement,

---

[2] All references to the Adversary Docket are to *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 09-00504. All references to the Bankruptcy Docket are to *In re: Motors Liquidation Co. f/k/a General Motors Corp.*, Case No. 09-50026.

dated as of November 29, 2006, as amended on March 4, 2009 (the "**Term Loan Agreement**")

and an accompanying collateral agreement between JPMorgan, Old GM, and Saturn Corporation,

dated as of November 29, 2006 (the "**Collateral Agreement**"), and was secured in part by the

Main Lien, a UCC-1 filed with the Delaware Secretary of State and bearing the filing number

"6416808 4." *Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan*

*Chase Bank, N.A. (In re Motors Liquidation Co.)*, 777 F.3d 100, 101 (2d Cir. 2015).

Prior to Old GM's repayment of the loan, however, JPMorgan, the administrative agent

for the Term Loan, informed the Committee of Unsecured Creditors (the "**Committee**") that a

UCC-3 termination statement relating to the Main Lien (the "**2008 Termination Statement**"),

had been inadvertently filed back in 2008, calling into question whether the Main Lien remained

perfected. *Id*. at 102.  On June 25, 2009, the Bankruptcy Court entered the Final Order Pursuant

to Bankruptcy Code Sections 105(a), 361, 363, 364 and 507 and Bankruptcy Rules 2002, 4001

and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-

Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C)

Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-

Petition Secured Parties (the "**DIP Order**").  Bankr. Dkt. No. 2529 (DIP Order).  The DIP Order

preserved the right of the Committee to investigate and, if appropriate, challenge the purported

perfection of the security interest related to the Term Loan.  *Id.* ¶19(d).  A month after repayment

of the Term Loan and following its investigation, the Committee filed its complaint in this action,

seeking a determination that the 2008 Termination Statement was effective to terminate the Main

Lien.  Adv. Pro. Dkt. No. 1.

The Bankruptcy Court (with the consent of JPMorgan) ordered that the litigation would

occur in two phases: (i) the Committee (and later the Avoidance Action Trust, as successor

4

plaintiff), and JPMorgan would first litigate whether the 2008 Termination Statement terminated the Main Lien ("**Phase I**") and (ii) if the 2008 Termination Statement was held to be effective as to the Main Lien, Plaintiff would then serve the summons and complaint on the remaining Term Lenders and litigate the value of the Term Lenders' remaining perfected security interest ("**Phase II**"). *Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 552 B.R. 253, 262-63 (Bankr. S.D.N.Y. 2016).

## II.    PHASE I SUMMARY JUDGMENT

After the conclusion of the discovery period for Phase I, Plaintiff and JPMorgan cross-moved for summary judgment on the effectiveness of the 2008 Termination Statement as to the Main Lien.  Adv. Pro. Dkt. Nos. 24, 28; *see also Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 755 F.3d 78, 82 (2d Cir. 2014).

On March 1, 2013, the Bankruptcy Court granted summary judgment for JPMorgan, concluding that the 2008 Termination Statement was not a legally effective filing and thus did not cause the Main Lien to become unperfected.  *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A (In re Motors Liquidation Co.)*, 486 B.R. 596, 623-27 (Bankr. S.D.N.Y. 2013).  Further, the Bankruptcy Court stated that authorization under the Delaware UCC required the agent to believe "that the principal intended for the agent to terminate the initial financing statement for that particular financing." *Id.* at 605.  The Bankruptcy Court concluded that "the lack of the requisite belief on the part of GM that it was authorized to terminate the Main Term Loan UCC-1 is ultimately conclusive" to finding that Mayer Brown did not have authority to file the 2008 Termination Statement. *Id.*

5

### III.    PHASE I APPEAL TO THE SECOND CIRCUIT

The Bankruptcy Court certified its summary judgment decision for direct appeal to the

Second Circuit, Adv. Pro. Dkt. No. 74, and on March 7, 2013, Plaintiff appealed to the Second

Circuit, Adv. Pro. Dkt. No. 76.

#### A.    The Record on Appeal to the Second Circuit

##### 1.    The Synthetic Lease Termination Documents Included the Main Lien

The record before the Second Circuit established that, in 2001, Old GM entered into a

synthetic lease financing transaction (the "**Synthetic Lease**") with a syndicate group of lenders,

secured by liens on twelve parcels of real estate.  *In re Motors Liquidation Co.*, 777 F.3d 100, 101

(2d Cir. 2015).  JPMorgan served as the administrative agent for the Synthetic Lease and was

identified as the secured party of record on the UCC-1 financing statements.  *Id.*  In 2006, Old

GM entered into the unrelated Term Loan and JPMorgan again served as the administrative agent

and was identified as the secured party of record on the Main Lien.  *Id.*

In the fall of 2008, Old GM planned to pay off the Synthetic Lease and asked its counsel,

Mayer Brown, to prepare the necessary documents to repay JPMorgan and the other lenders and

release the interests the Synthetic Lease lenders held in Old GM's property.  Declaration of Eric

B. Fisher in Support of Plaintiff's Motion for Partial Summary Judgment Dismissing the Non-

JPMorgan Term Lenders' Effectiveness Defense, dated September 14, 2018 (the "**Fisher

Declaration**") Ex. A (Gordon 2010 Deposition Tr. at 5:13-6:1); *id.* Ex. B (Green 2010 Deposition

Tr. at 18:22-20:17); *id.* Ex. C (Gonshorek 2010 Deposition Tr. at 7:16-10:18); *id.* Ex. D (October

7, 2008 Email from Green to Perlowski); *see also In re Motors Liquidation Co.*, 777 F.3d at 102.

The Mayer Brown team included Robert Gordon ("**Gordon**"), a partner, Ryan Green ("**Green**"),

an associate, and Michael Perlowski ("**Perlowski**") and Stewart Gonshorek ("**Gonshorek**"), both paralegals.

On October 1, 2008, Gordon asked Green to prepare a closing checklist and drafts of the documents required to pay off the Synthetic Lease and release the interests the Synthetic Lease lenders held in Old GM's property. Fisher Decl. Ex. A (Gordon 2010 Deposition Tr. at 5:13-21); *see also In re Motors Liquidation Co.*, 777 F.3d at 102. Green then asked Perlowski to perform a search for UCC-1 financing statements that had been recorded against Old GM in Delaware. *See* Fisher Decl. Ex. D (October 7, 2008 Email from Green to Perlowski); *see also In re Motors Liquidation Co.*, 777 F.3d at 102; *In re Motors Liquidation Co.*, 486 B.R. at 610. Perlowski identified three UCC-1 financing statements, only two of which were related to the Synthetic Lease. *See* Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 20:13-22:7); *see also In re Motors Liquidation*, 777 F.3d at 102; *In re Motors Liquidation Co.*, 486 B.R. at 610.

Green drafted a closing checklist for the Synthetic Lease that identified all three UCC-1 financing statements as statements that would be terminated. Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 8:12-14); *see also In re Motors Liquidation*, 777 F.3d at 102; *In re Motors Liquidation*, 486 B.R. at 610. Green then asked Gonshorek to prepare the required UCC-3 termination statements and Gonshorek created three—two identifying the financing statements for the Synthetic Lease and one identifying the Main Lien. *See* Fisher Decl. Ex. C (Gonshorek 2010 Deposition Tr. at 9:6-10:8); *In re Motors Liquidation*, 486 B.R. at 611; *In re Motors Liquidation*, 777 F.3d at 102.

Green and Gonshorek also drafted an escrow agreement and instructions for the Synthetic Lease, identifying the documents that would be delivered to the title company and which, once Old GM repaid the Synthetic Lease, would be handled by the title company in accordance with

the instructions in the escrow agreement.  *See* Fisher Decl. Ex. B (Green 2010 Deposition Tr. at

52:4-53:3); *In re Motors Liquidation*, 486 B.R. at 612; *In re Motors Liquidation Co.*, 755 F.3d at

81.  The escrow agreement identified the three UCC-3 termination statements, including the one

for the Main Lien, and provided that upon closing, the title company would forward the UCC-3

termination statements to Mayer Brown which would file them on Old GM's behalf.  Fisher Decl.

Ex. J (October 24, 2008 Email from Green to Wineman, Merjian and Ledyard, at

JPMCB-STB-00000430); *see also In re Motors Liquidation Co.*, 755 F.3d at 81; *In re Motors

Liquidation Co.*, 486 B.R. at 612.

## 2.    JPMorgan and Its Counsel Reviewed and Approved the Termination Documents

In connection with the Synthetic Lease payoff in 2008, JPMorgan was represented by

Mardi Merjian ("**Merjian**") of Simpson Thacher.  After Mayer Brown prepared the drafts, the

closing checklist, the 2008 Termination Statement, and the escrow instructions that referenced the

Main Lien were sent to and reviewed by JPMorgan and Simpson Thacher.  *In re Motors

Liquidation*, 755 F.3d at 80-81; *see also In re Motors Liquidation*, 486 B.R. at 611-12.  Green

circulated an initial draft of the closing checklist to Old GM and Simpson Thacher, which

forwarded it to JPMorgan.  *See* Fisher Decl. Ex. I (October 15, 2008 Email from Merjian to

Duker); *In re Motors Liquidation Co.*, 486 B.R. at 610.  Green subsequently circulated an

updated, but largely similar, draft of the closing checklist to Simpson Thacher, among other

parties.  Fisher Decl. Ex. G (October 15, 2008 Email from Green to Merjian and Ledyard); *see

also In re Motors Liquidation*, 486 B.R. at 610.  All drafts of the closing checklist identified the

Main Lien as one of the financing statements to be terminated in connection with the payoff of the Synthetic Lease. *Id*.

Green also sent the draft UCC-3 termination statements, including the one identifying the Main Lien for termination, to Merjian, who responded to Green, stating, "Nice job on the documents." Fisher Decl. Ex. F (October 17, 2008 Email from Merjian to Green); *see also In re Motors Liquidation Co.*, 486 B.R. at 611-12. Merjian forwarded the documents to Richard Duker ("**Duker**"), the responsible managing director at JPMorgan. Fisher Decl. Ex. H (Merjian 2010 Deposition Tr. at 18:15-19:11; 24:25-25:24); *id.* Ex. I (October 15, 2008 Email from Merjian to Duker); *id.* Ex. G (October 15, 2008 Email from Merjian to Duker). No further comments were provided to Mayer Brown on the UCC-3 termination statements. *Id.* Ex. B (Green 2010 Deposition Tr. at 47:1-17).

Green also sent Merjian the draft escrow instructions that identified the Main Lien as one of the financing statements that would be terminated once the Synthetic Lease was repaid. *In re Motors Liquidation Co.*, 486 B.R. at 612; *see also* Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 51:23-54:4); *id.* Ex. J (October 24, 2008 Email from Green to Wineman, Merjian and Ledyard); *id.* Ex. C (Gonshorek 2010 Deposition Tr. at 25:9-26:8); *id.* Ex. H (Merjian 2010 Deposition Tr. at 29:15-32:11); *id.* Ex. K (October 24, 2008 Email from Green to Wineman, Merjian and Ledyard). Green asked Merjian if he had any comments and Merjian replied that "it was fine." *In re Motors Liquidation Co.*, 486 B.R. at 614; Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 54:5-55:23); *id.* Ex. L (October 27, 2008 Email from Merjian to Green). Merjian signed the escrow agreement on behalf of JPMorgan. Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 55:24-56:18); *id.* Ex. M (Final Fully Executed Escrow Instructions). Before signing, Merjian reviewed the escrow instructions and understood that the termination statements listed on the

9

document would be released upon the closing of the Synthetic Lease. *Id.* Ex. H (Merjian 2010

Deposition Tr. at 34:19-35:5).

### 3.    The Parties and Their Counsel Did Not Recognize the Error in the Termination Statements

Neither the parties to the Synthetic Lease transaction nor their counsel realized that one of

the UCC-3 termination statements filed as part of the Synthetic Lease transaction covered a

financing statement unrelated to the Synthetic Lease, let alone one that would terminate the Main

Lien. *In re Motors Liquidation Co.*, 777 F.3d at 102; *see also* Fisher Decl. Ex. B (Green 2010

Deposition Tr. at 85:8-87:25).  Green did not realize that one of the three UCC-1 financing

statements identified by Perlowski was unrelated to the Synthetic Lease.  *In re Motors*

*Liquidation Co.*, 777 F.3d at 102; *see also* Fisher Decl. Ex. B (Green 2010 Deposition

Tr. at 99:1-8).  Similarly, no one at Mayer Brown involved in drafting the closing checklist, and

no one at JPMorgan or Simpson Thacher which reviewed it, recognized that one of the financing

statements was unrelated to the Synthetic Lease.  Fisher Decl. Ex. B (Green 2010 Deposition Tr.

at 99:1-8); *id.* Ex. H (Merjian 2010 Deposition Tr. at 33:14-18); *see also In re Motors Liquidation*

*Co.*, 486 B.R. at 610-11.  The record showed that when Gonshorek prepared the UCC-3

termination statements for the payoff of the Synthetic Lease transaction, he intended to terminate

only UCC financing statements related to the Synthetic Lease.  Fisher Decl. Ex. C (Gonshorek

2010 Deposition Tr. at 9:6-10:18); *see also In re Motors Liquidation Co.*, 486 B.R. at 610-11.[3]

Both Gordon and Green from Mayer Brown mistakenly thought they were filing documents

exclusively relating to the Synthetic Lease and believed they were only authorized by JPMorgan

---

[3] The evidence in the record before the Second Circuit in connection with Plaintiff's appeal included the complete deposition testimony of witnesses from JPMorgan, Simpson Thacher, and Mayer Brown.  *See generally* Fisher Decl. Ex. A (Gordon 2010 Deposition Tr.); *id.* Ex. B (Green 2010 Deposition Tr.); *id.* Ex. C (Gonshorek 2010 Deposition Tr.); *id.* Ex. H (Merjian 2010 Deposition Tr.); *id.* Ex. N (Duker 2010 Deposition Tr.).

to make filings as to the Synthetic Lease.  Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 85:8-

89:9).  In fact, no one from Mayer Brown involved in the Synthetic Lease transaction even knew

about the existence of the Term Loan at that time.  *Id.* Ex. B (Green 2010 Deposition Tr. at 84:12-

23); Ex. C (Gonshorek 2010 Deposition Tr. at 47:2-19); Ex. A (Gordon 2010 Deposition Tr. at

66:18-67:6), Ex. H (Merjian 2010 Deposition Tr. at 54:17-55:15); Ex. N (Duker 2010 Deposition

Tr. at 25:25-26:17).

Evidence regarding a conversation between Green and Gonshorek was also in the record

before the Second Circuit.  Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 96:22-98:1).  Green

testified during his deposition that Gonshorek had asked him whether the properties identified in a

schedule attached to one of the financing statements related to the Synthetic Lease because the

cities and states listed in the schedule were broader than the properties involved in the Synthetic

Lease.  *Id.* at 98:2-13.  Green could not remember further specifics about the conversation, but

testified that he never reached the conclusion that the documents included a UCC-3 termination

statement for a financing statement unrelated to the Synthetic Lease.  *Id.* at 98:20.  Green did not

investigate and did not bring the issue to the attention of Gordon or anybody else.  *Id.* at 98:21-25.

Following this conversation, Green still thought that the documents that he had prepared would

only terminate financing statements relating to the Synthetic Lease.  *Id.* at 99:1-8.

No one at Mayer Brown (or at Simpson Thacher or JPMorgan) realized that the 2008

Termination Statement covered the Main Lien until June 2009, when the error was discovered by

Morgan Lewis & Bockius LLP, JPMorgan's counsel on the Term Loan.  *In re Motors Liquidation

Co.*, 486 B.R. at 614; *In re Motors Liquidation Co.*, 755 F.3d at 82; *see also* Fisher Decl. Ex. B

(Green 2010 Deposition Tr. at 64:8-66:9); *id.* Ex. C (Gonshorek 2010 Deposition Tr. at 26:5-28:1,

35:5-15); *id.* Ex. H (Merjian 2010 Deposition Tr. at 33:14-18).  After the error was discovered,

11

Gordon, the Mayer Brown partner in charge of the Synthetic Lease transaction, signed an

affidavit explaining that Mayer Brown had intended to terminate only liens related to the

Synthetic Lease. *In re Motors Liquidation Co.*, 755 F.3d at 82; *see also* Fisher Decl. Ex. O (June

19, 2009 Email attaching Gordon Affidavit).

### B.    The Second Circuit's Holding

On January 21, 2015, the Second Circuit issued its decision, reversing the Bankruptcy

Court and ruling that the 2008 Termination Statement was effective to cause the Main Lien to

become unperfected because JPMorgan had authorized the filing. *In re Motors Liquidation Co.,*

777 F.3d at 105. On that basis, the Second Circuit remanded with instructions to the Bankruptcy

Court to enter partial summary judgment in favor of the Avoidance Action Trust on the question

of the effectiveness of the Termination Statement. *Id.* at 105-106.

### C.    The Amended Complaint and Motions to Dismiss and for Judgment on the Pleadings

Following the Second Circuit's decision, the parties commenced Phase II of the litigation.

In May 2015, Plaintiff filed an amended complaint (the "**Amended Complaint**") and began to

serve the Non-JPMorgan Term Lenders. *See* Adv. Pro. Dkt. Nos. 91, 94, 95, 163, 164.

Certain Non-JPMorgan Term Lenders moved to dismiss the Amended Complaint under

Rule 12(b) of the Federal Rules of Civil Procedure or moved for judgment on the pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure.[4] In their motions, the Non-JPMorgan Term

Lenders asserted, *inter alia*, that the Amended Complaint should be dismissed or judgment

entered based on untimely service and the alleged resulting prejudice to the Non-JPMorgan Term

Lenders. *See* Adv. Dkt. No. 261-1 at 2-3; Adv. Dkt. No. 262 at 9; Adv. Dkt. No. 377 at 10. On

---

[4] Two groups of Non-JPMorgan Term Lenders, and defendant Continental Casualty Company moved to
dismiss. Adv. Pro. Dkt. Nos. 226, 262. 309. Two groups of Non-JPMorgan Term Lenders moved for
judgment on the pleadings. Adv. Pro. Dkt. Nos. 377, 392.

June 30, 2016, the Bankruptcy Court denied the motions and held that the court-authorized deferral of service of the complaint on the Non-JPMorgan Term Lenders until after the completion of Phase I had not prejudiced those defendants. *Motors Liquidation Avoidance Action Trust v. JPMorgan Chase Bank, N.A (In re Motors Liquidation Co.)*, 552 B.R. 253, 273-76 (Bankr. S.D.N.Y. 2016). The Bankruptcy Court further held that because Phase I was litigated against JPMorgan only, the Second Circuit's decision was not law of the case as to them, but that it was still the law in this Circuit, binding upon the Non-JPMorgan Term Lenders absent "meritorious legal or factual defenses to liability or damages on so far untested theories" that had not already been decided by the Second Circuit. *Id*. at 275.

### D. Phase II Discovery by the Non-JPMorgan Term Lenders

After the Bankruptcy Court's denial of the motions to dismiss and for judgment on the pleadings, the Non-JPMorgan Term Lenders were permitted to retake discovery on the Phase I issues. *See* Adv. Pro. Dkt. No. 634. Fact discovery on these issues is now complete. *Id.*

These depositions did not uncover any facts that had not been before the Second Circuit. Significantly, the Mayer Brown witnesses did not contradict their prior testimony that at the time of the filing of the 2008 Termination Statement, they did not know that any of the documents they prepared for the Synthetic Lease transaction referenced a financing statement unrelated to the Synthetic Lease. Fisher Decl. Ex. Q (Green 2017 Deposition Tr. at 73:15-74:6); *id.* Ex. P (Gordon 2017 Deposition Tr. at 74:21-75:16, 81:6-23, 84:2-7, 84:8-85:25, 98:1-3); *id.* Ex. R (Gonshorek 2017 Deposition Tr. at 30:22-25, 52:7-18, 54:14-19, 58:6-15, 115:10-18, 167:23-168:2, 169:14-170:6, 171:9-21); *id.* Ex. S (Perlowski 2017 Deposition Tr. at 31:22-32:6, 37:23-38:16, 64:19-23, 74:5-10, 77:5-13).

13

## ARGUMENT

### I.    LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a dispute as to an issue of material fact, and in making this determination the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a summary judgment motion, the opposing party must establish a genuine dispute as to an issue of material fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "Only disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment."  *Hart v. Rick's Cabaret Int'l., Inc.*, 60 F. Supp. 3d 447, 452 (S.D.N.Y. 2014).  Further, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Accordingly, courts will find a genuine issue of fact only if the disputed facts are sufficiently material that they "might affect the outcome of the suit under the governing law." *Filippini v. Beckworth*, 776 F. Supp. 673, 676-77 (E.D.N.Y. 1991) (granting summary judgment because the factual dispute over the plaintiff's injuries was not material to whether defendant was liable); *see also Klotz v. Xerox Corp.*, No. 08-3214-cv, 2009 WL 1585770, at *2 (2d Cir. June 5, 2009) (granting summary judgment because the "disputed facts are not material to the question [relevant to the dispute]"); *Stern v. LIT Am. Inc.*, No. 93 Civ. 1074 (JSM), 1994 WL 67846, at *2 (S.D.N.Y. Mar. 2, 1994) (granting summary judgment because the facts at issue were not material).

14

## II.    THE SECOND CIRCUIT PREVIOUSLY HELD THAT THE 2008 TERMINATION STATEMENT WAS EFFECTIVE

The Second Circuit conclusively determined that the 2008 Termination Statement was effective because its filing had been authorized by JPMorgan.  In reaching this conclusion, the Second Circuit considered two questions:  First, under the Delaware UCC, must the secured lender have authorized the termination of the particular security interest that the termination statement identifies or is it enough that the secured lender authorized the act of filing a termination statement that had that effect.  *In re Motors Liquidation Co.*, 755 F.3d at 84.  Second, whether JPMorgan in fact authorized Mayer Brown to file the 2008 Termination Statement under general principles of agency law.  *Id.*  As explained below, after the Supreme Court of Delaware provided an answer to the first question, the Second Circuit held with respect to the second question that JPMorgan had authorized Mayer Brown to file the 2008 Termination Statement.

### A.    The UCC Requires Only That JPMorgan Authorize the Act of Filing the 2008 Termination Statement, Not the Legal Consequences

On June 17, 2014, the Second Circuit certified the first question regarding the interpretation of "authorization" under the Delaware UCC to the Delaware Supreme Court.  *In re Motors Liquidation Co.*, 755 F.3d at 86.  The Delaware Supreme Court concluded that for purposes of Chapter 9, a termination statement was effective if the secured lender reviewed and knowingly approved the termination statement, even if the secured lender did not intend the results of the filing.  *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A*, 103 A.3d 1010 (Del. 2014).  The Delaware Supreme Court held, "it is enough that the secured party authorizes the filing," *id.* at 1018, and explicitly rejected JPMorgan's argument that a secured party must authorize the termination of a specific financing statement for the termination statement to be effective, *id.* at 1017-18.  Instead, the Delaware

15

Supreme Court held "[t]he Delaware UCC contains no requirement that a secured party that authorizes a filing subjectively intends or otherwise understands the effect of the plain terms of its own filing." *Id.* at 1018. The Delaware Supreme Court concluded that it would be "strange and inefficient" for the effectiveness of a UCC filing to depend on the party's subjective understanding of the terms of the filing and doing so would "disrupt and undermine the secured lending markets." *Id.* at 1015-16.

Because of how authorization is construed under the Delaware UCC, JPMorgan's subjective intent when it authorized the filing of the 2008 Termination Statement was not relevant to the Second Circuit's analysis. *In re Motors Liquidation Co.*, 755 F.3d at 105. The only relevant consideration was whether JPMorgan authorized the act of filing the 2008 Termination Statement, which it unequivocally did. *Id.* at 103.

**B.     The Undisputed Facts Establish that JPMorgan Authorized the Filing of the 2008 Termination Statement**

Based on the Delaware Supreme Court's clarification of Delaware law, the Second Circuit was left to determine whether, under agency law, JPMorgan had given the necessary authorization for Mayer Brown to file the 2008 Termination Statement. *In re Motors Liquidation Co.*, 777 F.3d at 104.

The undisputed facts establish that JPMorgan authorized the filing of the 2008 Termination Statement. JPMorgan's communications preceding the closing on the payoff of the Synthetic Lease demonstrate that JPMorgan and its counsel knew, before it was filed, that Mayer Brown intended to file the 2008 Termination Statement. According to the Second Circuit, although all parties mistakenly believed that the document related to the Synthetic Lease transaction, JPMorgan consented to and authorized its filing.

16

Specifically, copies of the closing checklist and draft 2008 Termination Statement were
sent to the managing director at JPMorgan and to Simpson Thacher, JPMorgan's counsel.  *Id.* at
105.  There was no dispute that neither JPMorgan nor Simpson Thacher expressed any concerns
about the closing checklist or the draft 2008 Termination Statement and that, in fact, the only
response provided was from the Simpson Thacher attorney who said, "Nice job on the
documents."  *Id*.  There was also no dispute that copies of the draft escrow agreement were
provided to JPMorgan's counsel for review, and that the attorney responded that "it was fine" and
signed the escrow agreement.  *Id*.  This evidence led the Second Circuit to conclude:

> JPMorgan and Simpson Thacher's repeated manifestations to Mayer Brown show
> that JPMorgan and its counsel knew that, upon the closing of the Synthetic Lease
> transaction, Mayer Brown was going to file the termination statement that
> identified the Main Term Loan UCC-1 for termination and that JPMorgan
> reviewed and assented to the filing of that statement. Nothing more is needed.

*Id*.

The Second Circuit held that "it is clear that although JPMorgan never intended to
terminate the Main Term Loan UCC-1, it authorized the filing of a UCC-termination statement
that had that effect."  *Id*. at 105.  Thus, "[w]hat JPMorgan intended to accomplish" was a different
question than "what actions it authorized to be taken on its behalf." *Id*. at 105.  The critical
question—which the Second Circuit answered in the affirmative—"[was] whether JPMorgan
'authorized [Mayer Brown] to file'" the 2008 Termination Statement.  *Id*.

## III.   REGARDLESS OF WHETHER THE SECOND CIRCUIT OPINION IS LAW OF THE CASE, THE TERM LENDERS ARE BOUND BY THE FILING OF THE 2008 TERMINATION STATEMENT

This Court previously held that the Second Circuit decision did not have "preclusive
effect" on the Non-JPMorgan Term Lenders that were not formally served until after the Second
Circuit's decision because the Collateral Agreement did not make JPMorgan the authorized agent

for purposes of appearing and defending this litigation on their behalf.[5]  *In re Motors Liquidation Co.*, 552 B.R. at 275.  However, this Court also recognized that the Non-JPMorgan Term Lenders may be bound under the terms of the loan and collateral agreements by actions of JPMorgan with respect to the collateral securing the Term Loan (the "**Collateral**").  *Id.*  Indeed, the Collateral Agreement and relevant law under the UCC make it clear that the Non-JPMorgan Term Lenders are bound by the authorized filing of the 2008 Termination Statement.

The Non-JPMorgan Term Lenders do not—and cannot—dispute that JPMorgan was their administrative and collateral agent for the Term Loan.  Pursuant to the Collateral Agreement, JPMorgan, as Administrative Agent, took a first priority security interest in the Collateral.  Fisher Decl. Ex. T (Collateral Agreement at Article II).  The Term Loan Agreement set forth the scope of JPMorgan's role and responsibilities as Administrative Agent with respect to the Term Lenders and the Collateral.  Pursuant to the Term Loan Agreement:

> Each Lender hereby irrevocably designates and appoints the Agent [JPMorgan] as the agent of such Lender and each such Lender irrevocably authorizes the Agent, as the agent for such Lender, to take such action on its behalf under the provisions of this Agreement and the other Loan Documents and to exercise such powers and perform such duties as are expressly delegated to the Agent by the terms of this Agreement and the other Loan Documents, together with such other powers as are reasonably incidental thereto.

*Id.* Ex. U (Term Loan Agreement § 8.01).

The Collateral Agreement set forth additional duties assumed by JPMorgan.  The Collateral Agreement provided that JPMorgan's "sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession . . . shall be to deal with it in the same manner as the Agent deals with similar property for its own account."  *Id.* Ex. T

---

[5] In so holding, this Court rejected Plaintiff's argument that JPMorgan, as collateral agent for the Term Loan, had the authority to litigate the effectiveness of the filing of the 2008 Termination Statement on behalf of all lenders.

18

(Collateral Agreement § 6.02).  The Collateral Agreement also spelled out the authority granted to JPMorgan with respect to the Collateral, including that JPMorgan "shall be conclusively presumed to be acting as agent for the Secured Parties with full and valid authority so to act or refrain from acting, and no Grantor [Old GM and Saturn] shall be under any obligation, or entitlement, to make any inquiry respecting such authority." *Id.* (Collateral Agreement § 6.04). Thus, the Non-JPMorgan Term Lenders designated and appointed JPMorgan as their agent and are bound by its actions with respect to the collateral.

Further, the UCC dictates that once a termination statement is filed by a person entitled to do so under Section 9-509 (here, JPMorgan), and it is deemed to be effective under Section 9-510 (as the Second Circuit held), then "the financing statement to which the termination statement relates ceases to be effective."  Del. Code. Ann. Tit. 6 § 9-513(d); *see also id.* §§ 509(d)(1), 510(a).  Thus, after the 2008 Termination Statement was filed, the Main Lien ceased to be effective as to all parties affected by the filing, including the Non-JPMorgan Term Lenders.  As the Delaware Supreme Court cautioned, if parties cannot rely on authorized filings, "no creditor could ever be sure that a UCC-3 filing is truly effective, even where the secured party itself authorized the filing."  *Official Comm.*, 103 A.3d at 1017.  There is no argument or fact that can be asserted by the Non-JPMorgan Term Lenders that could alter the now conclusively established fact that the 2008 Termination Statement was effective, and the Main Lien was terminated.

## IV.    THE NON-JPMORGAN TERM LENDERS HAVE NOT DISCOVERED ANY NEW FACTS NOT PREVIOUSLY BEFORE THE SECOND CIRCUIT AND THE PURPORTED "NEW" FACTS ARE LEGALLY IRRELEVANT

This Court previously held that the Second Circuit's ruling that the 2008 Termination Statement was effective "binds this Court" unless the Non-JPMorgan Term Lenders can identify "meritorious legal or factual defenses" that were not before the Second Circuit. *In re Motors*

*Liquidation Co.*, 552 B.R. at 275.  As set forth below, the Non-JPMorgan Term Lenders have not identified any such legal or factual defenses.  Accordingly, Plaintiff is entitled to summary judgment dismissing the effectiveness defense.

In a futile attempt to identify an issue that could allow them to escape the Second Circuit's decision, the Non-JPMorgan Term Lenders now contend that the Second Circuit's decision was premised on the erroneous fact that no one at Mayer Brown noticed that the 2008 Termination Statement would terminate the financing statement for the Main Lien.  Adv. Pro. Dkt. No. 1065 at 1-2.  Specifically, the Non-JPMorgan Term Lenders contend that they are entitled to a trial on the effectiveness of the 2008 Termination Statement because they purportedly have identified new evidence that supports the conclusion that Mayer Brown was aware that the 2008 Termination Statement would terminate a financing statement for a loan other than the Synthetic Lease.  Thus, according to the Non-JPMorgan Term Lenders, Mayer Brown's belief that it was authorized to file the Termination Statement was not reasonable and the filing of the 2008 Termination Statement was not legally effective.  *Id*. at 2.

First, the Non-JPMorgan Term Lenders' argument is legally irrelevant because Mayer Brown's alleged knowledge that the 2008 Termination Statement included a financing statement not related to the Synthetic Lease is not probative of the question of whether JPMorgan authorized Mayer Brown to file the 2008 Termination Statement.  Even assuming Mayer Brown noticed something amiss with the 2008 Termination Statement (which the evidence does not support), what JPMorgan authorized Mayer Brown to do was what Mayer Brown actually did: file the 2008 Termination Statement.  Mayer Brown's alleged knowledge that the 2008 Termination Statement referenced the Main Lien does not change what JPMorgan authorized as a matter of law, and what is now binding precedent from the Second Circuit.  *In re Motors Liquidation Co.,*

20

777 F.3d at 105 ("JPMorgan reviewed and assented to the filing of that statement. Nothing more is needed.")

Second, the facts now argued by the Non-JPMorgan Term Lenders are not "new" facts, and the Non-JPMorgan Term Lenders' argument relies on mischaracterization and overstatement of those facts. The Second Circuit has already acknowledged that there is no evidence that anyone at Mayer Brown knew that the 2008 Termination Statement would terminate a financing statement unrelated to the Synthetic Lease. *In re Motors Liquidation Co.*, 777 F.3d at 102. The Mayer Brown lawyers and paralegals involved in filing the Synthetic Lease termination documents testified that they did not know that the 2008 Termination Statement would also terminate the Main Lien and thought they were filing documents relating to the Synthetic Lease payoff only. Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 85:19-89:9). The uncontroverted evidence shows that no one at Mayer Brown recognized that a financing statement unrelated to the Synthetic Lease was included in the closing checklist. *In re Motors Liquidation Co.*, 486 B.R. at 611. Gonshorek, who drafted the UCC-3 termination statements, testified that he intended to prepare termination statements relating to the Synthetic Lease only. *Id.*

The alleged new "facts" identified by the Non-JPMorgan Term Lenders are consistent with the above. Adv. Dkt. No. 1065 at 3. Green's testimony that he had a conversation with Gonshorek about the fact that the cities and states listed in one of the schedules was broader than the properties identified in the Synthetic Lease was part of the record before the Second Circuit. Fisher Decl. Ex. B (Green 2010 Deposition Tr. at 96:22-98:25). Both the Avoidance Action Trust and JPMorgan were aware of this testimony and both properly concluded that the testimony did not in good faith support an inference that Mayer Brown knew that the 2008 Termination Statement listed a financing statement unrelated to the Synthetic Lease. To the contrary, Green's

21

testimony has always been consistent and clear that he never realized that the Synthetic Lease termination documents included a UCC-3 termination statement for a financing statement that was not related to the Synthetic Lease. *Id.* at 99:1-8. Green has testified unequivocally that, following his conversation with Gonshorek, he still thought that the documents that he had prepared would only terminate financing statements relating to the Synthetic Lease. *Id.*

Finally, in the new round of depositions taken by the Non-JPMorgan Term Lenders, which covered ground that already had been covered in Phase I of this case, none of the Mayer Brown witnesses contradicted their earlier testimony. Fisher Decl. Ex. Q (Green 2017 Deposition Tr. at 73:15-74:6); *id.* Ex. P (Gordon 2017 Deposition Tr. at 74:21-75:16, 81:6-23, 84:2-7, 84:8-85:25, 98:1-3); *id.* Ex. R (Gonshorek 2017 Deposition Tr. at 30:22-25, 52:7-18, 54:14-19, 58:6-15, 115:10-18, 167:1-18, 169:14-170:6, 171:9-21); *id.* Ex. S (Perlowski 2017 Deposition Tr. at 31:22-32:6, 37:23-38:16, 64:19-23, 74:5-10, 77:5-13).

There is simply no evidence in the record—either before or after the Court reopened discovery to permit the Non-JPMorgan Term Lenders to develop their own factual record—upon which the Court could conclude that Mayer Brown was aware that the 2008 Termination Statement covered a financing statement unrelated to the Synthetic Lease. Having identified nothing more than "mere speculation or conjecture" as to Mayer Brown's knowledge, the Non-JPMorgan Term Lenders' argument is insufficient to overcome Second Circuit precedent and summary judgment is appropriate. *See Hicks*, 593 F.3d at 166.

22

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for

summary judgment dismissing the Non-JPMorgan Term Lenders' effectiveness defense.

Dated: New York, New York
      September 14, 2018            Respectfully submitted,

           **BINDER & SCHWARTZ LLP**

           /s/ Eric B. Fisher
           Eric B. Fisher
           Neil S. Binder
           Lindsay A. Bush
           Lauren K. Handelsman
           366 Madison Avenue, 6th Floor
           New York, New York 10017
           Tel: (212) 510-7008
           Facsimile: (212) 510-7299

           *Attorneys for the Motors Liquidation Company*
           *Avoidance Action Trust*