**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                        Debtors.

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

------------------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                        Plaintiff,

                against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                        Defendants.

Adversary Proceeding

Case No. 09-00504 (MG)

------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN ASSETS**
**LOCATED IN THE SHREVEPORT PLANT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

I.    THE TERM LOAN AGREEMENT AND DEFENDANTS' SECURITY INTEREST IN
      COLLATERAL ........................................................................................................ 3

II.   GM BANKRUPTCY AND DIP ORDER ...................................................................... 5

III.  THIS ACTION AND THE REPRESENTATIVE ASSETS TRIAL ................................ 6

IV.   ASSETS AT THE SHREVEPORT PLANT .................................................................. 7

ARGUMENT ....................................................................................................................... 7

I.    LEGAL STANDARD................................................................................................... 7

II.   DEFENDANTS WERE NOT GRANTED A SECURITY INTEREST IN THE
      SHREVEPORT REAL PROPERTY ASSETS ............................................................. 8

            A.    The Collateral Agreement Granted Defendants a Security Interest Pursuant
                  to the Louisiana Commercial Code............................................................. 8

            B.    No Security Interest Can Be Created In Goods After They Become
                  Fixtures Under Louisiana's Commercial Code........................................... 8

            C.    Defendants Have No Security Interest In Fixtures That Existed At The
                  Shreveport Plant on the Date of the Collateral Agreement...................... 10

III.  DEFENDANTS DO NOT HAVE A SECURITY INTEREST IN REAL PROPERTY AT
      THE SHREVEPORT PLANT .................................................................................... 11

            A.    Neither the Term Loan Agreement Nor the Collateral Agreement Meets
                  The Requirements for a Mortgage ............................................................. 11

            B.    The Caddo Parish Fixture Filing Does Not Create Any Interest in Real
                  Property....................................................................................................... 13

CONCLUSION.................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bank & Tr. Co. v. Shel-Boze, Inc.*,
  527 So. 2d 1052 (La. Ct. App. 1988).................................................................. 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................. 7

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998)..................................................................................... 7

*Diamond Servs. Corp. v. Benoit*,
  780 So. 2d 367 (La. 2001) ...................................................................................... 10

*F.D.I.C. v. Great Am. Ins. Co.*,
  607 F.3d 288 (2d Cir. 2010)...................................................................................... 8

*First Guar. Bank v. Alford*,
  366 So. 2d 1299 (La. 1978) ................................................................................... 13

*Green v. Torrance Tremayne Green (In re Green)*,
  793 F.3d 463 (5th Cir. 2015) ........................................................................... 13, 14

*In re Motors Liquidation Co.*,
  777 F.3d 100 (2d Cir. 2015).................................................................................. 6, 11

*Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc.*,
  270 So.2d 588 (La. Ct. App. 1972)........................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................................. 8

*Ocwen Loan Servicing, LLC v. Porter*,
  248 So.3d 491 (La. Ct. App. 2018).......................................................................... 14

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998)...................................................................................... 8

*Service Once Cable T.V., Inc. v. Scottsdale Ins. Co.*,
  No. 2011 CA 1469, 2012 WL 602209 (La. Ct. App. Feb. 10, 2012) ...................... 10

ii

**Other Authorities**

A.N. Yiannopoulos, *Of Immovables Component Parts, Societal Expectations, and the Forehead of Zeus*,60 La. L.R. 1380 (Summer 2000) .............................................................. 10

James A. Stuckey, *Louisiana's Non-Uniform Variations in U.C.C. Chapter* 9, 62 La. L. Rev. 795 (2002).......................................................................................... 9

Peter S. Title, *Louisiana Real Estate Transaction*s (2 ed. Nov. 2017 Update) ..................... 12, 13

**Rules**

Fed. R. Civ. P. 56........................................................................................................... 7

UCC § 9-102 .................................................................................................................. 9

UCC § 9-334 .................................................................................................................. 9

**Statutes**

2001 La. Sess. Law. Serv. Act 128 (West) ..................................................................... 9

LA. CIV. CODE ANN. art. 3280 (2018).................................................................... 12

LA. CIV. CODE ANN. art. 3286 (2018).................................................................... 12

LA. CIV. CODE ANN. art. 3288 (2018).................................................................... 13

LA. CIV. CODE ANN. art. 463 (2018)...................................................................... 10

LA. CIV. CODE ANN. art. 465 (2018)...................................................................... 10

LA. CIV. CODE ANN. art. 466 (2008)...................................................................... 10

LA. CIV. CODE ANN. art. 467 (2018)...................................................................... 10

LA. CIV. CODE ANN. art. 469 (2018)...................................................................... 12

LA. REV. STAT. ANN. § 10:9-101 cmt (c) (La. Official Revision Comments 2001).................. 9

LA. REV. STAT. ANN. § 10:9-102 (2015) ........................................................... 2, 10

LA. REV. STAT. ANN. § 10:9-109 (2010) ................................................................ 10

LA. REV. STAT. ANN. § 10:9-334 (2018) ....................................................... passim

LA. REV. STAT. ANN. § 10:9-505 (2018) ................................................................ 14

Plaintiff Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**") respectfully submits this Memorandum of Law in support of its Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 7056-1 of the Local Bankruptcy Rules, seeking a ruling that General Motors Corporation ("**Old GM**") did not grant a security interest for Defendants' benefit in certain assets located in the Old GM plant located in Caddo Parish, Louisiana (the "**Shreveport Plant**").

## PRELIMINARY STATEMENT

On or about November 29, 2006, Old GM granted a security interest in certain assets located at 42 domestic facilities (the "**Old GM Plants**") as collateral for a $1.5 billion syndicated term loan extended to Old GM and its affiliates (the "**Collateral**"). The sole question presented here is whether the collateral agreement between JPMorgan Chase Bank, N.A. ("**JPMorgan**"), Old GM, and Saturn Corporation, dated as of November 29, 2006 (the "**Collateral Agreement**") created a security interest in assets already incorporated as fixtures into the Shreveport Plant as of the date of that agreement.[1] As a matter of Louisiana law, the answer is no. Under Chapter 9 of the Louisiana Commercial Code ("**Chapter 9**"), a fixture is a good that has become a component part of real property and is treated as real property for the purposes of a grant of

---

[1] This motion pertains only to the question of whether a security interest was created in assets that were incorporated into the Shreveport Plant as of the date of the Collateral Agreement. Defendants' unperfected security interest in equipment and other personal property at the plant is not at issue. Assets incorporated into the Shreveport Plant after the date of the Collateral Agreement also are not at issue. Those assets remain subject to a determination as to whether they are: (1) within the collateral grant under the Term Loan; (2) fixtures under applicable state law; and (3) covered by a valid, first-priority fixture filing. *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 09-00504 (Adv. Pro. Dkt. No. 1015 (Memorandum Opinion Regarding Fixture Classification)) at 84.

1

security.[2]  Thus, Chapter 9 expressly states that a security interest "may not be created" in goods after they become fixtures.

Chapter 9, unlike Article 9 of the Model Uniform Commercial Code ("**Model UCC**"), only applies to the creation of a security interest in goods that are "to become fixtures" before they are incorporated into realty, or otherwise become real property.  The Louisiana Commercial Code does not apply to the creation of an interest in or lien on real property, which under Louisiana law includes fixtures.[3]  That is a matter left to Louisiana's real estate law, and would have required that Old GM grant a mortgage on Old GM's real property, which it did not do.  Thus, the Collateral Agreement did not create a lien in those fixtures that existed in the Shreveport Plant as of November 29, 2006, the date of the Collateral Agreement.

Defendants' recording of a fixture filing in Caddo Parish, Louisiana that purports to cover "all fixtures" located at the Shreveport Plant does not change this result.  A fixture filing does not perfect a security interest that was never created; it merely enables a secured party with an interest in goods to preserve that interest when the goods become fixtures.  Thus, Defendants' fixture filing perfects their security interest only in assets that were within the Collateral Agreement's grant of collateral as permitted under Louisiana law:  the assets that were <u>not</u> fixtures as of the date of the Collateral Agreement, but which subsequently became fixtures.  These assets are not at issue in this motion, nor is the validity of Defendants' fixture filing or the

---

[2] In Louisiana, "movables" are personal property and "immovables" are real property.  LA. REV. STAT. ANN. § 10:9-102(d)(15) and (16).

[3] An exception exists for security interests that are created in goods before they become fixtures.  The security interests continue in the goods after they become fixtures.  *See* LA. REV. STAT. ANN. § 10:9-334 (a).

2

priority of Defendants' security interests in these assets. Indeed, Defendants' fixture filing is not relevant to the relief sought in this motion.[4]

Accordingly, the Court should find that as a matter of Louisiana law, the Collateral Agreement did not create a lien in the fixtures located at the Shreveport Plant as of the date of that agreement.

## STATEMENT OF FACTS

### I.    THE TERM LOAN AGREEMENT AND DEFENDANTS' SECURITY INTEREST IN COLLATERAL

Pursuant to a term loan agreement, dated as of November 29, 2006, and amended as of March 4, 2009 (collectively, the "**Term Loan Agreement**") among Old GM and a syndicate of bank lenders (the "**Term Lenders**"), Old GM borrowed approximately $1.5 billion (the "**Term Loan**"). Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment on Certain Assets Located in the Shreveport Plant ("**SUF**") ¶ 1. Defendants are among the over 500 Term Lenders that held interests in the Term Loan as of June 1, 2009. *Id.* ¶ 2. JPMorgan was the administrative agent for the Term Loan. *Id.* ¶ 3.

To secure Old GM's obligations under the Term Loan, pursuant to the Collateral Agreement, Old GM granted the Term Lenders "a security interest in, all of the following assets and property now owned or at any time hereafter acquired by [GM] or in which [GM] now has or at any time in the future may acquire any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due. . . ." SUF

---

[4] Defendants are expected to argue that the relief sought in this motion is time-barred because the Avoidance Action Trust is challenging the priority of Defendants' security interests in the assets located at the Shreveport Plant. As demonstrated here, this motion seeks a determination as to whether any security interest was ever created and attached to the fixtures at the Shreveport Plant, not whether any interest was perfected.

3

¶ 4; Declaration of Eric B. Fisher in Support of Plaintiff's Motion for Partial Summary Judgment on Certain Assets Located in the Shreveport Plant (the "**Fisher Decl.**") Ex. B at Art. II (a) – (d). The assets and property identified included "all Equipment and all Fixtures" and associated documents, general intangibles, books and records, and proceeds and products located at the 42 Old GM Plants identified in Schedule 1 to the Collateral Agreement (the "**Collateral**"). SUF ¶ 5; Fisher Decl. Ex. B at Art. II and Schedule 1.

The Collateral Agreement incorporates the term "fixture" as it is "defined in Section 9-102 of the UCC." Fisher Decl. Ex. B at Art. I (b). The "UCC" is defined as the Uniform Commercial Code in effect in the jurisdiction where the Collateral is located for the purposes of the Collateral Agreement's provisions relating to the attachment, perfection, or priority of the Collateral and for purposes of definitions related to such provisions. Fisher Decl. Ex. B at Art. I (b).

As required under the Term Loan Agreement, JPMorgan, as administrative Agent for the Term Lenders, caused a UCC-1 financing statement to be filed with the Secretary of State of Delaware (the "**Main Lien**"). SUF ¶ 6. The Main Lien perfected the Term Lenders' security interest in the Collateral "now owned or at any time hereafter acquired" by Old GM and its affiliates. *Id.* ¶ 7. JPMorgan also caused fixture filings to be made with respect to 26 of the 42 facilities listed in Schedule 3.12 to the Term Loan Agreement. *Id.* ¶ 8.

A UCC financing statement pertaining to the Shreveport Plant was filed on February 16, 2007, in the Louisiana Secretary of State's master UCC system by recording it with the Clerk of Caddo Parish, Louisiana (the "**Caddo Parish Fixture Filing**"). *Id.* ¶ 9; Fisher Decl. Exs. C and D. The Caddo Parish Fixture Filing stated that it covered "[a]ll fixtures located on the real estate described on Exhibit A." Fisher Decl. Ex. C. Exhibit A identified the Shreveport Plant.

4

*Id.* The filing further stated that, "[t]his is a fixture filing and should be indexed in the real estate records." *Id.* A copy of the UCC financing statement was also recorded in the Caddo Parish real estate mortgage index. SUF ¶ 10, Fisher Decl. Ex. E.

On October 30, 2008, JPMorgan and its counsel mistakenly authorized the filing of a UCC-3 termination statement that terminated the Main Lien securing the Term Loan (the "**2008 Termination Statement**"). SUF ¶ 11.

## II.    GM BANKRUPTCY AND DIP ORDER

Beginning on June 1, 2009, Old GM and certain of its subsidiaries filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York (the "**Petition Date**"). Bankr. Dkt. No. 1; Adv. Pro. Dkt. No. 962 (Joint Pretrial Order entered April 19, 2017 ("**JPTO**")) ¶31.[5]   On June 3, 2009, the Office of the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors of Motors Liquidation Company f/k/a General Motors Corporation (the "**Committee**"). Adv. Pro. Dkt. No. 1015 (Memorandum Opinion Regarding Fixture Classification (the "**Op.**") at 10.

On June 25, 2009, the Court entered the *Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-Petition Secured*

---

[5] All references to the Adversary Docket are to *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 09-00504. All references to the Bankruptcy Docket are to *In re: Motors Liquidation Co. f/k/a General Motors Corporation*, Case No. 09-50026.

5

*Parties* (the "**DIP Order**").  Bankr. Dkt. No. 2529 (DIP Order).  Among other things, the DIP

Order authorized repayment in full of the Term Loan.  Adv. Pro. Dkt. No. 1015 (Op.) at 12; *see*

*also* Bankr. Dkt. No. 2529 (DIP Order) at 19(a).  The Term Lenders were paid

$1,481,656,507.70 in full satisfaction of all claims arising under the Term Loan Agreement on

June 30, 2009.  Adv. Pro. Dkt. No. 1015 (Op.) at 12.  The DIP Order expressly preserved the

Committee's authority to both investigate and bring actions with respect to the perfection of the

Term Lenders' first priority liens.  Bankr. Dkt. No. 2529 (DIP Order) at ¶ 19(d).  The DIP Order

set forth a deadline of July 31, 2009 for the Committee to file any avoidance actions.  (*Id.*).

## III.    THIS ACTION AND THE REPRESENTATIVE ASSETS TRIAL

On July 31, 2009, the Committee filed a complaint initiating this adversary proceeding

(the "**Original Complaint**") against Defendants alleging that the 2008 Termination Statement

caused the Main Lien on the Collateral to become unperfected.  Adv. Pro. Dkt. No. 1 ¶¶ 433,

440, 449.  The Avoidance Action Trust, as successor to the Committee, litigated the question of

whether the 2008 Termination Statement terminated the Main Lien.  *In re Motors Liquidation*

*Co.*, 777 F.3d 100 (2d Cir. 2015).

On January 21, 2015, the Second Circuit held that, as a result of the filing of the 2008

Termination Statement, the Main Lien was not effective as of the Petition Date and remanded the

case to the Bankruptcy Court to determine the extent to which Defendants were secured parties

absent the Main Lien (the "**Phase I Decision**").  *In re Motors Liquidation Co.*, 777 F.3d at 105.

The Avoidance Action Trust amended the Original Complaint on May 20, 2015 (the "**Amended**

**Complaint**").  Adv. Pro. Dkt. No. 91.

Between April and June 2017, the Court held a trial relating to the fixture classification

and valuation of 40 representative assets located in Ohio and Michigan, along with certain

6

additional preliminary issues (the **"Representative Assets Trial"**).  Adv. Pro. Dkt. No. 1073 (So

Ordered Stipulation filed Aug. 22, 2018).  At the conclusion of this trial, the Court issued a

Memorandum Opinion.  Adv. Pro. Dkt. No. 1075 (Op.).

## IV.    ASSETS AT THE SHREVEPORT PLANT

As of June 1, 2009, 7,801 asset line items in the Shreveport Plant, identified in GM's

June 2009 fixed asset ledger (the "**eFAST (June 2009)**")[6] had an in-service date prior to

November 29, 2006, the date of the Collateral Agreement (the "**Shreveport Real Property**

**Assets**").  SUF ¶ 15; Fisher Decl. Ex. F.  The in-service date is the date the asset was capitalized

by Old GM and put into production.  SUF ¶ 14; Adv. Pro. Dkt. No. 1015 (Op.) at 16.

### ARGUMENT

## I.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure applies in an adversary proceeding under

Rule 7056 of the Federal Rules of Bankruptcy Procedure.  A motion for summary judgment shall

be granted "where there exists no genuine issue of material fact and, based on the undisputed

facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*,

132 F.3d 145, 149 (2d Cir. 1998); Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  Once the moving party has demonstrated the absence of any factual

dispute, the burden shifts to the non-moving party, which "must do more than simply show that

there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87 (1986), and "may not rely on conclusory allegations or

---

[6] Old GM used the eFAST database for its fixed asset accounting.  SUF ¶ 12; Adv. Pro. Dkt. No.
1015 (Op.) at 16.  This database contains asset-specific information about Old GM's assets,
including an in-service date for each asset line item. *Id.* ¶ 13; Adv. Pro. Dkt. No. 1015 (Op.) at
16.

7

unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)

(quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

As with the assets at issue in the Representative Assets Trial, Defendants bear the burden

of establishing, among other things, that the Shreveport Real Property Assets were within the

grant of collateral under the Term Loan. *See* Adv. Pro. Dkt. No. 1015 (Op.) at 84. Defendants

cannot meet their burden because at the time Defendants' security interest was created by the

Collateral Agreement, the Shreveport Real Property Assets were real property and a lien in real

property must be created under Louisiana real property law, not Louisiana's Commercial Code.

## II.   DEFENDANTS WERE NOT GRANTED A SECURITY INTEREST IN THE SHREVEPORT REAL PROPERTY ASSETS

### A.   The Collateral Agreement Granted Defendants a Security Interest Pursuant to the Louisiana Commercial Code

Defendants' security interest exists only to the extent provided for in the Collateral

Agreement and applicable state law. The Collateral Agreement grants Defendants a security

interest in certain enumerated "assets and property," specifically "all Equipment and all

Fixtures," and related documents and proceeds. SUF ¶ 5; Fisher Decl. Ex. B at Art. II (a) – (d).

With respect to assets located at the Shreveport Plant, located in Shreveport, Louisiana, the scope

of Defendants' interest in fixtures must be interpreted pursuant to Louisiana's Commercial Code.

### B.   No Security Interest Can Be Created In Goods After They Become Fixtures Under Louisiana's Commercial Code

Louisiana's Secured Transactions Law, R.S. 10:9-101 et seq., known as "Chapter 9" of

the Louisiana Commercial Code applies to the Shreveport Real Property Assets. Chapter 9 is

substantially based upon Article 9 in the Model UCC with multiple changes. LA. REV. STAT.

ANN. § 10:9-101 cmt (c) (La. Official Revision Comments 2001). Among the non-uniform

changes in Chapter 9 are the rules on "fixtures (component parts)." *Id*. Chapter 9 employs "a

8

fundamentally different approach to security interests in fixtures, consistent with long established

Louisiana legal principles relating to property and chattel mortgages."[7]  James A. Stuckey,

*Louisiana's Non-Uniform Variations in U.C.C. Chapter 9*, 62 La. L. Rev. 795, 830 (2002).

Among other things, and in contrast to the Model UCC,[8] Louisiana's Commercial Code <u>does not</u>

<u>permit</u> a security interest to be created in goods once they are fixtures.  LA. REV. STAT. ANN.

§ 10:9-334 (a) ("A security interest under [Chapter 9] may not be created in goods after they

become fixtures.").  That is, the Louisiana Commercial Code permits an interest to be created in

fixtures only where the interest is granted prior to the good becoming a fixture.

In contrast to Chapter 9, the Model UCC defines fixtures as "goods that have become *so*

*related* to particular real property that an interest in them arises under real property law.  UCC

§ 9-102(a)(41) (emphasis added).  By contrast, Chapter 9 defines fixtures as "goods . . . that after

placement on or incorporation in an immovable have *become a component part of such*

*immovable* as provided in Civil Code Articles 463, 465, and 466, or that have been declared to be

a component part of an immovable under Civil Code Article 467."[9]  LA. REV. STAT. ANN.

---

[7] Louisiana's prior chattel mortgage statute provided that if personal property subject to a chattel mortgage is installed on real property in such a manner as to make the chattel real property, the chattel shall nevertheless remain personal property insofar as the chattel mortgage upon it is concerned.  *Long Leaf Lumber, Inc. v. Summer Grove Developers, Inc.*, 270 So.2d 588, 592 (La. Ct. App. 1972) (chattel mortgages have priority over subsequent mortgage over real property).  Chapter 9 repeals Louisiana's provisions relative to chatted mortgages and mortgages on movables used in commercial or industrial activity.  2001 La. Sess. Law. Serv. Act 128 (West).

[8] Section 9-334(a) of the Model UCC, in contrast to Louisiana law, provides for the creation of a security interest under Article 9 in goods that are fixtures.  UCC § 9-334(a).

[9] The referenced Civil Code Articles provide that a good becomes a fixture when placed or incorporated in an immovable under the following circumstances:  (1) permanently; (2) so as to become an integral part of it; (3) if attached to such a degree that it cannot be removed without substantial damage to themselves or to the building or other construction; or (4) by declaration, for the immovable's service and improvement and such declaration is filed for registry in the conveyance records of the parish in which the immovable is located.  LA. REV. STAT. ANN. § 10:9-102(a)(41), LA. CIV. CODE ANN. arts. 463, 465, 466, and 467.

9

§10:9-102(a)(41) (emphasis added). In Louisiana, fixtures are not merely "related" to real property, fixtures become "component parts" of real property. Indeed, Louisiana courts equate the term "fixture" with a "component part" of real property as it is used in Louisiana's real property laws. *Service Once Cable T.V., Inc. v. Scottsdale Ins. Co.*, No. 2011 CA 1469, 2012 WL 602209, at *4 (La. Ct. App. Feb. 10, 2012) (citing cases).

As a component part of real property, a fixture becomes an indivisible part of real property and does not retain its chattel or personal property character.[10] When goods are merged into or become component parts of real property, "the component parts of the immovable cease to be distinct things; they become parts of a composite thing." A.N. Yiannopoulos, *Of Immovables Component Parts, Societal Expectations, and the Forehead of Zeus*, 60 La. L.R. 1380, 1381 (Summer 2000). Therefore, under Louisiana law, fixtures are real property.

Chapter 9 does not apply to the creation of interests in or liens on real property. LA. REV. STAT. ANN. § 10:9-109 (d)(11) and 10:9-334 (b); *Diamond Servs. Corp. v. Benoit*, 780 So. 2d 367, 379 (La. 2001) ("security interests affecting real estate or immovable property . . . are excluded from coverage under Article 9, and are subject to other statutory authority."). Therefore, an interest in fixtures cannot be created under Louisiana's Commercial Code.

**C.    Defendants Have No Security Interest In Fixtures That Existed At The Shreveport Plant on the Date of the Collateral Agreement**

To determine whether the Collateral Agreement created a lien in the Shreveport Real Property Assets, the relevant question is whether the assets were fixtures at the time of the grant of security interest by the Collateral Agreement. As a matter of law, if the assets became fixtures

---

[10] By contrast, goods "that are to become fixtures" remain personal property if they were not yet placed or incorporated into real property when a fixture filing covering them was made. *See* LA. REV. STAT. ANN. §10:9-334 (a).

prior to November 29, 2006, the date of the Collateral Agreement, no security interest could have been created in those fixtures under Chapter 9; and, therefore, no lien attached to them. *See* La. R. S. § 10:9-334 (a). In other words, Defendants have a security interest only in assets that became fixtures after the date of the Collateral Agreement and remained fixtures as of the Petition Date.

The eFAST (June 2009) shows that all the Shreveport Real Property Assets have an in-service date prior to the date of the Collateral Agreement. SUF ¶16; Fisher Decl. Ex. F. Because the in-service date represents the date assets were not only installed but put in production, there can be no question that the Shreveport Real Property Assets, to the extent they are fixtures,[11] were fixtures as of the date of the Collateral Agreement. As a matter of Louisiana law, any assets at the Shreveport Plant that were fixtures as of the date of the Collateral Agreement are real property that cannot be subject to a security interest created under Louisiana's Commercial Code.

## III.    DEFENDANTS DO NOT HAVE A SECURITY INTEREST IN REAL PROPERTY AT THE SHREVEPORT PLANT

### A.    Neither the Term Loan Agreement Nor the Collateral Agreement Meets The Requirements for a Mortgage

To create a security interest in fixtures where, as here, Chapter 9 does not apply because the goods have become fixtures (LA. REV. STAT. ANN. §10:9-334 (a)), a mortgage is necessary to encumber the whole of the real property. That mortgage creates an interest that

---

[11] Assets that were not fixtures as of the date of the Collateral Agreement fall into one of two categories: (i) equipment that subsequently became a fixture, or (ii) equipment that never became a fixture. This motion does not challenge Defendants' security interest in the first category. With respect to the second category—equipment that never became a fixture—the Phase I Decision determined that Defendants do not have a perfected, first-priority interest in such equipment. *In re Motors Liquidation Co.*, 777 F.3d at 105.

attaches to the fixtures. *See* LA. CIV. CODE ANN. art. 469 (An encumbrance on realty includes its component parts); *see also* Peter S. Title, *Louisiana Real Estate Transactions*, §13:17 (2 ed. Nov. 2017 Update). A mortgage is an indivisible right that burdens the entirety of the real property with its component parts (i.e., fixtures). LA. CIV. CODE ANN. arts. 3280, 3286; *see also American Bank & Tr. Co. v. Shel-Boze, Inc.*, 527 So. 2d 1052, 1054-55 (La. Ct. App. 1988) (mortgage encumbered component parts of residences including light fixtures and related electrical paraphernalia connected to the structure). Accordingly, to encumber fixtures, which are indivisible component parts of the realty, a mortgage over the entire real property is necessary.

Defendants bear the burden of demonstrating that Old GM granted the Term Lenders a mortgage interest in the Shreveport Real Property Assets. Defendants cannot do so because neither the Term Loan Agreement nor the Collateral Agreement created a mortgage in the real property at the 42 Old GM Plants that were the subject of the Collateral Agreement. Further, the Term Loan Agreement and the Collateral Agreement do not satisfy the requirements of a mortgage under Louisiana Law.

First, neither the Term Loan Agreement nor the Collateral Agreement even purports to create a mortgage. As an initial matter, the word "mortgage" does not appear once in the Collateral Agreement, nor does it anywhere state that Old GM was conveying any interest in real property. Had Old GM conveyed to Defendants a mortgage with respect to the 42 Old GM Plants that are the subject of the Collateral Agreement (Fisher Decl., Ex. B at Schedule 1 to Annex 1 to UCC-1 Financing Statement), it would have been clear in the documents. And, if Defendants did hold mortgages with respect to the 42 Old GM Plants, they would have asserted

12

such an interest.  Because the Term Loan Agreement and the Collateral Agreement did not grant

a mortgage to Defendants, no mortgage was conveyed with respect to the Shreveport Plant.

Further, in addition to the fact that the Term Loan Agreement and the Collateral

Agreement on their face do not convey an interest in real property, those agreements also fail to

comply with basic requirements of a mortgage under Louisiana law.  To create a mortgage in

Louisiana, the mortgage document must, among other things, be in writing, signed by the

mortgagor, and "must state precisely the nature and situation of each of the immovables [parcels

of real property] over which it is granted."  LA. CIV. CODE ANN. art. 3288.  These

requirements are strictly construed under Louisiana law.  *Green v. Torrance Tremayne Green (In

re Green)*¸ 793 F.3d 463, 469 (5th Cir. 2015) (quoting *First Guar. Bank v. Alford*, 366 So. 2d

1299, 1304 (La. 1978)).  A mortgage may meet this requirement through one of several methods

of describing the mortgaged property, including metes and bounds descriptions, description by

reference to the plat of subdivision, or reference to the USPLS system.  *See generally* Peter S.

Title, La. Practice Series: Real Estate Transactions, Chapter 2 (2 ed. 2017).  In this case, neither

the Term Loan Agreement nor the Collateral Agreement contains a description of any real

(immovable) property in Louisiana, whatsoever, and for this reason alone did not create a

mortgage in any real property located in Shreveport.  *See Ocwen Loan Servicing, LLC v. Porter*,

248 So.3d 491, 495-96, 498 (La. Ct. App. 2018) (holding mortgage "an absolute nullity" where

only description was municipal address).

### B.    The Caddo Parish Fixture Filing Does Not Create Any Interest in Real Property

Defendants' recording of the Caddo Parish Fixture Filing in the state's mortgage records

does not create a mortgage or other real property interest.  A security interest in realty is not

created by simply filing a financing statement in the local real estate mortgage records.  *See* LA.

13

REV. STAT. ANN. § 10:9-505(b) (the filing of or compliance with a financing statement "is not of itself a factor in determining whether the collateral secure an obligation . . . a security interest . . . which attaches to the collateral is perfected by the filing or compliance."); *see also In re Green*, 793 F.3d at (rejecting condominium association's argument that filing a verified claim of privilege for unpaid association dues in the mortgage records transformed its statutory privilege into a consensual security interest such as a mortgage). Defendants do not have, nor have they ever purported to have, an interest in the real property of Old GM.

Accordingly, Defendants' security interest does not include any real property interests in the Shreveport Plant, including the Shreveport Real Property Assets.

## **CONCLUSION**

For the foregoing reasons, the Avoidance Action Trust respectfully requests that the Court enter partial summary judgment in favor of the Avoidance Action Trust: (i) excluding the 7,801 assets identified in the eFAST list submitted herewith from the assets that are part of the Term Lenders' collateral; and (ii) granting such other and further relief as may be necessary.

14

Dated:  September 14, 2018
        New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**


/s/  Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*