# Wachtell, Lipton, Rosen & Katz

| | | | | |
|---|---|---|---|---|
| MARTIN LIPTON | TREVOR S. NORWITZ | 51 WEST 52ND STREET | ERIC M. ROSOF | DONGJU SONG |
| HERBERT M. WACHTELL | BEN M. GERMANA | NEW YORK, N.Y. 10019-6150 | GREGORY E. OSTLING | BRADLEY R. WILSON |
| PAUL VIZCARRONDO, JR. | ANDREW J. NUSSBAUM | | DAVID B. ANDERS | GRAHAM W. MELI |
| THEODORE N. MIRVIS | RACHELLE SILVERBERG | TELEPHONE: (212) 403-1000 | ANDREA K. WAHLQUIST | GREGORY E. PESSIN |
| EDWARD D. HERLIHY | STEVEN A. COHEN | FACSIMILE: (212) 403-2000 | ADAM J. SHAPIRO | CARRIE M. REILLY |
| DANIEL A. NEFF | DEBORAH L. PAUL | | NELSON O. FITTS | MARK F. VEBLEN |
| ANDREW R. BROWNSTEIN | DAVID C. KARP | GEORGE A. KATZ (1965-1989) | JOSHUA M. HOLMES | VICTOR GOLDFELD |
| MARC WOLINSKY | RICHARD K. KIM | JAMES H. FOGELSON (1967-1991) | DAVID E. SHAPIRO | EDWARD J. LEE |
| STEVEN A. ROSENBLUM | JOSHUA R. CAMMAKER | LEONARD M. ROSEN (1965-2014) | DAMIAN G. DIDDEN | BRANDON C. PRICE |
| JOHN F. SAVARESE | MARK GORDON | | IAN BOCZKO | KEVIN S. SCHWARTZ |
| SCOTT K. CHARLES | JOSEPH D. LARSON | OF COUNSEL | MATTHEW M. GUEST | MICHAEL S. BENN |
| JODI J. SCHWARTZ | JEANNEMARIE O'BRIEN | WILLIAM T. ALLEN     DAVID S. NEILL | DAVID E. KAHAN | SABASTIAN V. NILES |
| ADAM O. EMMERICH | WAYNE M. CARLIN | MARTIN J.E. ARMS     HAROLD S. NOVIKOFF | DAVID K. LAM | ALISON ZIESKE PREISS |
| RALPH M. LEVENE | STEPHEN R. DiPRIMA | MICHAEL H. BYOWITZ     LAWRENCE B. PEDOWITZ | BENJAMIN M. ROTH | TIJANA J. DVORNIC |
| RICHARD G. MASON | NICHOLAS G. DEMMO | GEORGE T. CONWAY III     ERIC S. ROBINSON | JOSHUA A. FELTMAN | JENNA E. LEVINE |
| DAVID M. SILK | IGOR KIRMAN | KENNETH B. FORREST     PATRICIA A. ROBINSON* | ELAINE P. GOLIN | RYAN A. McLEOD |
| ROBIN PANOVKA | JONATHAN M. MOSES | SELWYN B. GOLDBERG     ERIC M. ROTH | EMIL A. KLEINHAUS | ANITHA REDDY |
| DAVID A. KATZ | T. EIKO STANGE | PETER C. HEIN     PAUL K. ROWE | KARESSA L. CAIN | JOHN L. ROBINSON |
| ILENE KNABLE GOTTS | JOHN F. LYNCH | MEYER G. KOPLOW     DAVID A. SCHWARTZ | RONALD C. CHEN | JOHN R. SOBOLEWSKI |
| JEFFREY M. WINTNER | WILLIAM SAVITT | LAWRENCE S. MAKOW     MICHAEL J. SEGAL | GORDON S. MOODIE | STEVEN WINTER |
| | | DOUGLAS K. MAYER     ELLIOTT V. STEIN | | |
| | | MARSHALL L. MILLER     WARREN R. STERN | | |
| | | PHILIP MINDLIN     PATRICIA A. VLAHAKIS | | |
| | | ROBERT M. MORGENTHAU     AMY R. WOLF | | |

* ADMITTED IN THE DISTRICT OF COLUMBIA

COUNSEL

| | |
|---|---|
| DAVID M. ADLERSTEIN | NANCY B. GREENBAUM |
| AMANDA K. ALLEXON | MARK A. KOENIG |
| LOUIS J. BARASH | LAUREN M. KOFKE |
| FRANCO CASTELLI | J. AUSTIN LYONS |
| DIANNA CHEN | ALICIA C. McCARTHY |
| ANDREW J.H. CHEUNG | PAULA N. RAMOS |
| PAMELA EHRENKRANZ | S. CHRISTOPHER SZCZERBAN |
| KATHRYN GETTLES-ATWA | JEFFREY A. WATIKER |
| ADAM M. GOGOLAK | |

Direct Dial: (212) 403-1226
Direct Fax: (212) 403-2226
E-Mail: MWolinsky@wlrk.com

October 12, 2018

**By Hand, ECF, and Email**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:   *Motors Liquidation Company Avoidance Action Trust* v. *JPMorgan Chase Bank, N.A.*, Case No. 09-00504 (MG)

Dear Judge Glenn:

We write to update the Court on the status of selecting representative assets pursuant to the Stipulation and Order Amending and Superseding Certain Prior Orders

The Honorable Martin Glenn
October 12, 2018
Page 2

Regarding Discovery and Scheduling entered by the Court on September 14, 2018 [Dkt. No. 1080] ("Scheduling Order").

The parties reached agreement on one "robot controller" representative asset and two "capital maintenance/repair" assets after several rounds of negotiation. Nonetheless, the parties have been unable to reach agreement on the selection of four disputed building system assets that would establish the line between fixtures and ordinary building materials.

The parties have therefore agreed to submit letters to the Court explaining their respective positions on the selection of representative building system assets and seek the Court's guidance. The reason why we believe that the Court's involvement is warranted at this time — and why we have been unwilling to accept plaintiff's proposals — is because we believe that plaintiff's proposals, if accepted, would impose unnecessary, additional burdens on the Court and the parties for the sole reason of allowing plaintiff a chance to relitigate issues that the Court decided at the first representative assets trial. Indeed, our frustration on this point is compounded by the fact that plaintiff unilaterally cancelled the two mediation sessions that had been scheduled to address the "ordinary building materials" dispute.

**The Term Lenders Have Selected Truly Representative Assets That Can Be Tried Efficiently and That Represent The Bulk Of The Value In Dispute**

Pursuant to the Scheduling Order, the parties were directed to select "four additional representative assets from assets defendants assert are fixtures and plaintiff asserts are non-fixtures because they are, according to plaintiff, 'real property.'" Scheduling Order at 4. The representative assets selected are intended to facilitate the goal of "obtaining expedited rulings

The Honorable Martin Glenn
October 12, 2018
Page 3

from the Court after trial" that "could materially facilitate a consensual resolution of the above-captioned action." *Id.*

Plaintiff disputes over $270 million of assets that defendants claim as fixtures on the basis that the assets are "real property" and not fixtures. Our four proposed disputed "real property" representative assets are:

| Asset ID | Asset Description from eFAST Ledger | Plant Location | Term Lender Category |
|---|---|---|---|
| 100037896 | "Paint Building Electric Power & Lighting" | Lansing Delta Township | Power Systems and Lighting Systems |
| 100046165 | "Fire Protection System – 6 Spd. Building" | Warren Transmission | Fire Protection Systems |
| 100044210 | "6 Spd. Air House #1" | Warren Transmission | Air Handling/HVAC |
| 100046189 | "Prismatic Dock – 6 Spd." | Warren Transmission | Dock Systems |

We chose these four assets because we believe that a decision as to their characterization will both maximize the likelihood that the Court's decision will resolve this dispute between the parties as a whole and because a trial of these four assets will be efficient and cost effective. Specifically:

1.  The representative assets we have selected cover the four highest value categories of assets plaintiff disputes as "real property," collectively making up $171 million of the $270 million in dispute: power distribution and lighting systems (~$71 million); air handling/HVAC systems (~$57 million); fire protection systems (~$23 million); and dock systems (~$21 million). We believe that the principles that the Court establishes as part of its

Wachtell, Lipton, Rosen & Katz

The Honorable Martin Glenn
October 12, 2018
Page 4

rulings on these four assets should also cover most, if not all, of the other $99 million of assets that plaintiff disputes as "real property."

2.    The four assets we have selected have already been inspected by the parties and are located at LDT and Warren — Michigan plants that the Court has already visited. Accordingly, defendants' selections will save the parties time and money, save GM time and money, and facilitate the Court's adjudication because it is already familiar with the plants by virtue of the Court's visits of LDT and Warren, as well as the extensive testimony it has already heard on both of those facilities that will not need to be duplicated.

**Plaintiff Has Proposed Assets On An Unprincipled Basis**

Plaintiff's response, frankly, has not been constructive. Its proposal is that the parties should select the four representative assets from a body shop that was added to GM's Arlington Assembly facility in 2000 — a facility in Texas that has not been inspected by the parties.[1] The only basis plaintiff has given us for rejecting the efficiencies of litigating already inspected assets is that our proposed assets are not "representative." But when pressed, plaintiff has never explained why the assets that we propose are not "representative" other than the fact that they are located at LDT and Warren. They are representative. Indeed, the Air Supply Houses asset at Arlington is substantially similar to the Air Supply House asset at Warren that we propose; the same is true of the lighting component of the power distribution and lighting system at LDT that we propose and the lighting system at Arlington that plaintiff proposes; the

---

[1]    GM Arlington Assembly is the only fixture filing plant in Texas and contains 396 fixtures that plaintiff disputes as "real property," collectively worth $39.8 million. GM's Michigan fixture filing plants, on the other hand, contain 6,469 fixtures that plaintiff disputes as "real property," collectively worth $152.1 million.

The Honorable Martin Glenn
October 12, 2018
Page 5

same is true of the fire protection system at Warren we propose and the one plaintiff proposes from Arlington.

Instead, as plaintiff has explained to us, its sole basis for arguing that our proposed assets are not "representative" is that they are found at Warren and LDT — facilities that were addressed at the first representative assets trial and which the Court has already held were "specialized." Thus, plaintiff contends that because these proposed assets are at specialized facilities, they would not be representative of assets at other GM facilities, like GM Arlington Assembly, which plaintiff apparently intends to argue were not specialized.

There is a threshold problem with plaintiff's position. Notwithstanding its representation to the Court on August 9, 2018 at the pre-motion conference that plaintiff would only object to an air handling unit if it "had a good faith basis to differentiate it from the air handling units as to which the Court already ruled" at LDT, plaintiff still disputes whether approximately 100 other airhouses located at LDT, Warren, Mansfield and Defiance are fixtures. Pre-Motion Conf. Tr. at 68. Thus, while plaintiff argues that the four new representative assets we have identified are not representative because the Court has already determined that they are located in specialized facilities, the AAT has not conceded that those assets are fixtures despite conceding that they are, in fact, located in specialized facilities. Instead, as noted, plaintiff cancelled the sessions at which this question was to be mediated. Moreover, when we asked plaintiff to identify which plants are similar to Arlington so that we could understand the scope of the dispute that would be resolved if assets from Arlington were selected, versus which plants were covered by the Court's decisions at the first representative assets trial, plaintiff refused.

Wachtell, Lipton, Rosen & Katz

The Honorable Martin Glenn
October 12, 2018
Page 6

But there is a more fundamental problem with plaintiff's approach. There is simply no basis for distinguishing Arlington or GM's other facilities from the facilities the Court addressed at the first trial. Arlington, like all of the other GM manufacturing plants at issue, was built to meet GM's manufacturing needs. Plaintiff's four proposed representative "real property" assets at Arlington were all installed as part of the construction of a new body shop built specifically for a new product line, the GMT800 full-size SUV. Thus, as a practical matter, the Arlington body shop is no different from Warren Transmission, which, as the Court found, was "in effect a new building within the Warren Transmission facility" built to accommodate a new 6-speed transmission line. Decision at 351. And just like Warren and LDT, Arlington is "not a generic industrial building that any manufacturing operations could take place in" but was instead built "to accommodate specific assets designed for a specific manufacturing process." *Id.* at 388.

Instead, it is clear to defendants that the only reason why plaintiff does not want to select representative assets from LDT and Warren is that it wants a chance to relitigate the question of whether GM's manufacturing facilities are specialized at all. The Court rejected Mr. Goesling's testimony that "the primary purpose of the buildings is simply to 'provide shelter for the assets,'" concluding instead that "a more accurate explanation need also convey that the purpose of the realty is to support the manufacturing assets and the specific production processes to be contained in the building." Decision at 389. Having lost the issue at the first trial, now plaintiff wants to put on new evidence and new witnesses to reargue its losing position. That is both unfair, inappropriate, and inefficient. If we go down this path, the trial will wind up as a litigation over whether and to what extent Arlington is different from LDT, Warren, Mansfield

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable Martin Glenn
October 12, 2018
Page 7

and Defiance — when, effectively, plaintiff really will be rearguing whether GM's plants are specialized at all.

Moreover, insofar as it relates to building system fixtures that plaintiff now disputes as "real property," the whole issue of whether a plant is specialized or not should not even be an issue at the next trial. At the first trial, plaintiff argued to the Court that the portions of the LDT Central Utilities Complex ("CUC") that benefitted the building (as opposed to manufacturing processes) are fixtures. *See* Plaintiff's Pretrial Br. at 91 ("The remaining components of [the CUC] consist of both fixtures and non-fixtures, depending on whether the particular assets benefit any productive use of the building for any hypothetical purpose, or are specific to GM's manufacturing processes."). Indeed, plaintiff's pretrial brief went at length to cite authority for the proposition that building systems that are not process-specific are fixtures.[2] Not only did plaintiff argue the point, it proved the point with the testimony of its expert, David K. Goesling, who testified that assets like air houses, conduit, piping, and power systems were fixtures because they served the needs of the building.[3]

---

[2]   Plaintiff's Pretrial Br. at 91 ("*See, e.g.*, *Perez Bar & Grill* v. *Schneider*, No. 11CA010076, 2012 WL 6105324, at *8 (Ohio Ct. App. Dec. 10, 2012) (finding that a large air conditioning unit on the roof that was attached to the HVAC system and benefited the entire building was a fixture); *See G&L Investors* [v. *Designer's Workshop, Inc.*, No. 97-L-072] 1998 WL 553213 [(Ohio Ct. App. June 26, 1998)] (finding that a heating system, although specifically selected for the needs of the business, was a fixture as any subsequent buyer would have been able to utilize the heating system); *Atlantic Die Casting Co.* v. *Whiting Tubular Products, Inc.*, 337 Mich. 414 (1953) (finding that even if portions of heating equipment was removable, one inspecting the property would assume that all of the heating equipment were equally necessary to heating the building and maintained for use of the building) (citing *Nadolski* v. *Peters*, 332 Mich. 182, 185 (1952)).").

[3]   *E.g.*, Direct Testimony of Goesling at ¶ 213 ("I concluded that the AHUs [Air Handling Units] are fixtures.").

The Honorable Martin Glenn
October 12, 2018
Page 8

In other words, when it came to building systems, plaintiff's position at the first trial was that assets like boilers and air houses were all fixtures regardless of whether the plant was specialized or not. Which, again, highlights that there is simply no basis for plaintiff's contention that the selection of assets at Arlington will resolve issues that have not already been resolved by the Court's rulings on the CUC and the paint mix room power panels. Similarly, there is no basis for plaintiff's assertion that litigating issues at Arlington will put the entire "real property" dispute to rest when the AAT has not even conceded that the building system assets at facilities that the Court has already ruled to be specialized are fixtures.

As for the remaining areas of dispute:

1. As noted, the Term Lenders propose to litigate an asset that is composed of both power distribution and lighting systems. Even though plaintiff has not conceded that power distribution systems are fixtures, and notwithstanding the Courts' ruling that the power distribution systems at the LDT CUC (Asset No. 11) and the power system serving the paint mix room (Asset No. 5) are fixtures, plaintiff proposes to litigate a lighting system that is not associated with a power distribution system. Our selection would resolve a total of $70 million of disputed assets. Plaintiff's approach would address only $13 million. If the goal is to bring this case to closure, our selection is obviously preferable.

2. The Term Lenders propose to litigate a dock system. This category represents $22 million of disputed assets. Without conceding that any component of a dock system is a fixture, plaintiff has proposed that the parties instead litigate a storm sewer system that includes pumping equipment, which at most is representative of an asset class containing $8 million of disputed assets. Again, if the goal is to bring this case to closure, our selection is obviously preferable.

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable Martin Glenn
October 12, 2018
Page 9

\*          \*          \*

Finally, a word about a "compromise" that the plaintiff has proposed, that the Court has already rejected, and that we have (again) rejected as well: *i.e.*, that the parties litigate eight building system assets instead of four.  It is unnecessary — as shown above, four properly selected assets like defendants' cover the bulk of the "real property" dispute.  Doubling the number of assets to be tried would be a significant additional burden on the Court as well as the parties.  And it will add complication where none is warranted in light of plaintiff's position at the forty representative assets trial that all building systems are fixtures.

Respectfully submitted,

Marc Wolinsky

CC:    Counsel of Record (by ECF and email)