WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000

*Additional Counsel Listed on Signature Pages*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No. 09-50026 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST, by and through the Wilmington Trust Company, solely in its capacity as Trust Administrator and Trustee, | : | Adversary Proceeding |
| | : | Case No. 09-00504 (MG) |
| Plaintiff, | : | |
| vs. | : | |
| JPMORGAN CHASE BANK, N.A., individually and as Administrative Agent for Various Lenders Party to the Term Loan Agreement described herein, *et al.*, | : | |
| Defendants. | : | |

**TERM LENDERS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN
ASSETS LOCATED AT GM SHREVEPORT ASSEMBLY**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    THE AAT'S REQUEST FOR A DETERMINATION THAT 7,801
    FIXTURES LOCATED AT SHREVEPORT ASSEMBLY ARE NOT
    PART OF THE TERM LENDERS' COLLATERAL SHOULD BE
    DENIED...........................................................................................................................3

    A.    The Collateral Agreement, on its face, granted the Term Lenders a
            lien on all "fixtures" at Shreveport Assembly. ..........................................3

    B.    The AAT's argument that the disputed fixtures at Shreveport
            Assembly are merely realty is an erroneous description of Louisiana
            law..................................................................................................................5

CONCLUSION ................................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**     **Page**

*Wayne Cty.* v. *William G. & Virginia M. Britton Tr.*,
  563 N.W.2d 674 (Mich. 1997) ............................................................................ 7 n.3

*Wilmington Hous. Auth.* v. *Parcel of Land*,
  219 A.2d 148 (Del. 1966) ....................................................................................7 n.3

**Statutes and Rules**

Fed. R. Bankr. P. 7001(2) ............................................................................................ 1, 2

La. Civ. Code art. 466 ..................................................................................................... 4

La. Stat. § 10:9-102(a)(41) .................................................................................... passim

La. Stat. § 10:9-109(a) .................................................................................................... 6

La. Stat. § 10:9-334(a) ....................................................................................... 2 n.1, 5-6

La. Stat. § 10:9-334(b) .................................................................................................... 6

UCC § 9-102(a)(41) ........................................................................................................ 8

**Other Authorities**

2 La. Civ. L. Treatise, Property § 2:21 (5th ed. 2018 update) ........................................ 7

4 UCC Transactions Guide § 36:4 ........................................................................... 7 n.3

35A Am. Jur. 2d Fixtures § 1 .................................................................................. 7 n.3

A.N. Yiannopoulos, *Of Immovables, Component Parts, Societal Expectations,
  and the Forehead of Zeus*, 60 La. L. Rev. 1379 (2000) ......................................... 6-7

JPMorgan Chase Bank N.A. ("JPMorgan") and the other signatory defendants respectfully submit this memorandum of law in opposition to the motion for partial summary judgment on certain assets located at GM's Shreveport Assembly plant ("Shreveport Assembly") filed by the Motors Liquidation Company Avoidance Action Trust (the "AAT").

## PRELIMINARY STATEMENT

The AAT does not dispute that, on its face, the Collateral Agreement granted to JPMorgan, as agent for the Term Lenders, a lien on all fixtures located at Shreveport Assembly, regardless of their date of installation. Nonetheless, after nine years of litigation, the AAT has belatedly discovered a provision of the Louisiana UCC that provides a basis for a blanket challenge to that lien as to 7,801 of the over 8,700 fixtures that were installed in the plant at the time Old GM filed its Chapter 11 petition. As demonstrated in Defendants' *Memorandum of Law in Support of Term Lenders' Motion for Partial Summary Judgment Regarding Fixtures at Shreveport Assembly* (the "Term Lenders' Summary Judgment Brief"), by invoking this UCC provision, the AAT is now seeking a determination of "the validity, priority or extent of [the] lien" on the fixtures located at Shreveport Assembly. The request for that determination had to be timely asserted as a claim in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(2). It was not.

Determined to circumvent the statute of limitations that, as with LDT, so clearly bars its thirteenth hour challenge, the AAT offers two arguments in an effort to extricate itself from the reach of Bankruptcy Rule 7001(2). Both fail.

The AAT first claims that, because the Louisiana UCC does not provide for the creation of a lien on fixtures that are already annexed, the grant of a lien on fixtures was ineffective as to the 7,801 fixtures that were already installed at Shreveport Assembly when the

Collateral Agreement was entered into. But the AAT *does* concede that 967 of the assets that the Term Lenders characterize as fixtures that were annexed to the realty *after* the Collateral Agreement was entered into are valid collateral for the loan.[1] The AAT thus impliedly concedes that, on its face, the granting language of the Collateral Agreement did cover the fixtures at Shreveport Assembly. *See* AAT Statement of Undisputed Facts ¶¶ 4-5 [Adv. Pro. Docket No. 1091] ("The assets and property identified in the Collateral Agreement included 'all Equipment and all Fixtures' . . . . located at the 42 Old GM facilities identified in Schedule 1 to the Collateral Agreement," which included Shreveport). The AAT's challenge, by its own terms, is thus to the *validity* and *extent* of the lien granted by the Collateral Agreement on the fixtures at Shreveport Assembly.

Bankruptcy Rule 7001(2) requires that such a challenge to the validity or extent of a lien be timely made in an adversary proceeding. The Rule does not discriminate based on the legal theory underlying the challenge or, as the AAT would have it, permit the AAT to argue outside of an adversary proceeding that JPMorgan's lien was valid to the extent of 967 fixtures but invalid as to 7,801 fixtures.

The AAT's second argument — that the 7,801 already-installed fixtures are not fixtures at all, but rather real property, so they were not contained within the scope of the granting clause, is equally flawed. As shown in the Term Lenders' Summary Judgment Brief and further shown below, Louisiana law recognizes that goods that are permanently attached to the realty are "fixtures." Accordingly, regardless of whether the Louisiana UCC enabled Old

---

[1] We do not mean to imply here or elsewhere in this brief that the AAT concurs in the Term Lenders' characterization of these assets as fixtures, but rather that it concedes that the lien on these assets is not subject to challenge on the basis of Section 9-334(a) of the Louisiana UCC. *See* AAT Summ. J. Br. at 1 n.1.

GM to grant a lien on those fixtures, they are still nonetheless "fixtures." And, as such, assets attached to the Shreveport Assembly realty, just like the assets attached to the other plants covered by the granting clause, fall within the scope of the granting clause of the Collateral Agreement.

## ARGUMENT

**THE AAT'S REQUEST FOR A DETERMINATION THAT 7,801 FIXTURES LOCATED AT SHREVEPORT ASSEMBLY ARE NOT PART OF THE TERM LENDERS' COLLATERAL SHOULD BE DENIED.**

**A.    The Collateral Agreement, on its face, granted the Term Lenders a lien on all "fixtures" at Shreveport Assembly.**

The Collateral Agreement granted JPMorgan, as agent for the Term Lenders, a "security interest" on, *inter alia*, all "Fixtures" at the plants listed on Schedule 1 to the Collateral Agreement. Shreveport Assembly is one of the listed plants. Collateral Agreement art. II [Adv. Pro. Docket No. 1092-2 at 7-9]. The term "Fixtures" is defined in the Collateral Agreement as "all 'Fixtures' as such term is defined in Section 9-102 of the UCC as in effect on the date of this Agreement." *Id.* art. I § 1.01 [Adv. Pro. Docket No. 1092-2 at 6]. The term "UCC," in turn, is defined as:

> [T]he Uniform Commercial Code as from time to time in effect in the State of New York; provided, however, that, in the event that, by reason of mandatory provisions of law, any of the attachment, perfection or priority of the Agent's and the Secured Parties' security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

*Id.* (emphasis removed) [Adv. Pro. Docket No. 1092-2 at 7].

Thus, for purposes of the collateral grant at Shreveport Assembly, the operative definition of the term "fixtures" is found in Section 102 of the Louisiana UCC:

> "Fixtures" means goods, other than consumer goods and manufactured homes, that after placement on or incorporation in an immovable have become a component part of such immovable as provided in Civil Code Articles 463, 465, and 466, or that have been declared to be a component part of an immovable under Civil Code Article 467.

La. Stat. § 10:9-102(a)(41).

The Louisiana Civil Code defines the term "component parts," in relevant part, as:

> Things that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific use, are its component parts. Component parts of this kind may include doors, shutters, gutters, and cabinetry, as well as plumbing, heating, cooling, electrical, and similar systems. . . .
>
> Other things are component parts of a building or other construction if they are attached to such a degree that they cannot be removed without substantial damage to themselves or to the building or other construction.

La. Civ. Code art. 466.

Thus, by granting JPMorgan a lien on all "Fixtures," the Collateral Agreement, by its terms, granted a lien on all assets at Shreveport Assembly that meet the definition of "component parts" in the Louisiana Civil Code. Accordingly, the determination of whether an asset is a fixture within the Collateral Agreement's grant must be made by engaging in the same analysis that has been the focus of this litigation for the past three years — how attached is it to the building, how much damage would its removal cause, and the like.

But contrary to the AAT's claim, whether or not an asset is a "Fixture," as that term is used in the Collateral Agreement, has nothing to do with when the fixture was annexed to the realty. For assets located in Louisiana, the term "Fixture" is defined under the Collateral Agreement by La. Stat. § 10:9-102(a)(41). That statute defines "fixtures" as "goods, other than consumer goods and manufactured homes, that after placement on or incorporation in an

- 4 -

immovable have become a component part of such immovable . . . ." The definition makes no reference to when the "good" becomes a "component part."

The distinction that the AAT is drawing — between assets annexed before or after the Term Loan was made — is drawn in a separate provision of Louisiana law, La. Stat. § 10:9-334(a). That provision does not govern whether something is a "fixture," but rather whether and how a security interest in that asset can be created. It does not inform the question of whether the "good" is a "fixture" within the meaning of La. Stat. § 10:9-102(a)(41):

> A security interest under this Chapter may not be created or perfected in goods after they become fixtures. Except as otherwise provided in this Subsection, a security interest in goods that become fixtures continues in the fixtures if the security interest was perfected by a fixture filing when the goods become fixtures.

La. Stat. § 10:9-334(a). Indeed, by conceding that JPMorgan's lien was effective as to 967 of the 8,768 assets annexed to the Shreveport Assembly plant at the time of Old GM's filing, the AAT effectively conceded that its motion challenges the "extent" of JPMorgan's lien and its "validity" as to the 7,801 other assets. *See* AAT Summ. J. Br. at 1 n.1 ("Assets incorporated into the Shreveport Plant after the date of the Collateral Agreement also are not at issue."). Those 967 assets are "fixtures" subject to the granting clause of the Collateral Agreement because they were "goods . . . that after placement on or incorporation in an immovable have become a component part" of the Shreveport Assembly plant. La. Stat. § 10:9-102(a)(41). The same is true for the 7,801 assets that "after placement" had become component parts of the plant before the date of the Collateral Agreement.

**B.    The AAT's argument that the disputed fixtures at Shreveport Assembly are merely realty is an erroneous description of Louisiana law.**

Although its brief is less than clear, the AAT's second argument appears to be that the fixtures that had already been annexed on the date of the Collateral Agreement were not

within the collateral grant because they were not fixtures at all, but rather real property.  This argument rests on a misstatement of Louisiana law.

It is plain from the statutory language that the AAT relies upon that Louisiana law *does* recognize the existence of fixtures, regardless of when they are annexed.  *See* La. Stat. § 10:9-334(a) ("A security interest under this Chapter may not be created or perfected in goods *after they become fixtures*." (emphasis added)); *id.* § 10:9-334(b) ("This Chapter does not prevent the creation of an encumbrance *upon fixtures* under real property law." (emphasis added)); *id.* § 10:9-109(a) (Chapter 9 of the Louisiana UCC applies to transactions that "create[] by contract a security interest in . . . fixtures, but *as to fixtures* only if the security interest has been perfected by a fixture filing *when the goods become fixtures*" (emphases added)); *id.* § 10:9-102(a)(41) (definition of "fixtures").

Where Louisiana law differs from the UCC in other states is in the timing of when a security interest in "fixtures" can be created.  But that temporal limitation on the creation of a lien does not impact whether an asset is or is not a fixture.  It merely disables a party from creating a valid UCC lien in fixtures after they have been installed.

The AAT states four times in its brief that under Louisiana law fixtures are real property, without citing a single case or statutory provision.[2]  The only "authority" the AAT offers is one ambiguous sentence from a law review article, which states that "the component parts of [an] immovable cease to be distinct things; they become parts of a composite thing."

---

[2]   *See* AAT Summ. J. Br. at 2 ("The Louisiana Commercial Code does not apply to the creation of an interest in or lien on *real property, which under Louisiana law includes fixtures*." (emphasis added)); *id.* at 8 ("[T]he Shreveport Real Property Assets were real property."); *id.* at 10 ("Therefore, under Louisiana law, fixtures are real property."); *id.* at 11 ("As a matter of Louisiana law, any assets at the Shreveport Plant that were fixtures as of the date of the Collateral Agreement are real property.").

- 6 -

AAT Summ. J. Br. at 10 (quoting A.N. Yiannopoulos, *Of Immovables, Component Parts, Societal Expectations, and the Forehead of Zeus*, 60 La. L. Rev. 1379, 1379 (2000)).

Whatever the import is of this sentence, and it is far from clear, it certainly will not bear the weight that the AAT tries to place on it. At most it stands for the unremarkable proposition that a good that is permanently affixed to the realty becomes part of the real property. This is consistent with fixture law generally, which treats fixtures both as part of the realty, capable of being captured by a mortgage, but nonetheless retaining a separate existence.[3]

In Louisiana, as elsewhere, the fact that a good becomes part of the realty does not mean that it is not also a fixture or, in alternative Louisiana parlance, a "component part" of the realty. Indeed, the same author cited by the AAT, in his treatise on Louisiana property law, draws a distinction between "separable" component parts, which "may become objects of separate ownership" from the realty, and may or may not be transferred or encumbered with the immovable, and "inseparable" component parts, which are "not susceptible of separate ownership," and "are necessarily included in the transfer or encumbrance of" an immovable. 2 La. Civ. L. Treatise, Property § 2:21 (5th ed. 2018 update). Clearly, if a component part can be "separable," it cannot also be so merged into the realty as to lose all separate existence.

---

[3]   *See* 35A Am. Jur. 2d Fixtures § 1 ("The term fixture refers to a chattel that is capable of existing separate and apart from realty, but which, by actual annexation and appropriation to the use or purpose of the realty with the intention of making it a permanent accession thereto, becomes a part of the realty."); *Wayne Cty.* v. *William G. & Virginia M. Britton Tr.*, 563 N.W.2d 674, 678 (Mich. 1997) ("[T]he term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, *be assimilated into realty*.") (emphasis added)); *Wilmington Hous. Auth.* v. *Parcel of Land*, 219 A.2d 148, 150 (Del. 1966) ("[A] fixture is a chattel which, by reason of its annexation to the real estate, *is regarded in law as part of the real estate*.") (emphasis added)); *see also* 4 UCC Transactions Guide § 36:4 ("[T]he drafters of the [UCC] envisioned that a specific item of property could be a good, fixture, or part of the real estate with fixtures being property having characteristics of, and being akin to, both personal property and real estate.").

The AAT also seeks support for its claim that Louisiana does not recognize fixtures as separate assets after their annexation to the realty by invoking the difference between the Model UCC and the Louisiana UCC definitions of fixtures. *See* AAT Summ. J. Br. at 9-10. But, again, the argument simply does not withstand scrutiny. The Model UCC defines fixtures as "goods that have become so related to particular real property that an interest in them arises under real property law." UCC § 9-102(a)(41). The Louisiana UCC defines fixtures as "goods . . . that after placement on or incorporation in an immovable have become a component part of such immovable as provided in Civil Code Articles 463, 465, and 466." La. Stat. § 10:9-102(a)(41). Plainly, the two statutes use slightly different words to express the same idea, *i.e.*, that fixtures are goods that become part of the realty.

## CONCLUSION

In sum, the AAT's argument that because the assets attached to the Shreveport Assembly plant before the entry into the Collateral Agreement are realty, the assets are not within the collateral granted to the Term Lenders, rests on the false claim that Louisiana law has discarded the concept of fixtures annexed to the realty altogether. It has not.

Rather, under Louisiana law, "fixtures" or "component parts" both are recognized to be part of the realty, and continue to maintain a separate or separable identity. Accordingly, the Collateral Agreement by its own terms granted a lien to JPMorgan, as agent for the Term Lenders, on *all* fixtures at Shreveport Assembly. Therefore, notwithstanding the attempts to disguise it, the AAT's argument that this lien could not validly attach to 7,801 of the 8,768 fixtures at Shreveport Assembly because Louisiana does not permit the creation of a UCC lien on fixtures after they have been annexed is plainly a challenge to the validity and extent of the Term Lenders' lien.

If the AAT wanted to challenge the "validity" or "extent" of the Term Lenders' lien on the fixtures that were annexed at Shreveport Assembly before the Collateral Agreement, it had to do so in an adversary proceeding. It did not and it is now time-barred from doing so. The AAT's motion should therefore be denied.

Dated: October 12, 2018
New York, New York

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

By:  /s/ Elliot Moskowitz
 Elliot Moskowitz
 Marc J. Tobak
 M. Nick Sage
 450 Lexington Avenue
 New York, New York  10017
 Email:  elliot.moskowitz@davispolk.com
 Email:  marc.tobak@davispolk.com
 Email:  m.nick.sage@davispolk.com

*Attorneys for Certain Term Loan Lender Defendants identified on Exhibit 1 to Adv. Pro. Docket No. 788*

**KASOWITZ BENSON TORRES LLP**

By:  /s/ Andrew K. Glenn
 Andrew K. Glenn
 Joshua N. Paul
 Michelle G. Bernstein
 Frank S. DiCarlo
 1633 Broadway
 New York, New York  10019
 Telephone:  (212) 506-1700
 Email:  aglenn@kasowitz.com
 Email:  jpaul@kasowitz.com
 Email:  mgenet@kasowitz.com
 Email:  fdicarlo@kasowitz.com

*Attorneys for the Ad Hoc Group of Term Lenders listed in Appendix A to Adv. Pro. Docket No. 670*

**WACHTELL, LIPTON, ROSEN & KATZ**

By:  /s/ Marc Wolinsky
 Harold S. Novikoff
 Marc Wolinsky
 Amy R. Wolf
 51 West 52nd Street
 New York, New York  10019
 Telephone:  (212) 403-1000
 Email:  MWolinsky@wlrk.com

**KELLEY DRYE & WARREN LLP**

By:  /s/ John M. Callagy
 John M. Callagy
 Nicholas J. Panarella
 Martin A. Krolewski
 101 Park Avenue
 New York, New York  10178
 Telephone:  (212) 808-7800
 Email:  jcallagy@kelleydrye.com

**JONES DAY**

By:  /s/ C. Lee Wilson
 C. Lee Wilson
 250 Vesey Street
 New York, New York  10281
 Telephone:  (212) 326-3885
 Email:  clwilson@jonesday.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

- 9 -

**JONES DAY**

By:   /s/ Bruce Bennett
    Bruce Bennett
    Erin L. Burke
    555 South Flower Street, 50th Floor
    Los Angeles, California  90071
    Telephone:  (213) 489-3939
    Email:  bbennett@jonesday.com
    Email:  eburke@jonesday.com

    Gregory M. Shumaker
    Christopher J. DiPompeo
    51 Louisiana Avenue, N.W.
    Washington, D.C.  20001
    Telephone:  (202) 879-3939
    Email:  gshumaker@jonesday.com
    Email:  cdipompeo@jonesday.com

**MUNGER, TOLLES & OLSON LLP**

By:   /s/ John W. Spiegel
    John W. Spiegel
    Matthew A. Macdonald
    Bradley R. Schneider
    350 South Grand Avenue, 50th Floor
    Los Angeles, California  90071
    Telephone:  (213) 683-9100
    Email:  john.spiegel@mto.com
    Email:  matthew.macdonald@mto.com
    Email:  bradley.schneider@mto.com

    Nicholas D. Fram
    560 Mission Street, 27th Floor
    San Francisco, California  94105
    Telephone:  (415) 512-4000
    Email:  nicholas.fram@mto.com

*Attorneys for the Term Loan Lenders Listed on Appendix A to Adv. Pro. Docket No. 241*

**HAHN & HESSEN LLP**

By:   /s/ Mark T. Power
    Mark T. Power
    Alison M. Ladd
    488 Madison Avenue
    New York, New York  10022
    Telephone:  (212) 478-7200
    Email:  mpower@hahnhessen.com
    Email:  aladd@hahnhessen.com

*Attorneys for Certain Term Loan Investor Defendants identified on Exhibit 1 to Adv. Pro. Docket No. 788*

**ELENIUS FROST & WALSH**

By:   /s/ Daniel M. Hinkle
    Daniel M. Hinkle
    333 S. Wabash Avenue, 25th Floor
    Chicago, Illinois  60604
    Telephone:  (312) 822-3307
    Email:  daniel.hinkle@cna.com

*Attorneys for Continental Casualty Co.*