John W. Spiegel (admitted *pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100

Bruce Bennett (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: (213) 489-3939

*Attorneys for* Term Loan Lenders

*[additional counsel listed on signature page]*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br><br>        Debtors. | Chapter 11 Case<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |
| MOTORS LIQUIDATION COMPANY<br>AVOIDANCE ACTION TRUST, by and through<br>Wilmington Trust Company, solely in its capacity as<br>Trust Administrator and Trustee,<br><br>        Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., *et al.*,<br><br>        Defendants. | Adversary Proceeding<br><br>Case No. 09-00504 (MG) |

## DECLARATION OF SANDRA STERN IN SUPPORT OF THE TERM LOAN LENDERS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE TERM LOAN LENDERS' EFFECTIVENESS DEFENSE

I, Sandra Stern, declare as follows:

1.      I have been retained as an expert witness on behalf of the Term Loan Lenders in this matter. I submit this declaration in support of the Term Loan Lenders' Opposition to Plaintiffs' Motion for Partial Summary Judgment on the Term Loan Lenders' Effectiveness Defense. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of my expert report in this matter, which is incorporated herein as though set forth in full.

I declare under penalty of perjury under the laws of the state of New York that the foregoing is true and correct.

DATED: October 9, 2018
New York, New York

_____
Sandra Stern

1

# Exhibit A

CONFIDENTIAL

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:**<br><br>**MOTORS LIQUIDATION COMPANY**, *et al.,*<br><br>**Debtors.** | **Chapter 11**<br>**Case No.:  09-50026 (MG)** |
| **MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JPMORGAN CHASE BANK, N.A.,** *et al.,*<br><br>**Defendants.** | **Adversary Proceeding**<br>**Case No.:  09-00504 (MG)** |

## EXPERT REPORT OF SANDRA STERN

## CONFIDENTIAL

**January 31, 2017**

CONFIDENTIAL

## I.    MY BACKGROUND AND QUALIFICATIONS

1.    I am an attorney in private practice in New York City.  I have had extensive experience with secured transactions and their statutory underpinning, Article 9 of the Uniform Commercial Code ("UCC"), beginning in the 1980s as an in-house attorney at Republic National Bank of New York and continuing through the last 22 years in private practice.  My practice has focused on representing borrowers and lenders in secured transactions.

2.    I am the author of the treatise *Structuring and Drafting Commercial Loan Agreements*, which was first published in the early 1980s.  I have updated my treatise every year, generally by adding a new chapter addressing what I consider to be matters of current interest. In addition, I was chair of the annual Practicing Law Institute program on Article 9 of the UCC for approximately 10 years, and now continue as a regular program speaker.  I was one of a small group of drafters of an Omnibus Bill, Senate #5901, that, among other things, brought New York into step with the other jurisdictions with respect to the 2010 amendments to Article 9.  Finally, as a member of the Uniform Law Commission's Drafting Committee to Amend Articles 1, 3, and 9, I am currently working on provisions to further revise these articles in contemplation of the establishment of a national repository for mortgage notes that will replace the paper note with an electronic image.

3.    I represent New York State on the Uniform Law Commission ("ULC") (formerly the National Conference of Commissioners on Uniform State Laws).  I was a member of the Drafting Committees for the 2001 and 2010 revisions of Article 9 (and was a member of the Drafting Committees for several other Articles of the UCC as well).  I am currently a member of the UCC Committee, which is the group within ULC that considers what initiatives, if any, ULC should undertake to address current practice issues arising under the UCC, and, as mentioned

CONFIDENTIAL

above, the Drafting Committee to Revise Articles 1, 3, and 9 to anticipate a mortgage note repository.

4.      In addition, I have substantial experience as a practicing lawyer with the drafting, review, filing, and amendment of UCC financing statements including UCC-3 termination statements.

5.      My CV, setting forth my background, qualifications, a list of my publications including those that I have authored in the last 10 years, and a list of all cases in which, during the last 4 years, I have testified as an expert at trial or at deposition, is attached hereto as Exhibit A.

6.      I have been engaged by the group of term lenders identified in Exhibit B as an expert on certain issues pertaining to secured transactions and related issues in connection with the above-captioned matter.  In particular, I have been asked to express my opinion concerning whether Mayer Brown's determination that it was authorized to file the termination statement at issue in this litigation was objectively reasonable.

7.      In preparing my opinions, I have reviewed, among other things, certain documents and judicial opinions pertaining to this case.  These documents and judicial opinions are listed in Exhibit C, which is attached hereto and incorporated herein by reference.  I have also drawn on my decades of experience, as detailed above, in secured financing transactions.

8.      I bill on a time and materials basis for my work in connection with this assignment.  My hourly billing rate is $705.00 per hour.  Payment for my services does not depend on the opinions I form or the outcomes of this matter in any way.  There are no other people under my supervision who have assisted me in this matter.

CONFIDENTIAL

## II.    OPINION

9.    As explained more fully below, in light of the facts known to Mayer Brown and concerns raised by Mayer Brown employees, Mayer Brown could not reasonably have concluded that it was authorized to file the UCC-3 termination statement (the "Termination Statement") that is at issue in this case.

### A.    Background

10.    On or about October 30, 2001, General Motors Corporation ("GM") and a number of other parties entered into a real estate financing transaction that I will refer to as the Synthetic Lease.  Generally speaking, synthetic lease financings were a means of financing the acquisition or improvement of real property that had features of a loan and features of a lease—as the Participation Agreement explains, the transaction treated GM as owner of the properties involved for tax purposes, but as lessee for financial accounting purposes.  *See* Participation Agreement § 3.1(a).    The Chase Manhattan Bank (later succeeded by JPMorgan Chase Bank, N.A. ("JPMorgan")) was appointed as administrative agent to act on behalf of a group of entities that helped finance the facility.  *See* Annex A to the Participation Agreement at 3.

11.    The Synthetic Lease initially involved nine properties: Six parts-distribution warehouses; a mixed use facility in Detroit, MI; a transmission parts distribution center in Indianapolis, IN; and an automotive parts distribution center in Bolingbrook, IL.  *See* Exhibit B to Agency Agreement.  In 2003, the Synthetic Lease agreement was amended.  The amendment, among other things, expanded the list of permitted properties to twelve and further defined them. *See* Revised Exhibit B to Agency Agreement.

CONFIDENTIAL

12.     On or about November 30, 2006, GM, the Saturn Corporation, and others entered into a $1.5 billion term loan agreement (the "Term Loan").  *See* Depo. Ex. 36.[1]  JPMorgan was appointed to act as administrative agent for the lenders under the Term Loan (the "Term Lenders").  *See id.* ¶ 8.01.

13.     The Synthetic Lease was scheduled to mature on October 31, 2008.  *See* Annex A to the Participation Agreement at 29.  GM opted to repurchase the remaining properties that were part of the agreement.  *See* Depo. Ex. 7.  I will refer to this process as the repayment of the Synthetic Lease.

14.     I understand that Mayer Brown represented GM in connection with the repayment of the Synthetic Lease and that Simpson, Thacher & Bartlett ("Simpson") represented JPMorgan (in its capacity as administrative agent), in connection with the Synthetic Lease.  *See, e.g.* Deposition of Ryan Green, Jan. 27, 2010 ("Green 2010 Tr.") at 7:1-3; Deposition of Robert Gordon, Jan. 28, 2010 ("Gordon 2010 Tr.") at 9:8-10.

15.     GM asked Mayer Brown to prepare a list of the "paperwork" necessary to complete the repayment of the Synthetic Lease.  *See* Depo. Ex. 7.

16.     I understand that Robert Gordon was the billing partner at Mayer Brown with responsibility for the Synthetic Lease.  Mr. Gordon was assisted by, among others, Ryan Green (an associate), Stewart Gonshorek (a paralegal), and Michael Perlowski (a paralegal).  *See* Green 2010 Tr. at 8:21-9:3.  Though Mr. Gonshorek was a paralegal, he also was an attorney admitted to practice in several jurisdictions.  *See* Deposition of Stewart Gonshorek, Jan. 28, 2010 ("Gonshorek 2010 Tr.") at 4:21-5:7.

---

[1] Citations to deposition exhibits, unless otherwise noted, are to the sequentially numbered exhibits used at the 2010 depositions in this action.

CONFIDENTIAL

17.    In early October 2008, Mr. Green began preparing a draft closing checklist that would identify the documentation that needed to be prepared in connection with the repayment of the Synthetic Lease.  *See* Depo. Ex. TL-109.  The closing checklist identified five properties that GM planned on purchasing: (1) SPO Headquarters, Grand Blanc, MI; (2) Franklin Parking Deck, Detroit, MI; (3) Vacant Parcel 6/C, Detroit, MI; (4) River East Parking Deck, Detroit, MI; and (5) GM Powertrain L6 Engine Plant, Flint, MI.  *Id.*  All five properties were identified on the closing checklist as being located in Michigan, in the cities of Grand Blanc, Detroit, and Flint.

18.    Mayer Brown understood that GM and JPMorgan intended to authorize the filing of termination statements only with respect to UCC-1 financing statements that had been filed in connection with the Synthetic Lease.  *See, e.g.*, Green 2010 Tr. at 87:7-13.

19.    In order to prepare a list of UCCs that need to be terminated, Mr. Green asked Mr. Perlowski (among other things) to conduct certain searches of UCCs filed in the public record with the Delaware Secretary of State.  *See* Depo. Exs. 1, 2.

20.    On October 9, Mr. Perlowski emailed Mr. Green and Mr. Gonshorek the results of his searches.  *See* Depo. Ex 4.  Mr. Perlowski's email identified four Delaware UCC filings, two against GM and two against Auto Facilities Real Estate Trust 2001-1 (a trust created in connection with the Synthetic Lease).  Mr. Perlowski's email attached the underlying UCC filings that had been filed in Delaware naming JPMorgan as Administrative Agent, and described those filings as follows:

    (i)    A filing against GM that was a "blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 2092526 7, file date April 12, 2002)."

    (ii)    A filing against GM that was a "financing statement as to equipment, fixtures, and related collateral located at certain U.S. manufacturing facilities (file number 6416808 4, file date November 30, 2006)."

CONFIDENTIAL

    (iii)    A filing against Auto Facilities Real Estate Trust 2001-1 that was a "blanket-type financing statement as to real property and related collateral located in Marion County, Indiana (file number 2092532 5, file date April 12, 2002)."

    (iv)    A filing against Auto Facilities Real Estate Trust 2001-1 that was a "blanket-type financing statement as to real property and related collateral located in Wayne County, Michigan (file number 2007 1919660, file date May 21, 2007)."

21.    The UCC with file number 6416808 4 (the "Main Term Loan UCC-1") was not related to the Synthetic Lease. Instead, it had been filed in connection with the Term Loan.

22.    For reasons that are not clear to me, Mayer Brown (i) added termination statements for all four UCC filings, including the Main Term Loan UCC-1, to the draft checklist; and (ii) prepared draft termination statements for all four UCC filings, including the Main Term Loan UCC-1. *See* Depo. Ex. 15.

23.    On October 15, 2008, Mr. Green circulated the draft checklist and the draft termination statements to Mardi Merjian, an attorney at Simpson. *See id.*

24.    On October 17, 2008, Mr. Merjian responded to Mr. Green's email by stating "nice job on the documents." *See* Depo. Ex. 16. I understand that neither Mr. Merjian nor any other JPMorgan representative objected to the filing of or raised any question regarding the propriety of the termination statement referencing the Main Term Loan UCC-1 (hereinafter the "Termination Statement") prior to GM's bankruptcy.

25.    On or about October 29, 2008, Mr. Merjian executed an escrow letter that named, among the closing documents, a termination statement for the Main Term Loan UCC-1 (Delaware Secretary of State file number 6416808 4). *See* Depo. Exs. 21 & 22.

26.    On or about October 30, 2008, Mr. Gonshorek instructed CT Corporation, a filing service, to file the termination statements that had been prepared in connection with the repayment, including the Main Term Loan UCC-1. Depo. Ex. 25.

27.    Mr. Green testified that, at the time of the filing of the Termination Statement, he believed the Main Term Loan UCC-1 to be related to the Synthetic Lease.  Green 2010 Tr. at 99:1-8

28.    CT Corporation ultimately filed the termination statements with the relevant filing offices.  *See* Depo. Ex. 25.

29.    However, prior to the filing of the Termination Statement, Mr. Gonshorek approached Mr. Green with a "concern" about the filing of the Termination Statement.  Green 2010 Tr. at 98:9-25.  According to Mr. Green's deposition testimony, Mr. Gonshorek noticed that the list of "cities and states" identified on Schedule 1 to Annex I to the Main Term Loan UCC-1 was "broader" than the list of cities and states identified on the closing checklist.  *Id.* The Annex to the Main Term Loan UCC-1 describes the collateral covered by the financing statement as consisting of "all Equipment and all Fixtures" (along with other assets) at certain identified GM manufacturing facilities, and identifies the underlying transaction as a "term loan agreement, dated as of November 29, 2006."  Schedule 1, which is part of the Annex, lists the 42 manufacturing facilities.

30.    Mr. Gonshorek explained his concern to Mr. Green, and showed Mr. Green a copy of Schedule 1 to the Main Term Loan UCC-1.  *Id.*

31.    Mr. Green testified that he did not discuss Mr. Gonshorek's concerns with Mr. Gordon or with anybody else.  Green 2010 Tr. at 97:24-98:25.

32.    The testimony (both from 2010 and 2017) does not provide any explanation for how Mayer Brown reached the conclusion that it was authorized to file the Termination Statement in light of Mr. Gonshorek's concerns and the documentation available to Mayer Brown.  Indeed, when deposed in 2010, Mr. Green did not identify any steps that he took to

address the discrepancies raised by Mr. Gonsorek, nor did he even reach any conclusion regarding them:

> Question: What did you conclude with respect to the issue he raised?
> ...
> Answer (by Mr. Green): I didn't conclude anything.

Green 2010 Tr. at 98:16-17, 20.

### B.    Mayer Brown Could Not Reasonably Have Concluded That It Was Authorized to File the Term Loan UCC-3 Termination Statement

33.    In my opinion, in light of the concerns expressed by Mr. Gonshorek and the many red flags indicating that the Main Term Loan UCC-1 had nothing to do with the Synthetic Lease, Mayer Brown could not reasonably have believed that it was authorized to file the Termination Statement. Indeed, Mr. Green's failure to act in response to Mr. Gonshorek's concerns reflects an extreme departure from the standard that I would expect from a lawyer practicing in the area of secured transactions. Industry custom and practice does not permit debtor's counsel to file a termination statement in the face of such unresolved concerns about whether the underlying financing statement ought to be terminated.

34.    The concern raised by Mr. Gonshorek was a very significant one that should have raised red flags about whether Mayer Brown was authorized to file the Termination Statement. The Schedule that Mr. Gonshorek showed Mr. Green identified forty-two different GM facilities, all of which appear to be manufacturing facilities. While it is possible that the Flint Powertrain facility referenced on the Schedule is the same as the Flint Powertrain facility referenced on the checklist, it is clear that the overwhelming majority of the facilities listed on the Schedule—*at least forty-one out of forty-two*—are not listed on the closing checklist. Since a financing statement is filed to perfect a security interest in collateral that has been pledged to the secured party, the appearance in a financing statement of references to collateral other than that involved

-8-

CONFIDENTIAL

in a transaction is inherently suspicious.  A practitioner viewing this list should have been alerted

to the fact that further inquiry was required in order to determine whether Mayer Brown was

authorized to terminate the Main Term Loan UCC-1.  There is no evidence that Mr. Green or

anyone else at Mayer Brown made such an inquiry.

35.    Furthermore, it was evident from the face of Annex I to the Main Term Loan

UCC-1 that this financing statement was not related to the Synthetic Lease. This conclusion did

not require detailed knowledge as to the structure, nature, or legal effect of a synthetic lease.

Among other things:

> (i)    The Main Term Loan UCC-1, in Annex I, identifies the underlying transaction as a "Credit Agreement." Depo. Ex. 4.  "Credit Agreement" is further defined as a "term loan agreement dated as of November 30, 2006." *Id.* This language would be sufficient to tell any reader—even one with only minimal knowledge about the Synthetic Lease—that the Main Term Loan UCC-1 had not been filed in connection with the Synthetic Lease, but instead with a later term loan financing.

> (ii)    The date of the Main Term Loan UCC-1 is November 29, 2006. *See* Depo. Ex. 36.  The Synthetic Lease closed in 2001 and was amended in 2003. *See* First Amendment and Agreement.  Although there may be reasons why a filing may be made five years after the closing to which it related, it is nevertheless unusual to do so.  It would be particularly unusual to see a financing statement that adds 42 properties five years after the closing.  This fact, although not necessarily determinative in and of itself, should have prompted a close examination of the initial financing statement.

> (iii)    The Main Term Loan UCC-1 states that one of the parties to the underlying credit facility is Saturn Corporation, which is not a party to the Participation Agreement or any of the other Synthetic Lease "Operative Documents" (as defined in the Document Index to the Synthetic Lease Closing Binder).

> (iv)    The Main Term Loan UCC-1 references a Collateral Agreement (i.e., security agreement) dated November 29, 2006.  A Collateral Agreement is not among the Operative Documents for the Synthetic Lease.

> (v)    Unlike the other filing against GM attached to Mr. Perlowski's October 9, 2008 email, the Main Term Loan UCC-1 *does not* reference the Auto Facilities Real Estate Trust 2001-1, the Loan Facility Agreement, the

Participation Agreement, or the parties to the Synthetic Lease and its Operative Documents (other than General Motors and JPMorgan).

(vi)    The Main Term Loan UCC-1 contains a list of *42* locations (Schedule 1 to Annex I) which are identified solely by city and state.  As explained above, the payoff of the Synthetic Lease involved *five* properties covered by the Synthetic Lease, which were all in Michigan, and it could be easily ascertained, by scanning the list of properties on Schedule 1 to Annex I, that the list of properties went beyond that on the closing checklist.

36.    Finally, the description of three of the Delaware financing statements on the checklist presented warning signs that the Main Term Loan UCC-1 was not related to the Synthetic Lease.  After a description of the two "blanket type financing statements" relating to specifically described real property, the third is described as: "Financing statement as to equipment, fixtures and related collateral located at certain manufacturing facilities (filenumber 6416808 4, file date 11/30/06)."  Depo. Ex. 10.  The question posed by the description is: "What do the unnamed U.S. manufacturing facilities (which were identified only as the places where the pledged collateral was located) have to do with the specific properties governed by the synthetic lease?"  These descriptions should, at a  minimum, have prompted a further review of the financing statements to which they referred.

37.    In light of the seriousness of Mr. Gonshorek's concerns and the discrepancy obvious from the face of Schedule 1, a reasonable attorney would not have concluded that he or she was authorized to file the Termination Statement without additional information.  Among the steps that Mr. Green might have taken:

(i)    He could have escalated the concern internally and discussed the issue with other Mayer Brown attorneys who were familiar with the transaction.

(ii)    He could have raised the concern with Simpson to see if its attorneys could explain the filing and confirm that JPMorgan intended to terminate the financing statement.

-10-

        (iii)    He could have conducted his own research into the provenance of the Main Term Loan UCC-1 by reviewing the entire Main Term Loan UCC-1 and comparing it to the terms of the Synthetic Lease agreements.

38.     It was not reasonable to conclude, in the absence of any further inquiry into the underlying facts, that the Main Term Loan UCC-1 had been filed in connection with the Synthetic Lease.  There was nothing that pointed to the fact that it was part of the Synthetic Lease, and every indication that it was not.  In any event, there is no indication that Ryan Green or anyone else at Mayer Brown took any steps to see whether or not the properties listed on the financing statement were related to the Synthetic Lease.

39.     It appears that someone at Mayer Brown actually noticed the definition of "Credit Agreement," as that term is circled in a copy of the Main Term Loan UCC-1 produced by Mayer Brown that appears to have been printed from Mr. Gonshorek's computer.  *See* Depo. Ex. 3.

40.     It was thus not reasonable for Mayer Brown to conclude that it was authorized by JPMorgan to file the Termination Statement.  In my experience, attorneys and paralegals handling UCC filings understand and are thoroughly trained about the importance of accuracy in UCC filings, and the necessity of resolving any potential discrepancies before a filing is completed.  This custom and practice is necessitated by the potentially serious consequences of errors with respect to UCC filings for creditors and debtors alike.  Notably, erroneous filings can have consequences not just for the secured party, but also for the debtor because the termination of a financing statement for an active loan can trigger events of default or other legal remedies.  Although many persons handling UCC filings do not fully understand how such filings fit into the conceptual framework of Article 9, it is industry practice for such persons to handle filings scrupulously in order to avoid error.  These concerns are even more important when handling filings involving large organizations that may have many filings in the public record.  Any lawyer or paralegal with even basic familiarity with the UCC system would have recognized the

-11-

very significant risk that the Main Term Loan UCC-1 should not be terminated and that further inquiry was necessary before Mayer Brown reasonably could conclude that it was authorized to file the Termination Statement.

41.     The fact that the Main Term Loan UCC-1 was filed against GM and in favor of "JPMorgan Chase Bank, N.A. as Administrative Agent" is not sufficient to justify an assumption that the financing statement might be related to the Synthetic Lease.  It is not uncommon for a sophisticated business such as General Motors to have several lines of secured financing backed by various asset categories, such as real property, equipment, inventory, and accounts.  It is not unusual for numerous such secured transactions to utilize the same bank as administrative agent, as there are relatively few banks that act in this capacity.  Moreover, prior banking relationships with the borrower may influence the choice of administrative agent.  Indeed, it appears that Mayer Brown was involved in several transactions involving GM on which JPMorgan served as Administrative Agent.  Gonshorek 2010 Tr. 8:5-7.

42.     Nor does Simpson's failure (or JPMorgan's failure) to object to the filing make reasonable any belief of Mayer Brown that it was authorized to terminate the Main Term Loan UCC-1.  It is not consistent with industry custom and practice for debtor's counsel simply to assume that a creditor's counsel has reviewed the financing statements for accuracy.  If a concern cannot be resolved in other ways, it is customary to flag any potential concerns prior to proceeding with a filing.

43.     In sum, Mayer Brown could not reasonably have concluded from the information available that it was authorized to file the Termination Statement.

CONFIDENTIAL

Date: January 31, 2017

_____
Sandra Stern

CONFIDENTIAL

<u>Exhibit A</u>

<u>Curriculum Vitae</u>

**Admitted:** Massachusetts; Minnesota; New York; U.S. District Court, District of Minnesota; U.S. Court of Appeals, Eighth Circuit

**Law School:** Harvard Law School, LL.B.

**College:** Goucher College, B.A., highest honors

**Member:** The Association of the Bar of the City of New York (Member, Committee on Uniform State Laws, 1999-2005); New York State Bar Association (Chair, Business Law Section, 1998-1999; Chair, Banking Law Committee of Business Law Section, 1990-1994); New York County Lawyers' Association (Chair, Banking Law Committee, 1986-1989); New York State Bankers Association (Member, Lawyers Advisory Committee on Legislation and Regulation, 1990-1993).

**Biography:**
In private practice since 1994, concentrating in commercial finance, including secured transactions and letters of credit, loan participations, and electronic commerce issues. Ms. Stern counsels commercial banks and nonbank lenders as well as corporate borrowers.

Previously:  Senior Vice President and General Counsel, Banco Santander, 1993-1994. First Vice President and Deputy General Counsel, Republic National Bank of New York, 1980-1993.

**Author:** Author: *Structuring and Drafting Commercial Loan Agreements*, A.S. Pratt & Sons, 1999;
*Structuring Loan Participations*, Warren, Gorham & Lamont, 1992;
*Structuring Commercial Loan Agreements*, Warren, Gorham & Lamont, 1990.

**Appointments:**
Commissioner; New York State Uniform State Law Commission, 1992-;
Drafting Committee to Revise Uniform Commercial Code Article 5, Letters of Credit;
Drafting Committee to Revise Uniform Commercial Code Article 7, Documents of Title;
Drafting Committee to Revise Uniform Commercial Code Article 9, Secured Transactions, (2001 and 2010 revisions);
Drafting Committee on Uniform Money Services Act;
Chair, Study Committee on Payment Systems;
Uniform Commercial Code Committee (current).
Drafting Committee to Revise Articles 1, 3, and 9.

**Recent Expert Witness Testimony:**  *Subaru Distributors Corp. v. Subaru of America, Inc.*, United States District Court, Southern District of New York, 98 Civ. 5566, 2002 Westlaw 413808, Mar. 18, 2002; *In re CRIIMI MAE INC., et al.*, United States Bankruptcy Court, District of Maryland, Bankruptcy Case No. 98-2-3115-DK; and *BNP Paribas Mortgage Corp. v. Bank of*

-14-

CONFIDENTIAL

*America, N.A.*, and *Deutsche Bank AG v. Bank of America, N.A.*, United States District Court, Southern District of New York, 09 Civ. 9783, 09 Civ. 9784.

**Fellow:** American College of Commercial Finance Lawyers, 1995-.

**Recent Publications:**

Structuring and Drafting Commercial Loan Agreements, A.S. Pratt & Sons (3rd ed., 1999; updated annually)

Structuring Loan Participations, Warren, Gorham & Lamont (1992)

How an E-Sign Law Revision Could Throw Check System into Chaos, American Banker, February 21, 2003

Mezzanine Finance: The Lender's Exit Strategy, New York Law Journal, November 20, 2008.

The Lender's Exit Strategy In Mezzanine Financing, New York Law Journal; February 13, 2009

The Uniform Commercial Code Evolves, But More Slowly in New York, New York Law Journal, January 14, 2011.

Modernizing New York's Commercial Code, New York Law Journal, March 31, 2013

Paper Terrorism - Remedies for Victims of Abusive UCC Filings, New York Law Journal, March 21, 2014.

Unique Provisions in New York's Omnibus UCC Bill, New York Law Journal, January 28, 2015.

New Types of Collateral in Article 9, What Lawyers Need to Know About UCC Article 9, Coursebook, Practising Law Institute (updated annually)

Overview of Current UCC Article 9, What Lawyers Need to Know About UCC Article 9, Coursebook, Practising Law Institute (updated annually)

Insuring the Article 9 Transaction – The Lender's UCC Policy, What Lawyers Need to Know About UCC Article 9, Coursebook, Practising Law Institute (updated annually)

New York State's Cooperative Apartment Provisions, What Lawyers Need to Know About UCC Article 9, Coursebook, Practising Law Institute (updated annually)

Secured Lending Issues in Revised Article 7, What Lawyers Need to Know About UCC Article 9, Coursebook, Practising Law Institute (updated annually)

The Impact of UCC Article 5, What Lawyers Need to Know About UCC Article 5, Coursebook, Practising Law Institute (updated annually)

CONFIDENTIAL

Electronic Commerce and Revised Article 5, What Lawyers Need to Know About UCC Article 5, Coursebook, Practising Law Institute (updated annually)

Varying Article 5 of the UCC by Agreement, The Banking Law Journal (June 1997)

Revised Article 5 Brings Uniformity, Predictability to Letters of Credit, New Jersey Law Journal, February 26, 1996

Recent Revisions to Letter of Credit Law, The Bankers Magazine, November/December 1996

Cash as Collateral: Perfecting a Security Interest in a Deposit Account, The Bankers Magazine, July-August 1996

New Code Rewrites U.S. Letter-of-Credit Rules, Corporate Finance, February 1997.

FASB Complicates Participation Accounting, American Banker, August 13, 1996

New Liability Questions for Lenders; American Banker, December 13, 1996

New York Enacts Revised Article 5 for UCC, New York Law Journal, October 4, 2000

Current E-Signature Laws Lacking in Crucial Rules, American Banker, November 10, 2000

The Future is Here: The Electronic Closing in 2000, Banking Law Journal, May/June 2000

An Analysis of the Secured Lender's UCC Article 9 Insurance Policy, New York Law Journal, June 28, 2002

Using UCITA for Electronic Contracting, New York Law Journal, January 25, 2001

Making Loan Portfolios Comply With Revised Article 9, New York Law Journal, January 11, 2001

How Revisions to UCC Article 9 Will Change Secured Financing, December 8, 1998

Transactions That Are Partly In Or Not At All: Financial Services Transactions Under UCITA, The UCITA Revolution, PLI, 2000.

CONFIDENTIAL

<u>Exhibit B</u>

Ares Enhanced Loan Investment Strategy III, Ltd.
Ares Enhanced Loan Investment Strategy IR, Ltd.
Ares IIIR/IVR CLO Ltd.
Ares VIR CLO Ltd.
Ares VR CLO Ltd.
Ares XI CLO Ltd.
Atrium IV
Atrium V
Avery Point CLO, Limited
Bentham Wholesale Syndicated Loan Fund
Black Diamond CLO 2005-1 Ltd.
Black Diamond CLO 2005-2 Ltd.
Black Diamond CLO 2006-1 (Cayman) Ltd.
Black Diamond International Funding, Ltd.
Board of Retirement of the San Diego County Employees Retirement Association
Castle Garden Funding
Caterpillar Inc. Pension Master Trust
Chatham Light II CLO, Limited
Crescent Senior Secured Floating Rate Loan Fund LLC
Eaton Vance CDO IX, Ltd.
Eaton Vance CDO VIII, Ltd.
Eaton Vance CDO X PLC
Eaton Vance Floating Rate Income Trust
Eaton Vance Floating Rate Portfolio
Eaton Vance Institutional Senior Loan Fund
Eaton Vance International (Cayman Islands) Floating Rate Income Portfolio
Eaton Vance Limited Duration Income Fund
Eaton Vance Senior Debt Portfolio
Eaton Vance Senior Floating Rate Trust
Eaton Vance Senior Income Trust
Eaton Vance Short Duration Diversified Income Fund
Eaton Vance Variable Trust Floating Rate Income Fund
Evergreen VA High Income Fund, a series of Evergreen Variable Annuity Trust
FIAM Floating Rate High Income Commingled Pool
FIAM High Yield Bond Commingled Pool
FIAM High Yield Fund, LLC
Fidelity Advisor Series I: Fidelity Advisor Floating Rate High Income Fund
Fidelity Advisor Series I: Fidelity Advisor High Income Advantage Fund
Fidelity Advisor Series I: Fidelity Advisor High Income Fund
Fidelity Advisor Series II: Fidelity Advisor Strategic Income Fund
Fidelity American High Yield Fund
Fidelity Canadian Asset Allocation Fund
Fidelity Central Investment Portfolios LLC: Fidelity Floating Rate Central Fund

-17-

CONFIDENTIAL

Fidelity Central Investment Portfolios LLC: Fidelity High Income Central Fund 1
Fidelity Central Investment Portfolios LLC: Fidelity High Income Central Fund 2
Fidelity Income Fund: Fidelity Total Bond Fund
Fidelity Puritan Trust: Fidelity Puritan Fund
Fidelity School Street Trust: Fidelity Strategic Income Fund
Fidelity Summer Street Trust: Fidelity Capital & Income Fund
Fidelity Summer Street Trust: Fidelity High Income Fund
First Trust Senior Floating Rate Income Fund II
GE Capital US Holdings, Inc.
General Electric Pension Trust
High Yield Bond Fund, a series of 525 Market Street Fund LLC
IBM Personal Pension Plan Trust
International Paper Company Commingled Investment Group Trust
Iowa Public Employees' Retirement System
Jersey Street CLO, Ltd.
Katonah III, Ltd.
Katonah IV, Ltd.
Legg Mason ClearBridge Capital & Income Fund
Los Angeles Department Water and Power Employees' Retirement, Disability and Death Benefit
       Insurance Plan
Madison Park Funding I Ltd.
Madison Park Funding II Ltd.
Madison Park Funding III Ltd.
Madison Park Funding IV Ltd.
Madison Park Funding V Ltd.
Madison Park Funding VI Ltd.
Marlborough Street CLO, Ltd.
Metropolitan West High Yield Bond Fund
MFS Charter Income Trust
MFS Intermarket Income Trust I
MFS Intermediate High Income Fund
MFS Meridian Funds - Global High Yield Fund
MFS Multimarket Income Trust
MFS Series Trust III on behalf of MFS Global High Yield Fund
MFS Series Trust III on behalf of MFS High Income Fund
MFS Series Trust VIII on behalf of MFS Strategic Income Fund
MFS Series Trust XIII on behalf of MFS Diversified Income Fund
MFS Special Value Trust
MFS Variable Insurance Trust II on behalf of MFS High Yield Portfolio
MFS Variable Insurance Trust II on behalf of MFS Strategic Income Portfolio
Microsoft Global Finance
Momentum Capital Fund Ltd.
Mt. Wilson CLO II, Ltd.
Napier Park Distressed Debt Opportunity Master Fund Ltd.
Nash Point CLO
Northern Trust Global Advisors, Inc., as Named Fiduciary to the Central States, Southeast, and

CONFIDENTIAL

Southwest Areas Pension Fund
Oaktree High Yield Fund II, L.P.
Oaktree High Yield Fund, L.P.
Oaktree High Yield Plus Fund, L.P.
Oaktree Loan Fund 2x (Cayman), L.P.
Oaktree Senior Loan Fund, L.P.
OCM High Yield Trust
Pacific Gas and Electric VEBA
PG&E Corporation Retirement Master Trust
Race Point II CLO, Limited
Race Point III CLO, Limited
Race Point IV CLO, Ltd.
Reinsurance Group of America, Inc.
Sankaty High Yield Partners III Grantor Trust
State Street Bank and Trust Company as Trustee of the FCA US LLC Master Retirement Trust
State Teachers Retirement System of Ohio
TCW High Income Partners Ltd.
TCW Senior Secured Loan Fund L.P.
Texas County & District Retirement System
TMCT II, LLC
TMCT, LLC
Transamerica Aegon High Yield Bond VP, a series of Transamerica Series Trust
Variable Insurance Products Fund: High Income Portfolio
Variable Insurance Products Fund: Strategic Income Portfolio
Velocity CLO Ltd.
Vitesse CLO Ltd.
Wells Fargo & Company Master Pension Trust
Wells Fargo Core Plus Bond Fund, a series of Wells Fargo Funds Trust
Wells Fargo High Yield Bond Fund, a series of Wells Fargo Funds Trust
Wells Fargo Income Opportunities Fund
Wells Fargo Multi-Sector Income Fund
Wells Fargo Principal Investments, LLC
Wells Fargo Utilities and High Income Fund
Wespath Benefits and Investments
West Bend Mutual Insurance Company
Western Asset Floating Rate High Income Fund, LLC

Continental Casualty Company

CONFIDENTIAL

<u>Exhibit C</u>

<u>List of Materials Consulted</u>

| Description | Prod No. (if applicable) |
|---|---|
| Memorandum of Opinion, *In re Motors Liquidation Co.*, No. 325, 2014 (Del. Oct. 17, 2014) | |
| Memorandum of Opinion, *In re Motors Liquidation Co.*, No. 13-2187 (2d. Cir. Jan. 21, 2015) | |
| Order, *In re Motors Liquidation Co.*, No. 13-2187 (2d. Cir. Apr. 13, 2015) | |
| First Amended Adversary Complaint, *In re Motors Liquidation Co.*, No. 09-00504 (S.D.N.Y. Bankr. May 20, 2015) | |
| A. Scurria, *2nd Circ. Holds JPMorgan To Faulty Mayer Brown Loan Deal,* Law 360, http://www.law360.com/articles/613544/ print?section=appellate (Jan. 21, 2015) | |
| G. Broady, *2nd Circ. Won't Rehear Simpson Thacher $1.5B GM Loan Gaffe*, Law 360, http://www.law360.com/articles/642874/ print?section=appellate (Apr. 14, 2015) | |
| M. Chiappardi, *Filing Mistake Can End GM Secure Interest, Del. Justices Say*, Law 360, http://www.law360.com/articles/ 588160/print?section=appellate (Oct. 17, 2014) | |
| UCC-1 Financing Statement (Ex. 1 to First Am. Compl.) | |
| UCC-3 Financing Statement (Ex. 2 to First Am. Compl.) | |
| Term Loan Agreement dated November 29, 2006 | |
| Collateral Agreement dated November 29, 2006 | |
| Deposition of Ryan Green, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 27, 2010) | |
| Deposition of Michael Perlowski, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 27, 2010) | |

CONFIDENTIAL

| Description | Prod No. (if applicable) |
|---|---|
| Deposition of Stewart Gonshorek, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 28, 2010) | |
| Deposition of Robert Gordon, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 28, 2010) | |
| Deposition of Mardi Merjian, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Feb. 4, 2010) | |
| Deposition of Ryan Green, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 10, 2017) | |
| Deposition of Stewart Gonshorek, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 11, 2017) | |
| Deposition of Michael Perlowski, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 12, 2017) | |
| Deposition of Robert Gordon, *In re Motors Liquidation Co.*, No. 09-50026 (S.D.N.Y. Bankr. Jan. 12, 2017) | |
| Escrow instructions | MB000024 |
| Email: Perlowski > Bailey | MB000111 |
| Email Perlowski > Green | MB000129 |
| Email Green > Perlowski | MB000291 |
| Email Perlowski > Green, Gonshorek | MB000292 |
| Email Merjian > Green (and others) | MB000348 |
| Emal Green > Merjian and others | MB000350 |
| UCC Compliance Review Results | MB000441 |
| Email CT Lien > Gonshorek | MB000447 |
| UCC Review Request | MB000491 |
| UCC Financing Statement | MB000518 |
| UCC Financing Statement | MB000525 |

CONFIDENTIAL

| Description | Prod No. (if applicable) |
|---|---|
| As-filed version of TL UCC-3 | MB000539 |
| UCC Financing Statement | MB000545 |
| UCC Financing Statement | MB000559 |
| UCC Financing Statement | MB000567 |
| UCC Financing Statement | MB000575 |
| UCC Financing Statement | MB000582 |
| UCC Financing Statement | MB000589 |
| UCC Financing Statement | MB000597 |
| UCC Financing Statement | MB000604 |
| UCC Financing Statement | MB000612 |
| UCC Financing Statement | MB000620 |
| UCC Financing Statement | MB000624 |
| Email Green > Merjian, Duker and others | MB001390 |
| Email Perlowski > Green, Gonshorek | MB002414 |
| Email Gordon > Green | MB002461 |
| Email Green > Merjian and others | MB002563 |
| Email Green > Merjian, Ledyard and others | MB002565 |
| Email Duker > Green, Merjian, others | MB002769 |
| Email Holy (GM) > Duker | MB002792 |
| Email Green > Merjian, and others | MB002877 |

CONFIDENTIAL

| Description | Prod No. (if applicable) |
|---|---|
| Email Holy > Green | MB002932 |
| Email Gonshorek > Green | MB003019 |
| Email Green > Gonshorek | MB003021 |
| Email Duker > Green, GM | MB003163 |
| Email Carlucci > MB Team | MB003210 |
| Email Gonshorek > Kluever | MB003226 |
| Email Gonshorek > UCC Team | MB003388 |
| Email Gonshorek > Kluever | MB003393 |
| Email Gonshorek > Kluever, Carlucci, Green | MB003395 |
| Email Nadolski > Green, Gonshorek | MB003797 |
| Email Merjian > Green | MB003801 |
| UCC Search | MB004084 |
| Email Perlowski > Gonshorek | MB004140 |
| Email Green > Braybrook | MB004228 |
| Email Green > Romick | MB004246 |
| Email Green > Braybrook | MB004273 |
| Email Green > Gonshorek | MB004608 |
| Email Green > Gonshorek | MB004917 |
| Email Merjian > Green, others | MB004969 |
| Email Gonshorek > Merjian | MB005122 |
| Email Green > Perlowski | MB005366 |
| Email Merjian > Proffitt, Green | MB005450 |

CONFIDENTIAL

| Description | Prod No. (if applicable) |
|---|---|
| Email Green > GM | MB005602 |
| Email Green > Merjian | MB005604 |
| Email Sundaram > Duker | MB005622 |
| Email Glenn > Green, Merjian | MB005630 |
| Email Merjian > Green | MB006367 |
| Initial SL checklist | MB008260 |
| Closing Binder prepared by Mayer Brown | MB008279-9165 |
| Email Gordon > Klickmann | MB009176 |
| Email Swanger > Gordon | MB009181 |
| Billing Entry | MB009233 |
| Rest Agency 3d § 1.03 (Manifestation) | |
| Rest Agency 3d § 2.02 (Scope of Actual Auth) | |
| Rest Agency 3d § 3.01 (Creation of Actual Auth) | |

**Deposition Exhibits Reviewed**

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| 1 | Email from Ryan Green to Stewart Gonshorek entitled "GM - 00652500" | MB001110 | MB001110 | 10/7/2009 |
| 2 | Email string between Ryan Green and Michael Perlowski et al re General Motors Corporation/ JPMorgan Delaware Financing Statement Filings | | | 10/7/2008 |

-24-

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| 3 | Email from Michael Perlowski to Ryan Green entitled "Auto Facilities Real Estate Trust 2001-1 / GM--JPMorgan" | MB001023 | MB001103 | 10/9/2008 |
| 4 | Email string between Michael Perlowski to Ryan Green re Auto Facilities Real Estate Trust 2001-1 / GM--JPMorgan | MB001023 | MB001103 | 10/9/2008 |
| 5 | Termination Statement (GM) | MB006384 | MB006384 | 10/30/2008 |
| 6 | GM Mayer Brown Affidavit | JPMCB - 00000076 | JPMCB - 00000111 | 6/19/2009 |
| 7 | Email From Robert Gordon to Ryan Green entitled "Fw: Chase Synthetic Lease" | MB002461 | MB002463 | 10/1/2008 |
| 8 | Email from Ryan Green to Stacey Braybook (Draft of Closing Checklist attached) | MB004228 | MB004234 | 10/6/2008 |
| 9 | Email string between Ryan Green, Stacy Braybrook and Stewart Gonshorek re GM Checklist-Release of Properties from JPM Chase Synthetic Lease | MB005452 | MB005465 | 10/14/2008 |
| 10 | Email from Ryan Green to Arun Sundaram and Tim Conder entitled "GM/JPMorgan Chase Synthetic Lease Releases" | MB005592 | MB005599 | 10/15/2008 |
| 11 | Email from Ryan Green to Arun Sundaram entitled "Re: GM/JPMorgan Chase Synthetic Lease Release" | MB005602 | MB005602 | 10/15/2008 |
| 12 | Email string between Arun Sundaram and Richard Dunker re Auto Facilities Real Estate Trust | JPMCB-STB-00000906 | JPMCB-STB-00000908 | 10/15/2008 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| 13 | Email string between Ryan Green, Mardi Merjian and Glenn Kenton re GM/JPMorgan Chase Synthetic Lease Property Releases (GM Checklist attached) | JPMCB-STB-00000072 | JPMCB-STB-00000077 | 10/15/2008 |
| 14 | Email string between Ryan Green, Mardi Merjian and Michael Ledyard re GM/JPMorgan Chase (documents attached) | JPMCB-STB-00000184 | JPMCB-STB-00000206 | 10/15/2008 |
| 15 | Email string between Ryan Green and Mardi Merjian and Michael Ledyard entitled "GM/JPMorgan Chase-Synthetic Lease" | JPMCB-STB-00000184 | JPMCB-STB-00000272 | 10/15/2008 |
| 16 | Email string between Mardi Merjian and Ryan Green  re Re: GM/JPMorgan Chase - Synthetic Lease | JPMCB-STB-00000366 | JPMCB-STB-00000367 | 10/17/2008 |
| 17 | Email string between Ryan Green and Mardi Merjian et al re Re: GM/JPMorgan Chase Synthetic Lease | MB000005 | MB000018 | 10/21/2008 |
| 18 | Email string between Ryan Green and Jamie Romick re Re: Auto Facilities Real Estate Trust | MB004295 | MB004295 | 10/23/2008 |
| 19 | Email string between Ryan Green and William Wineman et al re Re GM/JPMorgan Chase Synthetic Lease (High Importance) | JPMCB-STB-00000427 | JPMCB-STB-00000437 | 10/24/2008 |
| 20 | Email string between Mardi Merjian and Ryan Green re FW: GM/JPMorgan Chase Synthetic Lease | JPMCB-STB-00000452 | JPMCB-STB-00000454 | 10/27/2008 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| 21 | Email string between Mardi Merjian and Ryan Green et al re Re: Auto Facilities Real Estate Trust | JPMCB-STB-00000885 | JPMCB-STB-00000887 | 10/29/2008 |
| 22 | Draft Escrow Instructions | MB000024 | MB000030 | 10/29/2008 |
| 23 | Email string between William Wineman to Mardi Merjian et al re Re: Auto Facilities Real Estate Trust | JPMCB-STB-00000891 | JPMCB-STB-00000893 | 10/29/2008 |
| 24 | Email from Mary Swanger to Ryan Green entitled "GM Terminations from 2008" | MB000003 | MB000003 | 6/16/2009 |
| 25 | Final status report - UCC filings | MB000443 | MB000446 | 11/4/2008 |
| 26 | Email (with attachments) | JPMCB-STB-00000112 | JPMCB-STB-00000115 | 6/17/2009 |
| 27 | Email from Fem Bornchill to Richard Toder entitled "FW: Affidavit of Bob Gordon" (Affidavit of Bob Gordon attached) | JPMCB-STB-00006319 | JPMCB-STB-00006322 | 6/18/2009 |
| 28 | Email from Fem Bornchill to Andrew Gottfried entitled "GM" | JPMCB-STB-00006334 | JPMCB-STB-00006334 | 6/29/2009 |
| 29 | Email from Mardi Merjian to sprofitt@mayerbrown.com entitled "GM syn lease" | JPMCB-STB-00000001 | JPMCB-STB-00000001 | 10/9/2008 |
| 30 | Email string between Mardi Merjian, Ryan Green et al re JPMorgan/Chase GM Synthetic Lease | JPMCB-00000950 | JPMCB-00000950 | 10/13/2008 |
| 31 | Email string between Mardi Merijian and Richard Duker et al re GM/JPMorgan Chase Synthetic Lease Property | JPMCB-00000919 | JPMCB-00000920 | |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| | Releases (includes checklist) | | | |
| 32 | Email string between Mardi Merjian and Richard Duker et al re GM/JPMorgan Chase Synthetic Lease (with attachments) | JPMCB-00000273 | JPMCB-00000362 | 10/15/2008 |
| 33 | Email string between Mardi Merjian Ryan Green re Re: Chase/GM Closing | JPMCB-00002012 | JPMCB-00002014 | 10/21/2008 |
| 34 | Email string between Ryan Green and William Wineman et al re Re GM/JPMorgan Chase Synthetic Lease (High Importance) | JPMCB-00000427 | JPMCB-00000440 | 10/24/2008 |
| 35 | Email from Richard Duker to jeffrey.holy@gm.com entitled "Fw: GM Payroll" | JPMCB-00002042 | JPMCB-00002043 | 10/24/2008 |
| 36 | Term Loan Agreement | JPMCB-1-00000060 | JPMCB-1-00000126 | 11/29/2006 |
| 37 | Collateral Agreement | JPMCB-CSM-0000112 | JPMCB-CSM-0000158 | 11/29/2006 |
| 38 | UCC Financing Statement filed in connection with Term Loan | MB005358 | MB005362 | 11/30/2006 |
| 39 | Initial Closing of $325,000,000 Synthetic Lease Financing; Participation Agreement | JPMCB-STB-0000896 | JPMCB-STB-0001033 | 1/6/2003; 10/31/2001 |
| 40 | Email string between Richard Duker and Mary Gherty et al. re Auto Facilities Real Estate Trust | JPMCB-00000231 | JPMCB-00000232 | 10/1/2008 |
| 41 | Email string between Richard Duker and Scott Quigley et al. re | JPMCB-00000944 | JPMCB-00000945 | 10/10/2008 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| | GM Term Loan Question | | | |
| 42 | Email string between Richard Duker and Mardi Merjian et al. re Auto Facilities Real Estate Trust | JPMCB-STB-0000363 | JPMCB-STB-0000365 | 10/17/2008 |
| 43 | Email string between Richard Duker and Arun Sundaram et al. re General Motors  Real Estate Trust 2001 | JPMCB-00001643 | JPMCB-00001645 | 10/27/2008 |
| 44 | Email string between Richard Duker and Carey Fear et al. re General Motors  Real Estate Trust 2001 | JPMCB-00001092 | JPMCB-00001098 | 10/28/2008 |
| 45 | Email string between Richard Duker and Arun Sundaram et al. re GM/JPMorgan Chase - Synthetic Lease Maturity | JPMCB-00001230 | JPMCB-00001232 | 10/29/2008 |
| 46 | Email string between Richard Duker and David Walker et al. re GM Synthetic Lease | JPMCB-00001803 | JPMCB-00001803 | 10/30/2008 |
| 47 | Email from Robert Scheibe to Julie Engell et al. re JPM/GM Fee Letter | JPMCB-MLB-0000490 | JPMCB-MLB-0000494 | 2/13/2009 |
| 48 | Screen shot entitled "Incoming Money Transfer Detail" depicting wire transfer in March 2009 | JPMCB-1-00000001 | JPMCB-1-00000001 | 3/4/2009 |
| 49 | Email string between Richard Duker and Elizabeth Rarich et al. re GM Term Loan | JPMCB-00000217 | JPMCB-00000218 | 5/10/2009 |
| 50 | Screen shot entitled "Incoming Money Transfer Detail" depicting wire transfer in May | JPMCB-1-00000002 | JPMCB-1-00000002 | 5/27/2009 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| | 2009 | | | |
| 51 | Spreadsheet entitled "5/27/09 General Motors Interim Interest Payment" | JPMCB-1-00000017 | JPMCB-1-00000026 | 5/27/2009 |
| 52 | Email string between Richard Duker and Ann Kurinskas et al. re GM TLB: Q1-09 Collateral Certificate & Report | JPMCB-1-00000174 | JPMCB-1-00000178 | 6/3/2009 |
| 53 | Email from Richard Duker to TCP_Corporates@jpmchase.com entitled "GM" | JPMCB-00000075 | JPMCB-00000075 | 6/22/2009 |
| 54 | Email from Richard Duker to Elizabeth Rarich entitled "General Motors: urgent" | JPMCB-00000069 | JPMCB-00000069 | 6/22/2009 |
| 55 | Letter from Richard Duker to General Motors Corporation entitled (no title) re amounts outstanding under the Term Loan Agreement | JPMCB-1-00000287 | JPMCB-1-00000289 | 6/30/2009 |
| 56 | Email string between Justin Forlenza and Z. Sorman et al. re UCC Terminations | JPMCB-MLB-0002387 | JPMCB-MLB-0002388 | 6/30/2009 |
| 57 | Spreadsheet untitled depicting parties who were lenders under the term loan as of the date the term loan was paid off | JPMCB-1-00000027 | JPMCB-1-00000031 | |
| TL_100 | Bill and Payment chart | MB009233 | MB009243 | N/A |
| TL_101 | Deposition of Ryan Green dated Jan 27, 2010 | n/a | n/a | 1/27/2010 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| TL_102 | email From: Michael Perlowski To: Ryan Green | MB002414 | MB00220 | 10/9/2008 |
| TL_103 | Email From: Michael Perlowski To: Ryan Green | MB002414 | MB002420 | 10/9/2008 |
| TL_104 | email From: Ryan Green To: Stewart Gonshorek | MB003021 | MB003022 | 10/21/2008 |
| TL_105 | Email From Ryan Green To: Mardi Merjian | MB001390 | MB00436 | 10/27/2008 |
| TL_106 | Deposition of Stewart Gonshorek dated Jan 28, 2010 | n/a | n/a | 1/28/2010 |
| TL_107 | Deposition of Ryan Green dated Jan 27, 2010 | n/a | n/a | 1/27/2010 |
| TL_108 | Deposition of Robert Gordon dated Jan. 28, 2010 | n/a | n/a | 1/28/2010 |
| TL_109 | Email From: Ryan Green To: Stacy Braybrook | MB009435 | MB009436 | 10/6/2008 |
| TL_110 | Email From: Catherine Loh To: Scott Forchheimer | WEILJPMGM00864147 | WEILJPMGM00864155 | 1/31/2007 |
| JPM_MB_001 | Email from Perlowski to Gonshorek re General Motors Corp / JPM Delaware Financ. Statement | MB009437 | MB009636 | 10/7/2008 |
| JPM_MB_002 | Email from Perlowski to Green re Auto Facilities Real Estate Trust 2001-1/GM Corp etc. | MB001023 | MB001103 | 10/9/2008 |
| JPM_MB_003 | Email from Green to Holy re GM end of Term Purchase | MB009655 | MB009658 | 10/24/2008 |
| JPM_MB_004 | Email from Gonshorek to Conder re GM-2000 Synthetic Lease Unwinding | MB006380 | MB006380 | 2/11/2009 |

CONFIDENTIAL

| Exhibit No. | Description | Beg Prod No. | End Prod No. | Date of Doc |
|---|---|---|---|---|
| JPM_MB _005 | Email from Perlowski to Gonshorek re General Motors Corp - 00652500 | MB009347 | MB009364 | 10/8/2008 |