**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,



                                                        Debtors.
------------------------------------------------------------------------x
MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                              Plaintiff,

                     against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                              Defendants.
------------------------------------------------------------------------x

|  |
|---|
| Chapter 11 |
| Case No. 09-50026 (MG) (Jointly Administered) |
| Adversary Proceeding |
| Case No. 09-00504 (MG) |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN ASSETS**
**LOCATED IN THE SHREVEPORT PLANT**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................................ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.      Louisiana's Commercial Code Does Not Permit The Creation Of A Security Interest In
           Goods That Already Have Become Fixtures ........................................................................ 2

    II.     This Proceeding Is Not Limited To "What Is A 'Fixture'?" ............................................... 3

    III.    Under Louisiana Law, Fixtures Are Treated As Real Property ......................................... 7

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes and Rules**

Fed. R. Bankr. P. 7056 .............................................................................................. 1

Fed. R. Civ. P. 56 ..................................................................................................... 1

LA. REV. STAT. ANN. § 10:9-102 ............................................................................ 8

LA. REV. STAT. ANN. § 10:9-109 ............................................................................ 9

LA. REV. STAT. ANN. § 10:9-334 ..................................................................... passim

Local Bankruptcy Rule 7056-1 .............................................................................. 1

**Other Authorities**

2 La. Civ. L. Treatise, Property § 2:21 (5th ed. 2018) .............................................. 8

James A. Stuckey, *Louisiana's Non-Uniform Variations in U.C.C. Chapter 9*,
    62 La. L. Rev. 795 (2002) ................................................................................. 7, 8

Plaintiff Motors Liquidation Company Avoidance Action Trust (the "**Avoidance Action Trust**") respectfully submits this reply memorandum of law in further support of its motion for partial summary judgment ("**AAT Shreveport Motion**") pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 7056-1 of the Local Bankruptcy Rules.

## PRELIMINARY STATEMENT

Under the terms of the Collateral Agreement and Louisiana state law, no security interest was or could have been created in any of the assets incorporated as fixtures into the Shreveport Plant as of the date of the Collateral Agreement.  This is not in dispute.  Defendants agree that Louisiana law governs whether and how a security interest can be created in the Shreveport Plant assets; Defendants agree that under Louisiana law a security interest cannot be created in goods once those goods have become fixtures; and Defendants agree that under Louisiana law a party cannot create a UCC lien in assets after they have become fixtures.  In short, Defendants concede that under Louisiana's UCC statute Old GM could not have granted a security interest in any of the assets at the Shreveport Plant that were already fixtures as of the date of the Collateral Agreement.  That concession is dispositive.

Defendants nevertheless contend that they have a security interest in the assets *anyway*, not because the law permits it—Defendants acknowledge that it does not—but because, in Defendants' view, their asserted security interest, however baseless or contrary to law, is unchallengeable in this proceeding.

The Term Lenders are incorrect.  Nothing gives the Term Lenders license to assert a security interest that plainly was not and could not have been granted under Louisiana law, and the Avoidance Action Trust's challenge to the Term Lenders' assertion of such an interest is

1

properly raised in this adversary proceeding.  As explained in the Avoidance Action Trust's

Memorandum of Law in Opposition to Term Lenders' Motion for Partial Summary Judgment

Regarding Fixtures at Shreveport Assembly ("**AAT Opposition**"), the purpose of this adversary

proceeding is to determine the extent and value of the surviving security interest granted by the

Collateral Agreement.  Consistent with issues and disputes already resolved by the Court in this

adversary proceeding, the AAT Shreveport Motion seeks a determination that Defendants'

security interest does not include any fixtures that existed at the Shreveport Plant as of the date

of the Collateral Agreement.  Such a determination requires only that the Collateral Agreement

be construed under applicable state law and is fully within the scope of this proceeding.

## ARGUMENT

The AAT Shreveport Motion should be granted because there is no genuine issue as to

any material fact and no dispute that, as a matter of law, no security interest was created in the

7,801 assets (the "**Shreveport Real Property Assets**") identified in the eFAST list submitted

with the AAT Shreveport Motion.  Accordingly, those assets are not part of the Term Lenders'

collateral.

I.      **Louisiana's Commercial Code Does Not Permit The Creation Of A Security Interest**
        **In Goods That Already Have Become Fixtures**

The scope of Defendants' interest in the assets at the Shreveport Plant must be interpreted

pursuant to Louisiana law and Louisiana's Commercial Code.  *See* Fisher Decl. Ex. B at Art. I,

§ 1.01(b) (Collateral Agreement definition of "UCC" provides that the relevant Uniform

Commercial Code is the one in effect in the jurisdiction where the Collateral is located for

purposes of the Collateral Agreement's provisions relating to attachment, perfection, or priority

and for purposes of definitions related to such provisions).  As Defendants acknowledge, under

Louisiana law no valid UCC security interest could be created in fixtures that were already

installed in the Shreveport Plant as of the date of the Collateral Agreement. In their opposition

("**TL Shreveport Opp.**"), Adv. Pro. Dkt. No. 1101, Defendants expressly concede the

following:

1) Louisiana law governs "whether and how a security interest in [an] asset can be
created." TL Shreveport Opp. at 5.

2) LA. REV. STAT. ANN. § 10:9-334(a) provides that a "security interest under this
Chapter may not be created or perfected in goods after they become fixtures." *Id.*

3) Louisiana law thus "disables a party from creating a valid UCC lien in fixtures after
they have been installed." *Id.* at 6.

Thus, by Defendants' own account, LA. REV. STAT. ANN. § 10:9-334(a) "disabled" Old

GM from creating a valid UCC lien in the Shreveport Real Property Assets. *Id.* In other words,

under Louisiana law and the terms of the Collateral Agreement, the Shreveport Real Property

Assets were not and could not have been included in the Collateral Agreement's grant of security

interest. *See* LA. REV. STAT. ANN. § 10:9-334(a); Fisher Decl. Ex. B at Art. II (the Collateral

Agreement "shall not constitute a grant of a security interest in any asset or property to the extent

that . . . such grant of a security interest is prohibited by any Requirement of Law of a

Governmental Authority. . . ."). Defendants have offered no argument to the contrary, nor have

Defendants made any showing that the Shreveport Real Property Assets were otherwise within

the grant of collateral under the Term Loan. Accordingly, the AAT Shreveport Motion should

be granted.

**II.    This Proceeding Is Not Limited To "What Is A 'Fixture'?"**

The TL Shreveport Opposition rests on the flawed premise that the Collateral Agreement

granted a lien on all assets at the Shreveport Plant that satisfy the definition of a fixture under

Louisiana law. *TL Shreveport Opp.* at 3-4. To read the Collateral Agreement in such a

simplistic manner would ignore key terms of the agreement and controlling provisions of

relevant law. As noted above, the Collateral Agreement provides on its face that the UCC in

effect in the relevant jurisdiction—here, Louisiana—governs the issue of the attachment of a

security interest. *See* Fisher Decl. Ex. B at Art. I, § 1.01(b) (defining "UCC").[1] Thus, as

Defendants acknowledge, it is Louisiana's UCC that governs "whether and how a security

interest in [an] asset can be created." *TL Shreveport Opp.* at 5. Further, the Collateral

Agreement expressly subjects the grant of security interest to the limitations of governing law.

*See* Fisher Decl. Ex. B at Art. II (excluding grants of security interest prohibited by law).

Because Louisiana law controls and because, as Defendants concede, Louisiana law "disables a

party from creating a valid UCC lien in fixtures after they have been installed," the Collateral

Agreement could not and did not create any security interest in the Shreveport Real Property

Assets. *See TL Shreveport Opp.* at 6; LA. REV. STAT. ANN. § 10:9-334(a).

  Defendants attempt to avoid the implications of section 10:9-334(a) by arguing that the

statute "does not govern whether something is a 'fixture'" and "does not inform the question of

---

[1] In the first sentence of the preliminary statement of their opposition brief, the Term Lenders
claim that the Avoidance Action Trust "does not dispute that, on its face, the Collateral
Agreement granted to JPMorgan, as agent for the Term Lenders, a lien on all fixtures located at
Shreveport Assembly, regardless of their date of installation." *TL Shreveport Opp.* at 1. The
assertion is wrong, and the Avoidance Action Trust has conceded no such thing. On its face, the
Collateral Agreement provides for a grant of security that is subject to express restrictions,
including restrictions based on the terms of relevant state law. *See* Fisher Decl. Ex. B at Art. II;
*see also* Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment on
Certain Assets Located in the Shreveport Plant ("**AAT Shreveport Mem.**") at 8, Adv. Pro. Dkt.
No. 1090; Memorandum of Law in Opposition to Term Lenders' Motion for Partial Summary
Judgment Regarding Fixtures at Shreveport Assembly ("**AAT Opposition**") at 21-22, Adv. Pro.
Dkt. No. 1104.

whether the 'good' is a 'fixture'" under Louisiana law.  TL Shreveport Opp. at 5.  The remark is

a non-sequitur, because the relevant question on this motion is not whether a good is a fixture,

but whether a security interest was created in favor of Defendants.  Defendants' only response is

that this question is not properly before the Court and that the Avoidance Action Trust is time-

barred from challenging the scope of the Term Lenders' security interest under the Collateral

Agreement, the same argument made in the Term Lenders' Memorandum of Law in Support of

Term Lenders' Motion for Partial Summary Judgment Regarding Fixtures at Shreveport

Assembly, Adv. Pro. Dkt. No. 1082.  *See* TL Shreveport Opp. at 1-2, 8-9.

Defendants are incorrect, and in the AAT Opposition, the Avoidance Action Trust has

addressed the deficiencies of Defendants' argument in detail.  Briefly, as discussed in the AAT

Opposition, determining the scope of the Term Lenders' security interest under the terms of the

Collateral Agreement has been central to this adversary proceeding all along.  AAT Opposition

at 7-16, 18-20.  Accordingly, determining the scope of the Term Lenders' security interest in the

assets at the Shreveport Plant is a proper subject for this Court in this adversary proceeding.

Indeed, the Court's prior decisions in this proceeding demonstrate that assessing whether an asset

is or is not a fixture is only one aspect of this Court's broader inquiry into the scope of the Term

Loan collateral.

For example, as part of the Representative Assets Trial, the Court resolved a dispute as to

the scope of the security interest granted in the Central Utilities Complex (the "**CUC**").  Op. at

139-42.  Before reaching the question of whether the CUC assets were fixtures under Michigan

law, the Court had to determine first whether the CUC was excluded outright from the grant of

collateral and whether Old GM could assign residual rights in the CUC.  *See id.* at 139-40.  The

classification of the CUC assets as fixtures or non-fixtures was necessarily secondary to the

5

threshold question of whether the assets—fixtures or otherwise—fell within the grant of security at all.

Similarly, in determining whether the security interest granted by the Collateral Agreement included fixtures at the Powertrain Engineering Pontiac ("**PTE Pontiac**") facility, the Court did not confine itself to the fixture/non-fixture distinction and in fact did not look to whether the assets located at the facility met the definition of "fixtures" at all. *See id*. at 87-89. Instead, the Court relied on the granting language of the Collateral Agreement to conclude that whatever fixtures may have existed at PTE Pontiac, they were nevertheless *not* subject to the Term Lenders' security interest. Op. at 89.

Here, the issue is not whether the Shreveport Real Property Assets are called "fixtures" or meet the definition of "fixtures" under Louisiana law, but whether the Shreveport Real Property Assets were included in the grant of security interest under the Collateral Agreement and Louisiana state law. Defendants seek to avoid this issue by urging the Court to confine its analysis to what is and is not a fixture at the Shreveport Plant, but the Court should decline Defendants' invitation to adopt such a blinkered approach. Defendants do not dispute that the Louisiana Commercial Code restricts the extent to which Old GM could create a security interest in the Shreveport Plant assets. Indeed, Defendants concede that under the Louisiana Commercial Code, Old GM could not have created a security interest in any of the Shreveport Plant assets after they became fixtures, *i.e.*, component parts of realty. *See* TL Shreveport Opp. at 5-6; LA. REV. STAT. ANN. § 10:9-334 (a). Nothing in the law and nothing in the prior course of this

adversary proceeding requires the Court to turn a blind eye to the limitations imposed by the

Collateral Agreement and by Louisiana law on the scope of the Term Loan collateral.[2]

### III.    Under Louisiana Law, Fixtures Are Treated As Real Property

Defendants argue that Louisiana, like other states, recognizes the existence of fixtures,

and that Louisiana's conception of a "fixture" is "consistent with fixture law generally." TL

Shreveport Opp. at 6-7.[3]  However, the idiosyncrasies of the Louisiana Civil Code cannot be so

lightly shrugged aside, for Louisiana's treatment of fixtures is in fact "fundamentally different"

from that of the Model U.C.C.  *See* James A. Stuckey, *Louisiana's Non-Uniform Variations in*

*U.C.C. Chapter 9*, 62 La. L. Rev. 795, 829-30 (2002) ("Chapter 9 is significantly non-uniform in

the provisions pertaining to fixtures."); *see also* AAT Shreveport Mem. at 8-10.

One key difference is that Louisiana's Chapter 9, unlike the Model U.C.C., draws a

bright line between what is a good and what is a fixture for the purposes of creating a security

interest, based on when a "movable" becomes an "immovable."  On the one hand, if a security

interest is created and perfected under Chapter 9 while a good is a movable, that good will

continue to be treated as a movable even after it has been attached to an immovable. LA. REV.

---

[2] The fixture inquiry advocated by Defendants—focusing on how an asset is attached, how much damage its removal would cause, and the like—will be necessary with respect to those assets that were annexed to the Shreveport Plant *after* the grant of collateral.  *See* TL Shreveport Opp. at 4. To avoid any potential misunderstanding, the Avoidance Action Trust did not and does not concede that a "lien" on such assets is "not subject to challenge on the basis of Section 9-334(a) of the Louisiana UCC." *Id*. at 2 n.1.  Whether such assets are fixtures—as opposed to personal property or ordinary building materials—may be the subject of future mediation or litigation between the parties, but it is not a question addressed by the AAT Shreveport Motion.  Indeed, no fixture analysis is needed with respect to the Shreveport Real Property Assets, as to which no security interest ever attached.

[3] Contrary to the Defendants' suggestion, the Avoidance Action Trust has never argued that fixtures do not exist under Louisiana law or that Louisiana has "discarded the concept of fixtures annexed to the realty altogether." TL Shreveport Opp. at 8.

STAT. ANN. § 10:9-334(a).  By contrast, once goods have become fixtures, they are no longer

recognized as goods at all, for under Louisiana's Chapter 9, the term "goods" includes "fixtures"

only to the extent that the fixtures were "movable when a fixture filing covering them was

made."  LA. REV. STAT. ANN. § 10:9-102(a)(44).

The result is that fixtures do not "retain their personal property nature" under Louisiana

law, but are instead regarded as real property.  *See* James A. Stuckey, *Louisiana's Non-Uniform*

*Variations in U.C.C. Chapter 9*, 62 La. L. Rev. 795, 829 (2002) (describing this as the "critical

distinction" between UCC Article 9 and Louisiana's Chapter 9).  Defendants nevertheless insist

that fixtures cannot be realty under Louisiana law because Louisiana recognizes that component

parts may be either "separable" or "inseparable."  TL Shreveport Opp. at 7.  The conceptual

distinction between "separable" and "inseparable" component parts—terms not defined under the

Louisiana Civil Code—is beside the point, and the passage relied upon by Defendants does not

in any event indicate whether fixtures, as a class of component part, are "separable" or

"inseparable," or under what circumstances.  2 La. Civ. L. Treatise, Property § 2:21 (5th ed.

2018).  The authority relied upon by Defendants does, however, have something of fundamental

relevance to say here, something that Defendants chose not to quote:  The "*component parts of*

*an immovable are immovables*."  *Id*. (emphasis added).  Translated from the nomenclature of

Louisiana law, this means, simply, "fixtures are realty."  *See* LA. REV. STAT. ANN. § 10:9-

102(a)(41) (defining "fixture" as a "component part" of an "immovable"); LA. REV. STAT. ANN.

§ 10:9-102(d)(16) (defining "real property" as "immovable property").

Because already-attached fixtures are real property under Louisiana law, the creation of a

security interest in such a fixture falls outside the scope of Chapter 9; a security interest in such a

fixture can only be created by a mortgage over the whole of the real property.  *See* LA. REV.

STAT. ANN. § 10:9-109(d)(11); AAT Shreveport Mem. at 8-14.  This peculiar feature of Louisiana law has special significance here, for there is no dispute that the Collateral Agreement did not convey any interest in real property, and neither the Term Loan Agreement nor the Collateral Agreement create a mortgage in the real property at the Shreveport Plant. Accordingly, the Collateral Agreement could not and did not grant a security interest in any Shreveport Plant assets that were already fixtures at the time of the grant.

## CONCLUSION

For the foregoing reasons, the Avoidance Action Trust respectfully requests that the Court enter partial summary judgment in favor of the Avoidance Action Trust: (i) excluding the 7,801 assets identified in the eFAST list submitted with the AAT Shreveport Motion from the assets that are part of the Term Lenders' collateral; and (ii) granting such other and further relief as the Court deems necessary.


Dated:  October 26, 2018
        New York, New York

                          Respectfully submitted,


                          **BINDER & SCHWARTZ LLP**


                           /s/ Eric B. Fisher
                          Eric B. Fisher
                          Neil S. Binder
                          Lindsay A. Bush
                          Lauren K. Handelsman
                          366 Madison Avenue, 6th Floor
                          New York, New York 10017
                          Tel: (212) 510-7008
                          Facsimile: (212) 510-7299

                          *Attorneys for the Motors Liquidation*
                          *Company Avoidance Action Trust*


9