**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                        Debtors.
------------------------------------------------------------------------x
MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                        Plaintiff,

                against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                        Defendants.
------------------------------------------------------------------------x

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

Adversary Proceeding

Case No. 09-00504 (MG)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING THE NON-**
**JPMORGAN TERM LENDERS' EFFECTIVENESS DEFENSE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.  JPMORGAN'S TERMINATION OF THE MAIN LIEN IS EFFECTIVE AS TO EVERYONE BECAUSE JPMORGAN WAS THE SECURED PARTY OF RECORD .................................................................................................................. 3

II. JPMORGAN ONLY HAD TO AUTHORIZE THE ACT OF FILING THE TERMINATION STATEMENT, NOT THE CONSEQUENCES ................................ 4

   A. The Non-JPMorgan Term Lenders Misconstrue the Second Circuit's Opinion ..... 5

   B. The Undisputed Facts Establish that JPMorgan Authorized the Filing of the 2008 Termination Statement .................................................................................... 7

III. THE NON-JPMORGAN TERM LENDERS HAVE FAILED TO COME FORWARD WITH ANY NEW EVIDENCE THAT WOULD ALTER THE OUTCOME OF THE SECOND CIRCUIT'S DECISION .................................................................. 9

   A. There Is No Evidence that Mayer Brown Knew that the 2008 Termination Statement Related to the Term Loan ....................................................................... 9

   B. The Purported "Red Flags" Are Also Irrelevant Because Mayer Brown Does Not Have an Obligation to Ensure that JPMorgan Subjectively Intended or Understood the Effect of its Own Filing ................................................................. 12

   C. The Proffered Expert Reports Are Legally Irrelevant and Do Not Provide Admissible Opinions ................................................................................................ 13

CONCLUSION .................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Borgognone v. Trump Plaza*,
  No. 98-CV-6139 (ILG), 2000 WL 341135 (E.D.N.Y. Mar. 9, 2000) ................................. 14

*Davis v. Carroll*, 937 F. Supp. 2d 390 (S.D.N.Y. 2013) ............................................................. 15

*Hayes v. Douglas Dynamics, Inc.*,
  8 F.3d 88 (1st Cir. 1993) .......................................................................................................... 13

*In re Chrysler LLC*,
  405 B.R. 84 (Bankr. S.D.N.Y. 2009) ........................................................................................ 4

*In re Enron Corp.*,
  No. 04 Civ. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) ................................... 4

*In re M/V MSC Flaminia*,
  12-cv-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017) ................................... 14, 15

*In re Metaldyne Corp.*,
  409 B.R. 671 (Bankr. S.D.N.Y. 2009) ...................................................................................... 4

*Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp., N.V.*,
  14 F. Supp. 2d 391 (S.D.N.Y. 1998) ...................................................................................... 14

*LiButti v. United States*,
  107 F.3d 110 (2d Cir. 1997) .................................................................................................... 11

*Marx & Co. v. Diners' Club Inc.*,
  550 F.2d 505 (2d Cir. 1977) .................................................................................................... 14

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*,
  552 B.R. 253 (Bankr. S.D.N.Y. 2016) ..................................................................................... 3

*Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*,
  861 F.3d 644 (7th Cir. 2017) .................................................................................................. 12

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank N.A. (In re Motors Liquidation Co.)*,
  755 F.3d 78 (2d Cir. 2014) ....................................................................................................... 5

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A*,
  103 A.3d 1010 (Del. 2014) ....................................................................................................... 6

*Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*,
   777. F.3d 100 (2d Cir. 2015) ............................................................................................... passim

*Pretesting Co. v. Arbitron Co.*,
   No. 93 CIV. 6031 (CBM), 1996 WL 480899 (S.D.N.Y Aug. 23, 1996) .............................. 13

*Seippel v. Jenkens & Gilchrist, P.C.*,
   341 F. Supp. 2d 363 (S.D.N.Y. 2004) .................................................................................. 12

*Snyder v. Wells Fargo Bank, N.A.*,
   594 Fed. App'x 710 (2d Cir. 2014) ....................................................................................... 15

*Stadt v. Fox News Network LLC*,
   719 F. Supp. 2d 312 (S.D.N.Y. 2010) .................................................................................. 12

*Summit Props. Int'l., LLC v. Ladies Prof'l Golf Ass'n*,
   No. 07 Civ. 10407(LBS), 2010 WL 2382405 (S.D.N.Y. 2010) ........................................... 12

**RULES**

Fed. R. Evid. 702 .............................................................................................................. 2, 14

Plaintiff respectfully submits this reply memorandum of law in further support of its motion for partial summary judgment dismissing the effectiveness defense.[1]

## PRELIMINARY STATEMENT

Because the Non-JPMorgan Term Lenders were not parties before the Second Circuit, this Court permitted them to seek out new facts and theories and make their arguments in this case, which they have now had an opportunity to do. However, in permitting the Non-JPMorgan Term Lenders to go forward through discovery, this Court recognized that, although they were not bound as parties to the appeal, they nonetheless "may be bound under the terms of the loan and collateral agreements by actions of JPMC with respect to the collateral . . . ."

As set out below, the Non-JPMorgan Term Lenders are bound by the acts of JPMorgan. JPMorgan was the party authorized to act with respect to the Term Loan collateral, a power the Non-JPMorgan Term Lenders granted to it in the Collateral and Term Loan Agreements. The Second Circuit has conclusively determined that JPMorgan's termination of the UCC-1 for the Main Lien was effective, and thus it was terminated as to everyone. No new facts or arguments will change that reality.

However, even were it possible to challenge anew the effectiveness of the Termination Statement, the Non-JPMorgan Term Lenders put forth no facts or arguments that would lead to a different outcome. Rather, in their opposition, the Non-JPMorgan Term Lenders speculate about what Mayer Brown, counsel for Old GM, knew or should have known about the consequences of its actions at the time that it followed JPMorgan's instructions to file the Termination Statement. This diversion does not provide a basis to deny Plaintiff's motion for summary judgment on the

---

[1] Capitalized terms not otherwise defined have the meaning set forth in Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment Dismissing the Non-JPMorgan Term Lenders' Effectiveness Defense (Adv. Pro. Dkt. No. 1086).

effectiveness defense. What Mayer Brown knew or should have known about the consequences of the filing is irrelevant. The Second Circuit and the Delaware Supreme Court have both ruled that, when it comes to the issue of authorization under the Delaware UCC, what matters is whether a particular act was authorized. Knowledge of the consequences of that act, whether actual or constructive, is legally irrelevant.

And even as to the irrelevant issue of Mayer Brown's knowledge of the consequences that would flow from the filing of the Termination Statement, there are no new facts. All of the facts relied on by the Non-JPMorgan Term Lenders are found in the 2010 deposition transcripts of Mayer Brown witnesses that were part of the record before the Second Circuit, and the parties specifically cited that testimony in their briefs on appeal. The Non-JPMorgan Term Lenders' arguments about purported "red flags" that they assert Mayer Brown should have (but didn't) notice are also misplaced. Mayer Brown—a law firm that was on the other side of the transaction from JPMorgan—had no duty to question the instruction from JPMorgan's counsel that Mayer Brown release the Termination Statement for filing. As the Seventh Circuit has held, Mayer Brown did not owe a duty to the Non-JPMorgan Term Lenders in connection with this mistaken filing.

Finally, the Non-JPMorgan Term Lenders' effort to bolster their irrelevant arguments about Mayer Brown's knowledge with proffered expert reports from two lawyers is futile because the topic as to which they opine is legally irrelevant and speculative. In any event, for reasons explained below, the proffered expert reports should not be considered for the independent reason that they are inadmissible under Fed. R. Evid. 702.

**ARGUMENT**

I. **JPMORGAN'S TERMINATION OF THE MAIN LIEN IS EFFECTIVE AS TO EVERYONE BECAUSE JPMORGAN WAS THE SECURED PARTY OF RECORD**

In its prior ruling, this Court explained that although JPMorgan could not act for (and bind) unserved defendants in this litigation, the Non-JPMorgan Term Lenders nonetheless "may be bound under the terms of the loan and collateral agreements by actions of JPMC with respect to the collateral . . . ." *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 552 B.R. 253, 275 (Bankr. S.D.N.Y. 2016). That is exactly what has happened here. Under the terms of the Term Loan and Collateral Agreement, the Non-JPMorgan Term Lenders gave JPMorgan sole power to act with respect to the Collateral. This fact is not in dispute. *See* Term Lenders' Counter-Statement of Material Facts, Adv. Pro. Dkt. No. 1098 ("**CSMF**") ¶¶ 5-9.

JPMorgan acted with respect to the Term Loan collateral when it terminated the Main Lien, and the Second Circuit conclusively held that such act was legally effective. The Second Circuit held that JPMorgan, as the only secured party of record with respect to the Term Loan, authorized the filing of the 2008 Termination Statement and thus terminated the perfected security interest with respect to the Main Lien. JPMorgan's action has been conclusively adjudicated and cannot be undone. On this basis alone, Plaintiff's motion for summary judgment should be granted.

In addition, the Non-JPMorgan Term Lenders appointed JPMorgan to act as the secured party of record for the Term Loan, and each Term Lender "irrevocably authorize[d]" JPMorgan "to take such action on its behalf." Fisher Decl. Ex. U (Term Loan Agreement § 8.01); *see also id.* Ex. T (Collateral Agreement § 6.02). Having conferred such authority on JPMorgan, the Non-JPMorgan Term Lenders are bound by JPMorgan's actions. *See, e.g.*, *In re Chrysler LLC*,

3

405 B.R. 84, 102-03 (Bankr. S.D.N.Y. 2009) (lender bound by administrative agent's consent to sale of lender's collateral); *In re Metaldyne Corp.*, 409 B.R. 671, 678-79 (Bankr. S.D.N.Y. 2009) (JPMorgan, as lenders' agent, had power to release lien on behalf of lenders); *Bank of Tokyo-Mitsubishi Ltd. v. Enron Corp. (In re Enron Corp.)*, No. 04 Civ. 1367 (NRB), 2005 WL 356985, at *6 (S.D.N.Y. Feb. 15, 2005) (affirming bankruptcy court's decision that lenders lacked standing to bring adversary proceeding relating to collateral where lenders granted collateral agent all rights with respect to the collateral).

**II.    JPMORGAN ONLY HAD TO AUTHORIZE THE ACT OF FILING THE TERMINATION STATEMENT, NOT THE CONSEQUENCES**

Even if it were possible under the UCC for the 2008 Termination Statement to be effective as to JPMorgan, but not others (which is not the case), the Non-JPMorgan Term Lenders' argument that because "the Second Circuit assumed that Mayer Brown acted wholly ignorantly, the Term Lenders are not bound by that assumption" (TL Opp. at 25) misses the mark. The Second Circuit clearly held that "JPMorgan reviewed and assented to the filing" of the 2008 Termination Statement and that "[n]othing more is needed." *Official Comm. of Unsecured Creditors or Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 777. F.3d 100, 105 (2d Cir. 2015). The Non-JPMorgan Term Lenders mischaracterize the Second Circuit's opinion and the factual record to argue that the filing of the Termination Statement was not legally effective because Mayer Brown knew or should have known what the consequences of the filing would be. Their focus on the consequences of the filing, rather than the act of filing itself, requires the adoption of a legal standard explicitly rejected by the Delaware Supreme Court and the Second Circuit, and ignores the factual record.

4

### A.  The Non-JPMorgan Term Lenders Misconstrue the Second Circuit's Opinion

The Non-JPMorgan Term Lenders misstate what they characterize as the "controlling legal test" for authorization that was set forth by the Second Circuit in this case. According to them, "[t]he Second Circuit's test for authorization is straightforward: if Mayer Brown did not believe or could not reasonably have believed that the Main Term Loan UCC-1 related to the Synthetic Lease, then it was not authorized to file it, and the Termination Statement is legally ineffective." TL Opp. at 25.[2] There is no such test to be found in the Second Circuit's decision.

To the contrary, the Second Circuit specifically rejected this "legal test" and held that framing the authorization issue in this way (as JPMorgan had done on appeal), "conflate[s] the two questions" and "obscures the issue":

> JPMorgan's argument that the UCC-3 filing was unauthorized because Mayer Brown did not believe it was authorized to terminate the Main Term Loan UCC-1, Appellee Br. 36-38, is unpersuasive unless one assumes that a lender must authorize termination of a particular security interest and not simply the UCC-3 filing itself.

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank N.A. (In re Motors Liquidation Co.)*, 755 F.3d 78, 84 (2d Cir. 2014). Thus, the Non-JPMorgan Term Lenders' assertion that "[t]he Second Circuit did not consider—and was not asked to consider—the evidence that Mayer Brown knew or should have known it was terminating the wrong UCC-1," TL Opp. at 2, is incorrect. The Second Circuit *did* confront this precise question. Arguments based on Mayer Brown's belief that it was not authorized to terminate the

---

[2] The Non-JPMorgan Term Lenders misstate the test applied by the Second Circuit throughout their opposition. TL Opp. at 11 (the Second Circuit held that authorization "requires an examination of Mayer Brown's understanding of JPMorgan's acts in light of Mayer Brown's understanding of the facts and JPMorgan's goals and objectives; if Mayer Brown knew or should have known that JPMorgan was making a mistake, the Termination Statement is ineffective."); *id.* at 18 ("[u]nder the legal standard set forth by the Second Circuit, the termination statement is legally ineffective if Mayer Brown knew or should have known that JPMorgan was making a mistake by directing Mayer Brown to file it.").

5

Main Lien were "unpersuasive" because authorization under the UCC does not turn on whether "termination of a particular security interest" is authorized; rather, as the Delaware Supreme Court ruled, authorization turns on whether the secured party authorized "simply the UCC filing itself." *Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A*, 103 A.3d 1010, 1017-18 (Del. 2014) ("The Delaware UCC contains no requirement that a secured party that authorizes a filing subjectively intends or otherwise understands the effect of the plain terms of its own filing.").

The Second Circuit looked to principles of agency law to determine whether, based on "JPMorgan's and Simpson Thacher's repeated manifestations," it was "reasonably understood" by Mayer Brown that JPMorgan reviewed and assented to the filing of the 2008 Termination Statement and "that, upon the closing of the Synthetic Lease transaction, Mayer Brown was going to file the [2008 Termination Statement]." *In re Motors Liquidation Co.*, 777 F.3d at 105 (citing Restatement (Third) of Agency § 3.01)). Thus, what had to have been "reasonably understood" by Mayer Brown is determined with reference to what it is that JPMorgan had to authorize under Chapter 9 of the UCC for the 2008 Termination Statement to be effective: the act of filing the 2008 Termination Statement. Having authorized that act, what any party understood—or did not understand—about the consequences of that act is legally irrelevant.

For this reason, the purported expert-lawyer declarations that the Non-JPMorgan Term Lenders submit on this point should be excluded as irrelevant. *See* Adv. Pro. Dkt. No. 1100, Declaration of Steven L. Harris in Support of the Term Loan Lenders' Opposition Ex. A (the "**Harris Report**") ¶ 16 ("In my opinion, Mayer Brown's belief that the Main Term Loan UCC-1 pertained to the Synthetic Lease Transaction (assuming it was subjectively held) was not objectively reasonable."); Adv. Pro. Dkt. No. 1102, Declaration of Sandra Stern in Support of the

6

Term Loan Lenders' Opposition Ex. A (the "**Stern Report**," and together with the Harris Report, the "**Expert Reports**") ¶ 38 ("It was not reasonable to conclude . . . that the Main Term Loan UCC-1 had been filed in connection with the Synthetic Lease."). Not only are the points made in the Expert Reports about the reasonableness of Mayer Brown's belief as to the consequences of the filing of the Termination Statement irrelevant under the Second Circuit's holding, they also are at odds with the Delaware Supreme Court's final determination that UCC authorization requires a focus on whether an act of filing had been authorized, irrespective of any understanding as to the consequences of that act.

### B. The Undisputed Facts Establish that JPMorgan Authorized the Filing of the 2008 Termination Statement

In their opposition, the Non-JPMorgan Term Lenders "dispute" whether JPMorgan and Simpson Thacher reviewed the draft documents, *see* CSMF ¶ 30, and argue that Mayer Brown could not have relied on JPMorgan's authorization because it was "pure speculation" that "JPMorgan or Simpson Thacher had checked the UCC filings" before they were filed, TL Opp. at 24 n.12. The Non-JPMorgan Term Lenders' suggestion that JPMorgan and Simpson Thacher did not review the Termination Statement before it was filed finds no support in the record. Based on the following facts, which are not contested by the Non-JPMorgan Term Loan Lenders, the Second Circuit held that "JPMorgan *reviewed* and assented to the filing" of the 2008 Termination Statement and that "[n]othing more is needed," *In re Motors Liquidation Co.*, 777 F.3d at 105 (emphasis added):

- On October 15, 2008, the initial closing checklist was sent to Simpson Thacher and JPMorgan (CSMF ¶ 31; Fisher Decl. Ex. I);

- Later on October 15, 2008, Mayer Brown sent to (among other recipients) Merjian of Simpson Thacher, and Merjian subsequently sent to JPMorgan (i) an updated checklist, which again identified the Main Lien as one of the financing statements to be terminated in connection with the payoff of the Synthetic Lease;

7

and (ii) drafts of the closing documents, including the draft 2008 Termination Statement (CSMF ¶¶ 32-4; Fisher Decl. Ex. G; Adv. Pro. Dkt. No. 1099, Declaration of Matthew A. Macdonald in Support of the Term Loan Lenders' Response to Plaintiff's Motion for Partial Summary Judgment on the Term Loan Lenders' Effectiveness Defense (the "**Macdonald Declaration**") Ex. L at JPMCB-2-00042840);

- Two days later, on October 17, 2008, Merjian of Simpson Thacher responded to the October 15, 2008 email attaching the draft documents and said "Nice job on the documents.  My only comment, unless I am missing something, is that all references to JPMorgan Chase Bank, as Administrative Agent for the Investors should not include the reference 'for the Investors'" (CSMF ¶ 35; Fisher Decl. Ex. F);

- On October 24, 2008, Green sent Merjian draft escrow instructions that again identified the Main Lien as one of the financing statements that would be terminated once the Synthetic Lease was repaid (CSMF ¶ 38; Fisher Dec. Ex. J);

- Green subsequently asked if Merjian had any comments to the draft escrow letter and on October 27, 2008, Merjian replied that "it was fine" (CSMF ¶ 39; Fisher Decl. Ex. L); and

- On October 29, 2008, Merjian executed the escrow agreement on behalf of JPMorgan, which specifically referenced each document to be filed, including the Termination Statement (CSMF ¶ 40; Fisher Decl. Ex. M).

The Non-JPMorgan Term Lenders' baseless assertion that JPMorgan and Simpson Thacher did not review the Termination Statement is not a new fact of the sort that this Court permitted the Non-JPMorgan Term Lenders to explore and raise.  Rather, it is an unfounded contention that directly contradicts the Second Circuit's findings.[3]

---

[3] We note that the Non-JPMorgan Term Lenders' assertion that Simpson Thacher and JPMorgan may not have reviewed the Termination Statement is contradicted by their own cross-claim allegations against JPMorgan. *See, e.g.*, Adv. Pro. Dkt. No. 241, Answer and Cross-Claims of Term Loan Lenders ¶¶ 48(f), (g), (h) (stating that JPMorgan ignored "red flags" in drafts sent to JPMorgan and its counsel).

8

### III. THE NON-JPMORGAN TERM LENDERS HAVE FAILED TO COME FORWARD WITH ANY NEW EVIDENCE THAT WOULD ALTER THE OUTCOME OF THE SECOND CIRCUIT'S DECISION

Contrary to the arguments advanced by the Non-JPMorgan Term Lenders, there are no new facts relevant to determining whether JPMorgan's filing of the 2008 Termination Statement was effective. The Non-JPMorgan Term Lenders argue that there is evidence that Mayer Brown knew that the 2008 Termination Statement would terminate the Main Lien. Even if this were a relevant assertion (it is not), there is no evidence to support it. The Non-JPMorgan Term Lenders also point to purported "red flags," which are irrelevant because Mayer Brown had no duty to investigate these alleged "red flags." The Non-JPMorgan Term Lenders' efforts to create issues of fact through the submission of improper expert testimony also fails.

#### A. There Is No Evidence that Mayer Brown Knew that the 2008 Termination Statement Related to the Term Loan

Even if the issue of whether anyone at Mayer Brown knew that the 2008 Termination Statement would terminate the Main Lien were relevant, the Non-JPMorgan Term Lenders have failed to identify a genuine dispute on an issue of material fact as to Mayer Brown's knowledge. There is simply nothing in the record—beyond the Non-JPMorgan Term Lenders' hypotheticals and speculation about what Mayer Brown "must have known" or "would have looked at" and steps they "would have taken"—that supports the assertion that Mayer Brown noticed the error but inexplicably filed the 2008 Termination Statement anyway. *See, e.g.*, TL Opp. at 21-22.

The Non-JPMorgan Term Lenders point to two different supposed "facts" to support their counter-factual claim that Mayer Brown actually knew that the 2008 Termination Statement was a mistake, but "for reasons that remain unclear" filed it anyway: (1) a circle on a document; and (2) a supposed "concern" raised by Gonshorek, as set forth in Green's 2010 deposition testimony. TL Opp. at 8, 20-22. Neither of these "facts" supports their claim.

9

First, as proof of Mayer Brown's purported knowledge, the Non-JPMorgan Term Lenders point to "evidence" that "someone at Mayer Brown" noticed the error based on "language . . . circled by hand on a copy of the Main Term Loan UCC-1 printed from Gonshorek's computer." TL Opp. at 8. However, as the Non-JPMorgan Term Lenders concede, "[n]one of the Mayer Brown witnesses that were asked recalled or knew whose handwriting this was" – including Gonshorek. CSMF ¶ 101. Thus, a handwritten mark of unknown origin, unknown date, and made for an unknown purpose, is not admissible to show that "someone at Mayer Brown" noticed the erroneous 2008 Termination Statement before it was filed.

Second, the Non-JPMorgan Term Lenders point to testimony from Green's 2010 deposition to argue that he "actually noticed major discrepancies that made it obvious that the Main Term Loan UCC-1 concerned an unrelated loan." TL Opp. at 20. This mischaracterizes Green's testimony. Green testified about a conversation with Gonshorek regarding the fact that the schedule to the Main Lien referenced cities and states that were broader than what was included on the checklist for the Synthetic Lease payoff. Fisher Decl. Ex. B at A2641-42. Green "didn't conclude anything" with respect to this issue and testified consistently that "[a]t the time of closing I understood that the documents related to the synthetic lease." *Id.* at A2642. Notably, after these purported "concerns" were aired at Mayer Brown, the draft documents— including the draft 2008 Termination Statement—were reviewed and signed off on by JPMorgan's counsel. *See* Fisher Decl. Exs. F, L, M.

The Non-JPMorgan Term Lenders' seek to turn these undisputed facts into ones in dispute by asserting, without any explanation at all, that Green and Gonshorek's sworn testimony was "self-serving and conclusory." TL Opp at 23. But it was nothing of the sort. This was testimony from third-party witnesses having no affiliation with or bias toward Plaintiff, and

10

much of the testimony was elicited from JPMorgan's counsel at the deposition.[4] *See* Fisher Decl. Ex. B at A2639, A2642; *see also id.* Ex. C at A2657. Further, the entire conversation about this so-called "concern" was contained in three pages of Mr. Green's deposition testimony reflected on page A2642 on the record on appeal, which was cited by both Plaintiff and JPMorgan more than ten times in their briefs to the Second Circuit. Brief for Plaintiff - Appellant at 19, 46, ECF No. 32, No. 13-2187 (2d Cir. Sept. 17, 2013); Brief for Defendant - Appellee at 10, 14, 15, 19, 21, 38, 47, 48, 51, 53, 55, ECF No. 58, No. 13-2187 (2d Cir. Dec. 9, 2013). Thus, the Non-JPMorgan Term Lenders' assertion that "[i]t is of no moment that Green's testimony was in the appellate record" because appellate courts "'are not like pigs, hunting for truffles buried in briefs,'" TL Opp. at 16, is a gross mischaracterization of the record. Rather, with Green's testimony squarely before it, the Circuit found that "[n]o one at General Motors, Mayer Brown, JPMorgan, or its counsel, Simpson Thacher & Bartlett LLP, noticed the error." *In re Motors Liquidation Co.*, 777 F. 3d at 102.[5]

---

[4] The Non-JPMorgan Term Lenders erroneously claim that "JPMorgan had incentives not to press Green, and not to challenge the reasonableness of Mayer Brown's beliefs." TL Opp. at 17. To the contrary, JPMorgan has at all times been incentivized to elicit testimony to show that Mayer Brown lacked the authority to file the 2008 Termination Statement.

[5] The Non-JPMorgan Term Lenders also argue that this Court should draw an adverse inference from the fact that Green and Gonshorek, at their depositions in 2017, could not recall events from October 2008. There is nothing remarkable or nefarious about not being able to recall events nine years in the past. The argument that "this event must have been a very significant one in Green's legal career," TL Opp. at 23, is not fairly made. The filing of the 2008 Termination Statement was a routine filing that, as far as Green knew at the time, went according to plan. What may have been a significant event to Green was when the mistake came to light almost a year after the filing and the events that followed. In any event, there is nothing about either witness' inability to remember that lends itself to an inference that Mayer Brown was aware that the UCC-3 would terminate liens other than those related to the Synthetic Lease. *See generally LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (setting out four factors courts should consider in determining whether an adverse inference is appropriate where a witness *refuses* to testify and noting that "the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for truth").

11

> **B.    The Purported "Red Flags" Are Also Irrelevant Because Mayer Brown Does Not Have an Obligation to Ensure that JPMorgan Subjectively Intended or Understood the Effect of its Own Filing**

The Non-JPMorgan Term Lenders do not and cannot point to any authority to support their conclusion that Mayer Brown had a duty to investigate the so-called "red flags" that could have caused (but did not cause) any of the parties to the transaction to take note of the error. *See, e.g.*, TL Opp. at 20-24. As counsel for a counterparty to a commercial transaction, Mayer Brown was under no duty to investigate and owed no fiduciary obligations to JPMorgan, *see, e.g.*, *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 319 (S.D.N.Y. 2010) (no fiduciary obligations owed to counterparties). Indeed, any fiduciary relationship was expressly disclaimed. *See* Fisher Decl. Ex. T (Collateral Agreement § 7.12(b)) ("[N]either [JPMorgan] nor any Secured Party has any fiduciary relationship with or duty to [GM or Saturn] arising out of or in connection with this Agreement . . . . and the relationship between [GM or Saturn], on the one hand, and [JPMorgan] and Secured Parties, on the other hand, . . . is solely that of debtor and creditor . . . ."); *see also Summit Props. Int'l., LLC v. Ladies Prof'l Golf Ass'n*, No. 07 Civ. 10407(LBS), 2010 WL 2382405, at *7 (S.D.N.Y. 2010) ("Given that the Agreement contains a clear and unambiguous disclaimer of a fiduciary relationship, we find there was no fiduciary duty between the parties."); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2004) ("Because contractual disclaimers of fiduciary duty are effective in New York, no fiduciary duty can arise from the relationship between [the parties.]"). And as the Seventh Circuit has held, Mayer Brown did not owe JPMorgan an attorney's duty of care. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644 (7th Cir. 2017) (dismissing class action claim brought by Non-JPMorgan Term Lenders against Mayer Brown).

The Non-JPMorgan Term Lenders' argument that Mayer Brown owed a duty to JPMorgan is based solely on general principles of agency law and that argument fails. Mayer

12

Brown was JPMorgan's agent for the sole and limited purpose of ensuring—based on the clear instructions from Simpson Thacher—that the termination statements, including the 2008 Termination Statement, were filed. The Non-JPMorgan Term Lenders cite to the Restatement (Third) of Agency § 2.02 cmt. e to argue that Mayer Brown "did not believe or could not reasonably have believed, that [JPMorgan's] grant of actual authority encompassed the act in question." TL Opp. at 11-12. This assertion is contrary to the record and the applicable legal principles; Mayer Brown understood what was relevant here—that JPMorgan wanted it to file the 2008 Termination Statement. For the filing to be authorized, Mayer Brown only needed to understand that JPMorgan assented to the filing of the 2008 Termination Statement, which on the very facts present here the Second Circuit already held that it did. *In re Motors Liquidation Co.*, 777 F.3d at 105.

### C. The Proffered Expert Reports Are Legally Irrelevant and Do Not Provide Admissible Opinions

The Non-JPMorgan Term Lenders proffer purported expert reports from two lawyers who opine on the "reasonableness" of Mayer Brown's belief that JPMorgan authorized the filing of the Termination Statement.[6] As an initial matter, the expert opinions are nothing more than conclusory assertions about ultimate legal issues, and thus do not create a genuine issue of material fact that would defeat summary judgment. *Pretesting Co. v. Arbitron Co.*, No. 93 CIV. 6031 (CBM), 1996 WL 480899, at *5 (S.D.N.Y Aug. 23, 1996) (conclusory expert statements insufficient to defeat summary judgment); *see also Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (reliance on bare ultimate expert conclusion is not a free pass to trial).

---

[6] Ms. Stern was retained to express her opinion concerning "whether Mayer Brown's determination that it was authorized to file the termination statement . . . was objectively reasonable." Stern Report ¶ 6. Professor Harris was asked to express his opinion concerning "the reasonableness of any belief that Mayer Brown may have had that JPMorgan authorized the filing of the Termination Statement." Harris Report ¶ 11 (parentheticals omitted).

13

Moreover, as set forth above, the Expert Reports are irrelevant and do not bear on the issues before the Court.  But even were the Expert Reports relevant, they fail to pass muster under Fed. R. Evid. 702 and should be disregarded.  *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL 341135, at *2 (E.D.N.Y. Mar. 9, 2000) ("Evidence contained in an expert's report must . . . be evaluated under Fed. R. Evid. 702 before it is considered in a ruling on the merits of a summary judgment motion.").

These two opinions about how a Mayer Brown associate should have performed his responsibilities impermissibly usurp the role of the Court by offering a legal conclusion that amounts to no more than an expression of how the "experts" believe the case should be decided.  *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977).  "Whether a party acted with objective reasonableness is a quintessential common law jury question." *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 398, 404 (S.D.N.Y. 1998) (precluding Professor Arthur Miller's opinion on the ultimate issue that Kidder and its counsel formed and acted on a reasonable belief).  An expert may "not substitute for the factfinder[']s own findings, nor may it present opinions in the form of legal conclusions regarding the *reasonableness* or prudence of a defendant's actions, or the scope of a [party]'s knowledge." *In re M/V MSC Flaminia*¸ 12-cv-8892 (KBF), 2017 WL 3208598, at *18 (S.D.N.Y. July 28, 2017) (emphasis added); *see also Diners' Club Inc.*, 550 F.2d at 509-10 (reversing admission of securities law expert's opinions as to "best efforts" obligations and governing contract standards).

The proffered opinions about whether Mayer Brown acted reasonably also should be excluded because they are not the product of reliable principles and methods.  Fed. R. Evid. 702(c) and (d).  To be admissible, an expert's analysis must be reliable at every step. *In re M/V*

14

*MSC*, 2017 WL 3208598, at *4 n. 4. Here, the Expert Reports simply review selective evidence and offer *ipse dixit* conclusions not rooted in any reliable principles, sources or methods. *See e.g.,* Harris Report ¶¶ 16, 25, 27; Stern Report ¶¶ 38, 39, 42. Nor do the Expert Reports identify the source of any industry standard that the experts applied to Mayer Brown's conduct. *See e.g.,* Harris Report ¶¶ 25-26; Stern Report ¶ 33. Indeed, the experts have admitted that no such standard exists. Macdonald Decl. Ex. Q (Harris Tr. at 42:6-22) (stating that there is no "specific protocol" that must be followed to ensure that UCC-3 termination statements relate to proper UCC financing statements); *see also id.* Ex. R (Stern Tr. at 48:8-19). Expert testimony that "hinge[s] on nothing more than [the expert's] ungrounded speculations" about what might have seemed reasonable at the time must be excluded. *Davis v. Carroll*, 937 F. Supp. 2d 390, 415 (S.D.N.Y. 2013); *see also Snyder v. Wells Fargo Bank, N.A.*, 594 Fed. App'x 710, 713 (2d Cir. 2014) (excluding expert testimony about supposed industry practices solely on the facts of the case at hand).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for summary judgment dismissing the Non-JPMorgan Term Lenders' effectiveness defense.

Dated: New York, New York
October 26, 2018

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for Plaintiff*

15